1  Rosemary M. Rivas (State Bar No. 209147)
   rrivas@finkelsteinthompson.com
2  Danielle A. Stoumbos (State Bar No. 264784)
   dstoumbos@finkelsteinthompson.com
3  **FINKELSTEIN THOMPSON LLP**
4  505 Montgomery Street, Suite 300
   San Francisco, California 94111
5  Telephone: (415) 398-8700
6  Facsimile: (415) 398-8704

7  Marc L. Godino (State Bar No. 182689)
   mgodino@glancylaw.com
8  **GLANCY BINKOW & GOLDBERG LLP**
9  1925 Century Park East, Suite 2100
   Los Angeles, CA 90067
10 Telephone: (310) 201-9150
   Facsimile: (310) 201-9160
11

12 *Counsel for Individual and Representative*
   *Plaintiffs Aleta Lilly and David Cox*
13

14

15                  **UNITED STATES DISTRICT COURT**

16              **NORTHERN DISTRICT OF CALIFORNIA**

17 ALETA LILLY and DAVID COX, on behalf of          Case No.
   themselves and all others similarly situated,
18
                                                     **CLASS ACTION COMPLAINT**
19            Plaintiffs,
                                                     **JURY TRIAL DEMANDED**
20      vs.

21 JAMBA JUICE COMPANY and INVENTURE
   FOODS, INC., formerly known as The Inventure
22 Group, Inc.,

23            Defendants.

24

25

26

27

28

1    Plaintiffs Aleta Lilly and David Cox ("Plaintiffs"), by and through their counsel, on behalf of

2    themselves and all others similarly situated, bring this class action against Jamba Juice Company

3    ("Jamba Juice" or "Jamba") and Inventure Foods, Inc., formerly known as The Inventure Group, Inc.,[1]

4    ("Inventure") (collectively, "Defendants"), and allege the following upon personal knowledge as to their

5    own experience, and based upon information and belief and the investigation of their counsel as to all

6    other matters:

7                                    **NATURE OF THE CASE**

8    1.    In recent years, consumers have become willing to pay a premium for beverages that they

9    perceive to be healthy, organic and/or natural. As a result, the market for beverages labeled as "all

10   natural" has grown rapidly, yielding millions of dollars in revenue for beverage manufacturers and their

11   licensees.

12

13   2.    Founded in 1990, with a mission to promote healthy living, and promoting its products as

14   premium "better for you," blended beverages, Jamba Juice is a leading healthy food and beverage

15   retailer. Its retail locations offer fruit smoothies, fresh squeezed juices, teas/ lattes, organic steel cut

16   oatmeal, wraps, salads, sandwiches, and a variety of baked goods and snacks to consumers on-the-go.

17   In 2009, Jamba Juice implemented expansion plans to transform the company "from a made-to-order

18   smoothie company to a healthy, active lifestyle brand."[2] To promote its strategic plan, Jamba has signed

19   numerous licensing agreements and has introduced more than 30 consumer at-home products available

20   at more than 30,000 points of distribution across all 50 states.[3] These at home products include frozen

21   novelty bars, all natural energy drinks, and frozen smoothie kits. In fiscal 2009, Jamba signed a license

22   agreement with Inventure Foods, Inc., to enable consumers to enjoy Jamba frozen smoothie kits at

23   home. The smoothie kits are at issue in this case.

24

25

26   _____

27   [1]Inventure changed its name from The Inventure Group, Inc. to Inventure Foods, Inc. in May, 2010. *See*
     Inventure Foods, Inc., Annual Report (Form 10-K), at 3 (Mar. 27, 2012).

28   [2]Jamba, Inc., Annual Report (Form 10-K), at 4 (Mar. 9, 2012).
     [3]*Id.* at 40.

3. In line with Jamba Juice's healthy, "better for you" marketing and sales approach, Defendants' at-home smoothie kits are each prominently labeled as "All Natural," and are available in 5 flavors: Mango-a-go-go, Strawberries Wild, Caribbean Passion, Orange Dream Machine, and Razzmatazz (hereafter, "smoothie kits"). The smoothie kits, however, are not "All Natural" because they contain non-natural, processed, and synthetic ingredients, as set forth below in Paragraphs 24-29. Defendants market the at home smoothie kits in this manner to this day on Defendants' websites (*i.e.,* www.jambajuice.com and http://www.athomesmoothies.com), in print advertisements and coupons and on the smoothie kits themselves. Attached hereto as Exhibit G is an exemplar of Defendants' print advertisement.

4. Reasonable consumers such as Plaintiffs do not have the specialized knowledge necessary to identify ingredients in the smoothie kits as being inconsistent with the "All Natural" claims.

5. Defendants know that consumers are willing to pay for natural, healthy products, and advertise, and/or approve the advertising of the smoothie kits with the intention that consumers rely on the representations made on the front of the packaging. Defendants also know that the smoothie kits' labeling claims are false, deceptive, and likely to mislead reasonable consumers.

6. Plaintiffs read and relied on the representations on the smoothie kits that they were "All Natural."

7. As a result of Defendants' false, deceptive, and misleading advertising, Plaintiffs and consumers did not receive the benefit of their bargain when they purchased the smoothie kits.

8. Plaintiffs bring claims for violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*, ("UCL"), the False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.*, ("FAL"), the Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.*, ("CLRA") and breach of California state express warranty law, Cal. Com. Code § 2313. Plaintiffs seek damages, restitution and injunctive relief in the form of an order requiring (1) cessation of the unlawful marketing alleged herein; and (2) a corrective advertising campaign.

1

## JURISDICTION AND VENUE

2

9. Defendants are engaged in inter-state commerce or activity affecting inter-state

3 commerce. This Court has subject matter jurisdiction over this action pursuant to the Class Action

4 Fairness Act of 2005, 28 U.S.C. § 1332(d), because Plaintiffs and Class members are of diverse

5 citizenship from the Defendants; there are more than 100 Class members nationwide; and the aggregate

6 amount in controversy exceeds $5,000,000.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

10. This Court has personal jurisdiction over the parties because, among other things, Defendant Jamba is headquartered in this Judicial District, is engaged in illegal schemes and acts directed at, and that had the intended effect of causing injury to persons residing in, located in, or doing business in this Judicial District, and throughout the United States. Defendant Jamba is present in this Judicial District and/or conducts substantial business in this Judicial District, and/or has had extensive, systematic and continuous contacts with this state, and/or a substantial part of the actions which gave rise to Plaintiffs' causes of action occurred in or emanated from this Judicial District. Defendant Inventure is engaged in illegal schemes and acts directed at, and that had the intended effect of causing injury to persons residing in, located in, or doing business in this Judicial District, and throughout the United States. Defendant Inventure is present in this Judicial District and/or conducts substantial business in this Judicial District, and/or has had extensive, systematic and continuous contacts with this state, and/or a substantial part of the actions which gave rise to Plaintiffs' causes of action occurred in or emanated from this Judicial District.

21

22

23

11. Venue is proper in this District under 28 U.S.C. § 1391(a) because Defendant Jamba resides in this District, a substantial part of the events or omissions giving rise to the claim occurred within this District, and Defendants have caused harm to Class members residing within this District.

24

## PARTIES

25

26

27

28

12. Plaintiff Aleta Lilly is a resident and citizen of Inglewood, California. To the best of her recollection and knowledge, Plaintiff recalls purchasing the Strawberries Wild smoothie kits from approximately March 2010 to approximately November 2012, and Caribbean Passion smoothie kits from approximately July 2011 to approximately November 2012 from Vons and CVS in Inglewood,

California. Plaintiff relied on representations that the smoothie kits were "All Natural." These representations were material to Plaintiff and played a substantial part in influencing her decision to buy the smoothie kits. The smoothie kits Plaintiff bought, however, did not contain only "All Natural" ingredients. Plaintiff would not have bought the smoothie kits had she known they did not contain "All Natural" ingredients or she would have paid less for the smoothie kits.

13.     Plaintiff David Cox is a resident and citizen of Anaheim, California. Plaintiff has purchased Caribbean Passion smoothie kits from various Target Corporation locations including Mission Viejo and Aliso Viejo within the last three years. Plaintiff relied on representations that the smoothie kits were "All Natural." These representations were material to Plaintiff and played a substantial part in influencing his decision to buy the smoothie kits. The smoothie kits Plaintiff bought, however, did not contain only "All Natural" ingredients. Plaintiff would not have bought the smoothie kits had he known they did not contain "All Natural" ingredients or he would have paid less for the smoothie kits.

14.     Defendant Jamba Juice Company is a Delaware corporation with its principal place of business at 6475 Christie Avenue, Suite 150, Emeryville, California 94608. Jamba Juice owns and operates retail locations, offering fruit smoothies, fresh squeezed juices, teas/ lattes, organic steel cut oatmeal, wraps, salads, sandwiches, and a variety of baked goods and snacks on-the-go.

15.     Additionally, Jamba Juice has expanded its brand into the retail consumer packaged goods market and since at least June 2010, has marketed and advertised, and/or approved the marketing and advertising of at-home smoothie kits available for purchase at supermarkets, big box stores, and whole-sale clubs nationwide, including but not limited to, Target, Walmart, Kroger, Costco Wholesale, Safeway, Albertsons and Food 4 Less.

16.     Defendant Inventure Foods, Inc. is a Delaware corporation with its principal place of business at 5414 East High Street, Suite 350, Phoenix, Arizona 85054. Inventure claims to be a "160+ million leading marketer and manufacturer of healthy/natural and indulgent specialty snack food

1  brands,"[4] and through the use of a license agreement with Jamba, offers Jamba® All Natural Smoothies

2  in its healthy/natural category of products for sale to the public. One of Inventure's primary goals is to

3  "capitalize on healthy/natural and indulgent specialty food brand opportunities."[5]

4      17.    In fiscal 2009, Jamba signed a license agreement with Inventure Foods, Inc. to enable

5  consumers to enjoy Jamba frozen smoothie kits at home. The smoothie kits are manufactured and

6  distributed by Inventure Foods under license from the Jamba Juice Company, however, based on

7  information and belief, Jamba approves Inventure's design of the smoothie kits' packaging and/or

8  approves the marketing. The smoothie kits are sold at some of the country's largest retail outlets,

9  including Target, Walmart Supercenters, Kroger, Safeway, Costco, and Food4Less.

10  **SUBSTANTIVE ALLEGATIONS**

11  **Increasing Consumer Demand Has Propelled the All Natural and Organic Food & Beverage**

12

13  **Industry into a Multi-Billion Dollar Industry**

14      18.    What was once a niche market, consumers are increasingly demanding "organic" and "all

15  natural" foods and beverages. Tellingly, U.S. retail sales from natural products grew 9 percent in 2010,

16  to more than $39 billion, with an expected grow rate of 103 percent between 2010 and 2015. Total

17  annual sales are expected to exceed $78 billion in 2015.

18      19.    In fact, 58 percent of U.S. adult consumers purchase food products marketed as "all-

19  natural," and approximately 37 percent of consumers seek out natural and organic food and beverages.

20  Moreover, "Natural" is the most popular product tag on food and beverage labels and consumers are

21  increasingly choosing "100% natural" and "All natural ingredients" as important indicators when

22  making purchasing decisions, even more so than "organic." As a result of this increasing consumer

23  demand, and in an effort to capitalize on this growing market segment, many mainstream marketers,

24  including Defendants, label their products, and/or approve the labeling of their products as "all natural,"

25  even if these products are not truly "all natural."

26

27

28  [4]*See* Inventure Foods, Inc., Annual Report (Form 10-K), at 3 (Mar. 27, 2012).
[5]*Id.* at 4.

5

20. Defendants are well aware that in order to remain competitive, they must sell products that appeal to consumers, and that the failure to cater their products to consumer demand will have a crippling effect on profits. As consumer demand for healthy, natural, and organic products has increased within the last few years, Defendants have experienced increasing pressure to market their products as "all natural."

**The Smoothie Kits Contain Non-Natural and Synthetic Substances**

21. The dictionary defines the term "natural" as "existing in or produced by nature: not artificial."[6] This common dictionary definition of the term "natural" is consistent with the expectations of a reasonable consumer.

22. Thus, a reasonable consumer would not consider food products containing unnaturally processed, synthetic substances, or substances created via chemical processing, to be "All Natural."

23. The smoothie kits contain one or more of the following ingredients (collectively "Deceptively Labeled Ingredients") that are synthetic or created via chemical processing, and therefore belie claims that the products containing them are "All Natural". Attached as Exhibits A-E are the smoothie kits package and ingredient lists reflecting the following ingredients, among others:

24. **ASCORBIC ACID**: Ascorbic acid occurs naturally in certain foods as Vitamin C, or L-ascorbic acid. However, ascorbic acid is produced commercially and used as a food additive. It is considered to be synthetic by federal regulation. 7 CFR § 205.605(b). Ascorbic acid used in foods is not naturally-occurring because it is synthesized through a process known as the Reichstein Process. The Reichstein Process uses the following steps: (1) hydrogenation of D-glucose to D-sorbitol, an organic reaction with nickel as a catalyst under high temperature and high pressure; (2) Microbial oxidation or fermentation of sorbitol to L-sorbose with acetobacter at pH 4-6 and 30° C; (3) protection of the 4 hydroxyl groups in sorbose by formation of the acetal with acetone and an acid to Diacetone-L-sorbose ($2,3:4,6-$Diisopropyliden$-\alpha-$L$-$sorbose); (4) Organic oxidation with potassium permanganate followed by heating with water to yield 2-Keto-L-gulonic acid; and (5) a ring-closing step or gamma

---

[6]WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 788 (1990).

lactonization with removal of water. In recent years, Chinese chemists have developed a simplification of the Reichstein Process that substitutes biological oxidation using genetically engineered microorganisms for chemical oxidation. This manufacturing process places it outside of a reasonable consumer's definition of "All Natural."

25.     **CITRIC ACID**: Citric acid is a commodity chemical, and more than a million tons are produced each year. Industrially, it is produced by mycological fermentation (an enzyme is added and then completely removed during the recovery and purification process, 21 C.F.R. § 173.160), or by a solvent extraction process. 21 C.F.R. § 184.1033. The solvents are composed of alcohol, synthetic isoparaffinic petroleum hydrocarbons and tridodecyl amine. *Id.* 21 C.F.R. § 173.280.

26.     **XANTHAN GUM**: Xanthan gum is a polysaccharide derived from the bacterial coat of the Xanthomonascampesris bacterium. Although derived from a natural bacterium, Xanthan gum is commercially manufactured as a sodium, potassium or calcium salt and is considered to be synthetic by federal regulation. 7 C.F.R. § 205.605(b). Xanthan gum is used in food products such as beverages as a thickening or stabilizing agent, and as an emulsifier in salad dressings.

27.     **STEVIOL GLYCOSIDES**: Steviol Glycosides are produced by their extraction from Stevia rebaudiana plants, commonly referred to as thestevia plant, and are used as a sweetener. Although there are numerous extraction methods, some involve adding chloroform or hexane to dried plant leaves. Impurities on the plants are removed by centrifugation, press filtration and membrane filtration. Flocculants such as calcium hydroxide and aluminum sulfate may be used to facilitate the removal of undesired accompanying substances. Steviol glycosides are then demineralized and decolorized with ion exchangers and spray dried. Additionally, some steviol glycosides are enriched by recrystallization in hot ethanol. The crystals are then separated with centrifugation, micro-filtered and spray dried. At times, concentrated solutions of hydrochloric acid and sodium hydroxide are used to regenerate ion exchange resins.

28.     **GELATIN**: Gelatin is commercially processed using hydrolysis. It is a synthetic ingredient made from boiled skin and cartilage from animals.

29.   **MODIFIED CORN STARCH:** Modified corn starch is a chemically altered derivative of corn and often has about 10% maltodextrin, which is Manufactured Glutamic Acid, or MSG

30.   Defendants are well aware of consumer tendencies to seek out healthy food labeled as "all natural,"and take advantage of them to mislead consumers. Defendants' smoothie kits display an "All Natural" claim in prominent print on the front of the smoothie kits' package. By contrast, the smoothie kits hide references to Deceptively Labeled Ingredients in fine print, in an inconspicuous location on the back of the label.

31.   The result is a labeling scheme that is designed to mislead consumers, and which does so effectively.

32.   By engaging in this deceptive scheme, Defendants reap increased profits and/or license royalties by playing on consumers' desires for all natural fruit beverages, while foregoing the additional expense of actually providing beverages that are free of non-natural, synthetic and/or chemically processed ingredients. Defendants also gain a competitive advantage over other companies selling at-home smoothie kits, such as Dole.

## CLASS ACTION ALLEGATIONS

33.   Pursuant to Fed. R. Civ. P. 23(a) and (b)(2) and/or (b)(3), Plaintiffs seek certification of a class initially defined as follows:

All persons in California who bought one or more of the following Jamba Juice smoothie kit products: Mango-a-go-go, Strawberries Wild, Caribbean Passion, Orange Dream Machine, and Razzmatazz.

34.   Excluded from the Class are Defendants and their subsidiaries and affiliates, Defendants' executives, board members, legal counsel, and their immediate families.

35.   Plaintiffs reserve the right to amend, modify or expand the Class definition after having the opportunity to conduct discovery.

36.   Numerosity. Fed. R. Civ. P. 23(a)(1). The potential members of the Class as defined are so numerous that joinder of all members is unfeasible and not practicable. While the precise number of

8

1  Class members has not been determined at this time, Plaintiffs are informed and believe that many
2  thousands of consumers have purchased one or more of the smoothie kits.

3      37.     Commonality. Fed. R. Civ. P. 23(a)(2) and (b)(3). There are questions of law and fact
4  common to the Class, which predominate over any questions affecting only individual Class members.
5  These common questions of law and fact include, without limitation:

6          a.      Whether Defendants misrepresented that the smoothie kits were "All Natural";

7          b.      Whether Defendants violated California Civil Code §§ 1750, *et seq.*;

8          c.      Whether Defendants violated California Business and Professions Code §§ 17500, *et
9  seq.*;

10          d.      Whether Defendants violated California Business and Professions Code §§ 17200, *et
11  seq.*;

12
13          e.      Whether Defendants violated California Health and Safety Code §§ 109875, *et seq.*;

14          f.      Whether Defendants breached California state warranty law, Cal. Com. Code §2313;and

15          g.      The nature of the relief, including equitable relief, to which Plaintiffs and the Class
16  members are entitled.

17      38.     Typicality. Fed. R. Civ. P. 23(a)(3). Plaintiffs' claims are typical of the claims of the
18  Class. Plaintiffs and Class members were exposed to uniform practices and sustained injury arising out
19  of and caused by Defendants' unlawful conduct.

20      39.     Adequacy of Representation. Fed. R. Civ. P. 23(a)(4). Plaintiffs will fairly and
21  adequately represent and protect the interests of the members of the Class. Plaintiffs' Counsel is
22  competent and experienced in litigating class actions.

23      40.     Superiority of Class Action. Fed. R. Civ. P. 23(b)(3). A class action is superior to other
24  available methods for the fair and efficient adjudication of this controversy since joinder of all the
25  members of the Class is impracticable. Furthermore, the adjudication of this controversy through a class
26  action will avoid the possibility of inconsistent and potentially conflicting adjudication of the claims
27  asserted herein. There will be no difficulty in the management of this action as a class action.
28

1    41.    Injunctive and Declaratory Relief. Fed. R. Civ. P. 23(b)(2). Defendants' actions

2  regarding the packaging and labeling, and/or approval of the packaging and labeling of the smoothie kits

3  are uniform as to members of the Class. Defendants have acted or refused to act on grounds that apply

4  generally to the Class, so that final injunctive relief or declaratory relief as requested herein is

5  appropriate respecting the Class as a whole.

6                              **FIRST CAUSE OF ACTION**

7          **California Consumers Legal Remedies Act – Cal. Civ. Code §§ 1750, *et seq.***

8    42.    Plaintiffs incorporate by reference and reallege all previous paragraphs.

9    43.    Defendants are "persons" within the meaning of California Civil Code §§ 1761(c) and

10  1770, and provide "goods" within the meaning of Civil Code §§ 1761(a) and 1770. Defendants'

11  customers, including Plaintiffs and Class members, are "consumers" within the meaning of Civil Code

12  §§ 1761(d) and 1770. Each purchase of Defendants' smoothie kits by Plaintiffs and each Class member

13
   constitutes a "transaction" within the meaning of Civil Code §§ 1761(e) and 1770.
14

15    44.    The Consumers Legal Remedies Act makes it unlawful for a company to:

16         (a)    Represent that goods have characteristics or ingredients which they do not have.

17  Cal. Civ. Code § 1770(a)(5);

18         (b)    Represent that goods are of a particular standard, quality, or grade, if they are of

19  another. Cal. Civ. Code § 1770(a)(7); and

20         (c)    Advertise goods with intent not to sell them as advertised. Cal. Civ. Code §

21  1770(a)(9).

22    45.    Defendants violated these provisions by intentionally representing that the smoothie kits

23  are "All Natural," when they are not. Defendants knew or should have known that the smoothie kits

24  were not "All Natural."

25    46.    Plaintiffs reasonably relied on Defendants' misrepresentations.

26    47.    As a direct and proximate result of Defendants' violations, Plaintiffs suffered injury in

27  fact and lost money.

28    48.    Plaintiffs have complied with Cal. Civil Code § 1782(a).

                                          10

49. Plaintiffs have complied with California Civil Code § 1780(d) by submitting an affidavit attached hereto as Exhibit F.

50. Plaintiffs seek injunctive relief against both Jamba and Inventure, in the form of an order prohibiting Defendants from engaging in the misconduct described herein and requiring Defendants to perform a corrective advertising campaign. Plaintiffs, on behalf of themselves and all others similarly situated, seek damages and restitution against Jamba and Inventure.

## SECOND CAUSE OF ACTION

**California False Advertising Law – Cal. Bus. & Prof. Code §§ 17500, *et seq*.**

51. Plaintiffs incorporate by reference and reallege all previous paragraphs.

52. Defendants engaged in unlawful, unfair, and/or fraudulent conduct under California Business & Professions Code §§ 17500, *et seq*., by representing that the smoothie kits are "All Natural," when they are not.

53. Defendants committed such violations of the False Advertising Law with actual knowledge or knowledge fairly implied on the basis of objective circumstances.

54. Plaintiffs reasonably relied on Defendants' representations made in violation of California Business & Professions Code §§ 17500, *et seq*.

55. As a result of Defendants' violations, Plaintiffs suffered injury in fact and lost money.

56. Accordingly, Plaintiffs, on behalf of themselves and all others similarly situated, seek restitution and injunctive relief against both Defendants in the form of an order prohibiting Defendants from engaging in the alleged misconduct described herein, and requiring Defendants to perform a corrective advertising campaign.

## THIRD CAUSE OF ACTION

**California Unfair Competition Law – Cal. Bus. & Prof. Code §§ 17200, *et seq*.**

57. Plaintiffs incorporate by reference and reallege all previous paragraphs.

Defendants engaged in unlawful, unfair, and/or fraudulent conduct under California Business & Professions Code §§ 17200, *et seq*., by representing and/or approving the representations that the smoothie kits are "All Natural," when they are not.

11

58.     Defendants' conduct is unlawful in that it violates the Consumers Legal Remedies Act, California Civil Code §§ 1750, *et seq.*, the False Advertising Law, California Business & Professions Code §§ 17500, *et seq.*, California's Sherman Food, Drug & Cosmetic Law, California Health and Safety Code § 109875 *et seq.*, including but not limited to, §§ 110290, 110390, 110395, 110398, 110400, and 110660, and California state warranty law, Cal. Com. Code § 2313.

59.     Defendants' conduct is unfair in that it offends established public policy and/or is immoral, unethical, oppressive, unscrupulous and/or substantially injurious to Plaintiffs and Class members. The harm to Plaintiffs and Class members arising from Defendants' conduct outweighs any legitimate benefit Defendants derived from the conduct. Defendants' conduct undermines and violates the stated spirit and policies underlying the Consumers Legal Remedies Act, False Advertising Law, California's Sherman Food Drug & Cosmetic Law, and California state warranty lawas alleged herein.

60.     Defendants' conduct is fraudulent in that the misrepresentations on the smoothie kits are likely to deceive reasonable consumers.

61.     Plaintiffs relied on Defendants' misrepresentations and/or approval of the misrepresentations on the smoothie kits.

62.     As a direct result of Defendants' violations, Plaintiffs suffered injury in fact and lost money.

63.     Accordingly, Plaintiffs, on behalf of themselves and all others similarly situated, seek restitution and injunctive relief against both Defendants in the form of an order prohibiting Defendants from engaging in the alleged misconduct described herein, and requiring Defendants to perform a corrective advertising campaign.

## FOURTH CAUSE OF ACTION

### (Breach of Express Warranty, Cal. Com. Code § 2313)

64.     Plaintiffs incorporate by reference and reallege all previous paragraphs. This claim is brought by Plaintiffs on behalf of themselves and the Class.

65.     Defendants made an express warranty and/or approved the use of the express warranty to Plaintiffs and members of the Class that the food products they were purchasing were "all natural."

12

1    66.    The "all natural" express warranty made to Plaintiffs and the Class appear on every

2  package of the smoothie kits labeled "all natural" and were also reinforced by appearing in numerous

3  other forms of advertising commissioned by Inventure and Jamba. This promise regarding the nature of

4  the products marketed by Inventure and Jamba specifically relates to the goods being purchased and

5  became the basis of the bargain.

6    67.    Plaintiffs and the Class purchased the smoothie kits based on the belief that they

7  conformed to the express warranties that were made on the smoothie kits' packaging.

8    68.    Defendants breached the express warranty made to Plaintiffs and members of the Class

9  by failing to supply goods that conformed to the warranty made. As a result, Plaintiffs and the members

10  of the Class suffered injury and deserve to be compensated for the damages they suffered.

11

12    69.    Plaintiffs and the members of the Class paid money for the smoothie kits. However,

13  Plaintiffs and the members of the Class did not obtain the full value of the advertised products. If

14  Plaintiffs and other members of the Class had known of the true nature of the smoothie kits, they would

15  not have purchased the smoothie kits, would have purchased less of the smoothie kits or would have

16  paid less for the smoothie kits. Accordingly, Plaintiffs and members of the Class have suffered injury in

17  fact and lost money or property as a result of Defendants' wrongful conduct.

18    70.    Plaintiffs and the Class are therefore entitled to recover damages, punitive damages,

19  equitable relief such as restitution and disgorgement of profits, and declaratory and injunctive relief.

20    **WHEREFORE**, Plaintiffs, on behalf of themselves and Class members, pray for relief as

21  follows:

22    A.    For an order that this action may be maintained as a class action under Rule 23 of the

23  Federal Rules of Civil Procedure, that Plaintiffs be appointed as Class representatives, and that

24  Plaintiffs' counsel be appointed as counsel for the Class;

25    B.    Restitution in such amount that Plaintiffs and all Class members paid to purchase the

26  smoothie kits, or the profits Defendants obtained from those transactions.

27    C.    Actual compensatory damages for economic losses in such amount that Plaintiffs and

28  all Class members paid to purchase the smoothie kits.

1    D.    An order enjoining Defendants from engaging in the misconduct described herein and

2  requiring them to perform a corrective advertising campaign.

3    E.    An order awarding Plaintiffs their costs of suit incurred herein, including expert witness

4  fee and reasonable attorneys' fees andpre and post-judgment interest, at the legal rate.

5    F.    An order requiring an accounting for, and imposition of a constructive trust upon, all

6  monies received by Defendant as a result of the unfair, misleading, fraudulent and unlawful conduct

7  alleged herein.

8    G.    Such other and further relief as may be deemed necessary or appropriate.

9                                **DEMAND FOR JURY TRIAL**

10            Plaintiffs hereby demand a trial by jury of all claims so triable.

11  DATED: June 28, 2013                    **FINKELSTEIN THOMPSON LLP**

12

13                                By: _Danielle A. Stoumbos_

14

15                                Rosemary M. Rivas
                                   Danielle A. Stoumbos
16                                505 Montgomery Street, Suite 300
                                   San Francisco, California 94111
17                                Telephone: (415) 398-8700
                                   Facsimile: (415) 398-8704
18

19                                Marc L. Godino
                                   **GLANCY BINKOW & GOLDBERG LLP**
20                                1925 Century Park East, Suite 2100
                                   Los Angeles, CA 90067
21                                Telephone: (310) 201-9150
                                   Facsimile: (310) 201-9160
22

23                                *Counsel for Individual and Representative Plaintiffs Aleta*
24                                *Lilly and David Cox*

25

26

27

28

                                          14
                             CLASS ACTION COMPLAINT
                                      CASE NO.

# EXHIBIT A

# Caribbean Passion®

| Nutrition Facts | | |
| --- | --- | --- |
| **Caribbean Passion®** | | |
| **Serving Size:** | 1/2 pouch (113g) 8 fl oz prepared | |
| Servings per container: 2 | As Packaged | % Daily Value** Prepared** |
| Calories | 70 | 120 |
| Calories From Fat | 0 | 5 |
| **Total Fat 0g** | 0% | 1% |
| Saturated Fat 0g | 0% | 0% |
| Trans Fat 0g | | |
| Cholesterol 5mg | 0% | 0% |
| Sodium 25mg | 1% | 1% |
| Total Carbohydrates 16g | 5% | 10% |
| Dietary Fiber 1g | 4% | 6% |
| Sugars 12g | | |
| Protein 2g | | |
| Vitamin A | 10% | 10% |
| Vitamin C | 100% | 100% |
| Calcium | 4% | 6% |
| Iron | 0% | 2% |

*As prepared with 100% Apple Juice, one serving provides 25mg sodium, 29g total carbohydrate (23g sugars).

**Percent Daily Values are based on a 2,000 calorie diet.

INGREDIENTS: MANGOS, STRAWBERRIES, PEACHES, WATER, NONFAT YOGURT (CULTURED PASTEURIZED FAT FREE MILK, FAT FREE MILK SOLIDS), PASSION FRUIT JUICE, SUGAR, CONTAINS LESS THAN 2% OF: ASCORBIC ACID, MODIFIED CORN STARCH, NATURAL FLAVOR, SKIM MILK, STEVIOL GLYCOSIDES, XANTHAN GUM.
CONTAINS: MILK.



# EXHIBIT B

# Strawberries Wild®

| Nutrition Facts | | ☒ |
|---|---|---|
| **Strawberries Wild®** | | |
| **Serving Size:** | 1/2 pouch (113g) 8 fl oz prepared | |
| Servings per container: 2 | As Packaged | % Daily Value** Prepared* |
| Calories | 80 | 110 |
| Calories From Fat | 5 | 5 |
| **Total Fat 0g** | 0% | 0% |
| Saturated Fat 0g | 0% | 0% |
| Trans Fat 0g | | |
| **Cholesterol 0mg** | 0% | 0% |
| **Sodium 30 mg** | 1% | 1% |
| **Total Carbohydrates 15g** | 5% | 9% |
| Dietary Fiber 1g | 4% | 4% |
| Sugars 11g | | |
| **Protein 2g** | | |
| **Vitamin A** | 0% | 0% |
| **Vitamin C** | 100% | 100% |
| **Calcium** | 4% | 4% |
| **Iron** | 0% | 0% |

*As prepared with 100% Apple Juice, one serving provides 30mg
sodium, 27g total carbohydrate (24g sugars).

**Percent Daily Values are based on a 2,000 calorie diet.

INGREDIENTS: STRAWBERRIES, NONFAT YORGURT (CULTURED PASTEURIZED
NONFAT MILK, FAT FREE MILK SOLIDS), BANANAS, WATER, SUGAR, CONTAINS
2% OR LESS OF: MODIFIED CORN STARCH, NATURAL FLAVOR, XANTHAN GUM,
STEVIOL GLYCOSIDES, ASCORBIC ACID, CITRIC ACID.
CONTAINS: MILK.



# EXHIBIT C

## Razzmatazz®

| Nutrition Facts | | ☒ |
|---|---|---|
| **Razzmatazz®** | | |
| **Serving Size:** | 1/2 pouch (113g) 8 fl oz prepared | |
| Servings per container: 2 | As Packaged | % Daily Value** Prepared* |
| Calories | 80 | 110 |
|   Calories From Fat | 0 | 0 |
| Total Fat 0g | 0% | 0% |
|   Saturated Fat 0g | 0% | 0% |
|   Trans Fat 0g | | |
| Cholesterol 0mg | 0% | 0% |
| Sodium 15mg | 1% | 1% |
| Total Carbohydrates 14g | 5% | 9% |
|   Dietary Fiber 2g | 8% | 8% |
|   Sugars 10g | | |
| Protein 3g | | |
| Vitamin A | 0% | 0% |
| Vitamin C | 100% | 100% |
| Calcium | 4% | 4% |
| Iron | 2% | 2% |

*As prepared with 100% Apple Juice, one serving provides 25mg sodium, 26g total carbohydrate (23g sugars).

**Percent Daily Values are based on a 2,000 calorie diet.

INGREDIENTS: STRAWBERRIES, RASPBERRIES, BLUEBERRIES, NONFAT YOGURT (CULTURED PASTEURIZED NONFAT MILK, FAT FREE MILK SOLIDS), WATER, SUGAR, CONTAINS 2% OR LESS OF: BANANAS MODIFIED CORN STARCH, XANTHAN GUM, STEVIOL GLYCOSIDES, ASCORBIC ACID, CITRIC ACID. CONTAINS: MILK.



# EXHIBIT D

# Orange Dream Machine®

| Nutrition Facts | | ⊠ |
|---|---|---|
| Orange Dream Machine® | | |
| **Serving Size:** | 1/2 pouch (116 g) 8 fl oz prepared | |
| Servings per container: 2 | As Packaged | % Daily Value** Prepared* |
| Calories | 90 | 140 |
| Calories From Fat | 15 | 15 |
| **Total Fat 1.5g** | **2%** | **2%** |
| Saturated Fat 1g | 5% | 5% |
| Trans Fat 0g | | |
| Cholesterol 10mg | 3% | 3% |
| **Sodium 85mg** | **3%** | **6%** |
| Total Carbohydrates 15g | 5% | 9% |
| Dietary Fiber 1g | 4% | 4% |
| Sugars 13g | | |
| Protein 4g | | |
| Vitamin A | 4% | 4% |
| Vitamin C | 100% | 100% |
| Calcium | 4% | 4% |
| Iron | 2% | 2% |

*As prepared with 100% Apple Juice, one serving provides 25mg
sodium, 26g total carbohydrate (23g sugars).

**Percent Daily Values are based on a 2,000 calorie diet.

INGREDIENTS: PEACHES, WATER, NONFAT YOGURT (CULTURED PASTEURIZED
FAT FREE MILK, FAT FREE MILK SOLIDS), SKIM MILK, MILK, SUGAR, ORANGE
JUICE CONCENTRATE, CREAM, CONTAINS LESS THAN 2% OF: ASCORBIC
ACID, GELATIN, MODIFIED CORN STARCH, NATURAL FLAVOR, STEVIOL
GLYCOSIDES, VANILLA EXTRACT, XANTHAN GUM.
CONTAINS: MILK
GLUTEN FREE



# EXHIBIT E

# Mango-a-go-go®

| Nutrition Facts | | ☒ |
|---|---|---|
| Mango-a-go-go® | | |
| **Serving Size:** | 1/2 pouch (113g) 8 fl oz prepared | |
| Servings per container: 2 | As Packaged | % Daily Value** Prepared* |
| Calories | 70 | 120 |
| Calories From Fat | 0 | 0 |
| Total Fat 0g | 0% | 0% |
| Saturated Fat 0g | 0% | 0% |
| Trans Fat 0g | | |
| Cholesterol 0mg | 0% | 0% |
| Sodium 15 mg | 1% | 1% |
| Total Carbohydrates 17 g | 6% | 10% |
| Dietary Fiber 1 g | 4% | 4% |
| Sugars 15g | | |
| Protein 1g | | |
| Vitamin A | 0% | 0% |
| Vitamin C | 100% | 100% |
| Calcium | 4% | 4% |
| Iron | 0% | 0% |

*As prepared with 100% Apple Juice, one serving provides 30mg sodium, 29g total carbohydrate (28g sugars).

**Percent Daily Values are based on a 2,000 calorie diet.

INGREDIENTS: MANGOS, WATER, PINEAPPLE, NONFAT YOGURT (CULTURED PASTEURIZED NONFAT MILK, FAT FREE MILK SOLIDS), CONTAINS 2% OR LESS OF: PASSION FRUIT JUICE, SUGAR, PINEAPPLE JUICE CONCENTRATE, MODIFIED CORN STARCH, XANTHAN GUM, STEVIOL GLYCOSIDES, ASCORBIC ACID.
CONTAINS: MILK.



# EXHIBIT F

## AFFIDAVIT OF DANIELLE A. STOUMBOS

I, Danielle A. Stoumbos, declare as follows:

1.      I am an attorney with the law firm Finkelstein Thompson LLP, counsel for Plaintiffs Aleta Lilly and David Cox and the Proposed Class in this action. I am admitted to practice law in California and before this Court, and am a member in good standing of the State Bar of California. This declaration is made pursuant to California Civil Code section 1780(d). I make this declaration based on my research of public records and also upon personal knowledge and, if called upon to do so, could and would testify competently thereto.

2.      Based on my research of publicly available records, and as alleged in the accompanying Class Action Complaint, Defendant Jamba Juice Company maintains its principal place of business in Emeryville, California and conducts business within this Judicial District and Defendant Inventure Foods, Inc. conducts business within this Judicial District.

I declare under penalty of perjury under the laws of the United States and the State of California this 27th day of June, 2013 in San Francisco, California that the foregoing is true and correct.

Danielle A. Stoumbos

## CERTIFICATE OF ACKNOWLEDGMENT

State of California

County of San Francisco

On 6/27/13 before me, Mirna A. Vasquez,

personally appeared Danielle Alissa Stoumbos,

Who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf o which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.



MIRNA A. VASQUEZ
Commission # 1937626
Notary Public - California
San Francisco County
My Comm. Expires May 21, 2015

# EXHIBIT G



# SmartSource
*magazine*

**Enter the Summer Blastoff Sweepstakes for a Chance To Win a Backyard Makeover!**

## Jamba.

All Natural
**SMOOTHIES**
Just Add Juice
**Razzmatazz®**
Strawberry, Raspberry and Blueberry with Non-Fat Yogurt

Makes
**2-8**
Sm



# SAVE $1.00

**on any TWO Jamba® 8oz. Frozen Smoothie Kits**
Not Valid At Jamba Juice Store Locations


0884038-100041

Coupon void if altered, copied, sold, purchased, transferred, exchanged, or where prohibited or restricted by law. **Consumer:** Limit one coupon per specified item(s) purchased. This coupon good only on product sizes and varieties indicated. **Retailer:** Inventure Foods will reimburse you face value plus 8¢ handling for all coupons redeemed in accordance with this offer. Consumer must pay sales tax. Good only in USA. Send coupons to Inventure Foods, Inmar Dept. #14076, 1 Fawcett Drive, Del Rio, Texas 78840. Cash Value .001¢.

MANUFACTURER COUPON    OFFER EXPIRES: 7/31/2012




**In the frozen aisle**