UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALETA LILLY, et al.,<br><br>  Plaintiffs,<br><br>  v.<br><br>JAMBA JUICE COMPANY, et al.,<br><br>  Defendants. | Case No. 13-cv-02998-JST<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION; VACATING ORDER TO SHOW CAUSE; SETTING CASE MANAGEMENT CONFERENCE**<br><br>Re: ECF No. 29-3 |

## I.   INTRODUCTION

In this action challenging the labeling of Jamba Juice home smoothie kits, Plaintiffs Aleta Lilly and David Cox ("Plaintiffs") have moved to certify the following class: "all persons in California who bought one of the following Jamba Juice Smoothie Kit products: Mango-a-go-go, Strawberries Wild, Caribbean Passion, Orange Dream Machine, and Razzmatazz." Plaintiffs' Motion for Class Certification ("Mot."), at 2, ECF No. 29-4. The matter came for hearing August 21, 2014.

## II.   BACKGROUND

### A.   Factual Background

Since 2010, Defendants Jamba Juice Company and Inventure Foods, Inc. ("Defendants") have produced at-home frozen smoothie kits for sale in retail grocery stores, big box stores, and wholesale clubs throughout California. Class Action Complaint ("Compl.") ¶¶ 2-3 (ECF No. 1-1). The Smoothie Kits, which come in five flavors, are sold in a three-sided pouch with the words "All Natural" appearing prominently on the front of the package. Compl. ¶ 3; see also, Exh. 1 to Declaration of Rosemary M. Rivas. Plaintiffs allege that the Smoothie Kits contain ascorbic acid, xanthan gum, steviol glycosides, modified corn starch, and gelatin (the "challenged ingredients").

Compl. ¶¶ 121-29.

Plaintiff Aleta Lilly purchased the "Strawberries Wild" and "Caribbean Passion" smoothie kits from March 2010 to November 2012. Compl. ¶ 12. Plaintiff David Cox purchased the "Caribbean Passion" smoothie kits "within the last three years." Compl. ¶ 13. Plaintiffs allege that, in making their purchases, they relied on the representation that the smoothie kits are "all-natural," and they believe that because the Smoothie Kits contain the challenged ingredients, the kits are not "all natural." Compl. ¶¶ 12-13.

### B.  Procedural History

Plaintiffs Lilly and Cox filed a proposed class action complaint in this action in June 2013. The complaint brings causes of action under the California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 *et seq.*, the California False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500 *et seq.*, the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*, and for breach of warranty pursuant to Cal. Comm. Code § 2313. ¶¶ 42-70.

In November, the Court denied Defendants' motion to dismiss. 2013 WL 6070503 (N.D. Cal. Nov. 18, 2013). This motion for class certification followed.

### C.  Jurisdiction

After reviewing the parties' responses to the Court's Order to Show Cause regarding Subject-Matter Jurisdiction, and the evidence submitted in support of those responses, the Court has determined that it has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2) & (6), the Class Action Fairness Act of 2005 ("CAFA"). Considering all Proposed Class members' claims, the "matter in controversy" exceeds $5,000,000, exclusive of interests and costs, and at least one plaintiff and defendant are citizens of different states. Even though the Proposed Class is composed entirely of California residents, the "local controversy" exception to CAFA jurisdiction does not require dismissal, for reasons persuasively explained in Phillips v. Kaiser Found. Health Plan, Inc., 953 F. Supp. 2d 1078, 1086 (N.D. Cal. 2011). The Court's order to show cause is VACATED.

**D.     Legal Standard**

Class certification under Rule 23 is a two-step process. First, Plaintiff must demonstrate that the four requirements of 23(a) are met: "numerosity," "commonality," "typicality," and "adequacy." "One or more members of a class may sue or be sued as representative parties on behalf of all members only if (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. Pro. 23(a). "Class certification is proper only if the trial court has concluded, after a 'rigorous analysis,' that Rule 23(a) has been satisfied." Wang v. Chinese Daily News, Inc., 709 F.3d 829, 833 (9th Cir. 2013) (quoting Wal-Mart Stores, Inc. v. Dukes ("Dukes"), ___ U.S. ___, 131 S.Ct. 2541, 2551 (2011)).

Second, a plaintiff must also establish that one of the bases for certification in Rule 23(b) is met. Here, Plaintiffs invoke 23(b)(3), which requires plaintiffs to prove the elements of "predominance" and "superiority": "questions of law or fact common to class members predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. Pro. 23(b)(3).[1]

The party seeking class certification bears the burden of demonstrating by a preponderance of the evidence that all four requirements of Rules 23(a) and at least one of the three requirements under Rule 23(b) are met. See Dukes, 131 S.Ct. at 2551 ("A party seeking class certification must

---

[1] Plaintiffs' complaint also seeks to certify an injunctive relief class pursuant to Rule 23(b)(2). Compl. ¶¶ 33, 41, 70, 70(D). In their motion, however, Plaintiffs fail directly to address whether they have established the required criterion for a Rule 23(b)(2) class: that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." At the hearing on this motion, the Court ordered supplemental briefing on the question of whether Plaintiffs have standing to seek injunctive relief. In this order, the Court only addresses Plaintiffs' motion insofar as they seek certification of a 23(b)(3) damages class; the Court will address the certification of a Rule 23(b)(2) class by separate order.

affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc.").

In addition, "[w]hile it is not an enumerated requirement of Rule 23, courts have recognized that 'in order to maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable.'" Vietnam Veterans of Am. v. C.I.A., 288 F.R.D. 192, 211 (N.D. Cal. 2012) (quoting DeBremaecker v. Short, 433 F.2d 733, 734 (5th Cir. 1970)).

### III. ANALYSIS

#### A. Ascertainability/Definiteness

In their motion, Plaintiffs do not specifically address the "ascertainability" requirement. In their opposition, Defendant argues that Plaintiffs have failed to demonstrate the existence of an ascertainable class, and that this failure should defeat class certification. Defendants' Response to Motion for Class Certification ("Response") 3-5 (ECF No. 39).

The Court is unaware of the Ninth Circuit or the Supreme Court ever explicitly acknowledging in any published opinion that "ascertainability" or "definiteness" is a required element of class certification that imposes obligations independent of the enumerated Rule 23 factors. But see Berger v. Home Depot USA, Inc., 741 F.3d 1061, 1071, n. 4 (9th Cir. 2014) (referring, in dicta, to the "threshold ascertainability test"); Pierce v. County of Orange, 526 F.3d 1190, 1200 (9th Cir. 2008) (concluding that the district court did not abuse its discretion in decertifying a damages class because "Rule 23(b)(3) would not offer a superior method for fair and efficient adjudication in light of expected difficulties identifying class members"); Martin v. Pac. Parking Sys. Inc., No. 12-56654, 2014 WL 3686135, at *1 (9th Cir. July 25, 2014) (unpublished) ("Given these difficulties identifying the members of the proposed class, and the fact that Martin proposed no plan to the district court for manageably determining which individuals are members, we conclude that the court did not abuse its discretion in denying class certification").

However, this Court joins numerous circuit courts and courts of this district in finding that

this criterion is an inherent requirement of at least Rule 23(b)(3) class actions.[2] See William B. Rubenstein, Newberg on Class Actions ("Newberg") §§ 3:1-3:3 (5th ed.) (collecting cases). "A class definition is sufficient if the description of the class is 'definite enough so that it is administratively feasible for the court to ascertain whether an individual is a member.'" Viet. Veterans, 288 F.R.D. at 211 (quoting O'Connor v. Boeing N. Am., Inc., 184 F.R.D. 311, 319 (C.D. Cal. 1998)). "Administrative feasibility means that identifying class members is a manageable process that does not require much, if any, individual factual inquiry." Newberg § 3:3. However, "the class need not be so ascertainable that every potential member can be identified at the commencement of the action." Mazur v. eBay, Inc., 257 F.R.D. 563, 567 (N.D. Cal. 2009) (quoting O'Connor, 184 F.R.D. 311, 319 (C.D. Cal. 1998) (internal quotations omitted).

Courts have examined at least three types of "ascertainability" (or "definiteness") concerns in determining whether class certification is appropriate. First, "[a]n identifiable class exists if its members can be ascertained by reference to objective criteria." Manual for Complex Litigation (4th) § 21.222. "The order defining the class should avoid subjective standards (e.g., a plaintiff's state of mind) or terms that depend on resolution of the merits (e.g., persons who were discriminated against)." Id. See, e.g., Xavier v. Philip Morris USA Inc., 787 F. Supp. 2d 1075, 1089 (N.D. Cal. 2011) (denying certification where "[t]he question" of class membership "would come down to the state of mind of the putative class member, and it would be easy to fade in or out of the class depending on the outcome."). Here, the class definition is based on objective

---

[2] Demonstrating that class members can be feasibly identified could be considered a requirement of 23(b)(3)(D)'s "manageability" prong rather than a separate, free-standing requirement of Rule 23 as a whole. See Pierce, 526 F.3d at 1200. If "ascertainability" is properly located within Rule 23(b)(3)(D), it would not be a requirement for Rule 23(b)(1) or 23(b)(2) classes, and it would have less applicability to class action settlements, since, when "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, see Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial." Amchem Products, Inc. v. Windsor, 521 U.S. 591, 620 (1997). The Court need not parse the distinction in this case, since in this opposed class certification motion for certification of a Rule 23(b)(3) class, a lack of ascertainability would defeat class certification in either event.

criteria that do not depend on the resolution of the merits, and Defendants do not argue otherwise.

Second, some courts appear to accept the argument, advanced by Defendants here, that the ascertainability analysis requires district courts to deny certification if the class includes any members who will not be able to recover. See Wright & Miller, 7A Fed. Prac. & Proc. Civ. § 1760 (3d ed.) ("Some courts also have considered whether the class definition must exclude anyone who does not have a viable claim.") For reasons more fully explained in a previous order, the undersigned does not endorse this view. See Rodman v. Safeway, Inc., No. 11-cv-03003-JST, 2014 WL 988992, at *15-16 (N.D. Cal. Mar. 10, 2014); accord In re ConAgra Foods, Inc., __ F. Supp. 2d __, No. 11-cv-05379 MMM AGRX, 2014 WL 4104405, at *20-22 (C.D. Cal. Aug. 1, 2014) (collecting cases in thorough analysis of relevant case law). "When rejecting class certification based on overbreadth . . . the problem lies in the court's ability to ascertain the class, not whether the putative classmembers have [each] been aggrieved." Kurihara v. Best Buy Co., Inc., No. 06-cv-01884 MHP, 2007 WL 2501698, at *5 (N.D. Cal. Aug. 30, 2007) (citing Mateo v. M/S Kiso, 805 F.Supp. 761, 773 (N.D. Cal. 1992)).

Third and finally, some courts have denied class certification motions, even when the criteria for class membership are objective, if plaintiffs cannot show at the class certification stage that they will be able to locate the absent class members. In a line of recent cases, the Third Circuit has accepted this argument, as has at least one court in this district. Carrera v. Bayer Corp., 727 F.3d 300, 308 (3d Cir. 2013); Hayes v. Wal-Mart Stores, Inc., 725 F.3d 349, 356 (3d Cir. 2013); Sethavanish v. ZonePerfect Nutrition Co., No. 12-cv-2907-SC, 2014 WL 580696, at *4-6 (N.D. Cal. Feb. 13, 2014). Defendants argue that the Court should reject certification here because, as in those cases, neither Plaintiffs nor Defendants have produced records demonstrating which specific individuals (other than the named Plaintiffs) purchased the challenged smoothie kits from the retail outlets to which Defendants distributed them.

"[I]t appears that pursuant to Carerra in any case where the consumer does not have a verifiable record of its purchase, such as a receipt, and the manufacturer or seller does not keep a record of buyers, Carerra prohibits certification of the class." McCrary v. Elations Co., LLC, No.

1  13-cv-00242 JGB OP, 2014 WL 1779243, at *8 (C.D. Cal. Jan. 13, 2014).  At oral argument on
2  this motion, Defendants' counsel straightforwardly acknowledged that this is, in fact, the logical
3  consequence of the Carrera decision.  But "[w]hile this may now be the law in the Third Circuit, it
4  is not currently the law in the Ninth Circuit."  Id. (citing cases).

5        Adopting the Carrera approach would have significant negative ramifications for the
6  ability to obtain redress for consumer injuries.  Few people retain receipts for low-priced goods,
7  since there is little possibility they will need to later verify that they made the purchase.[3]  Yet it is
8  precisely in circumstances like these, where the injury to any individual consumer is small, but the
9  cumulative injury to consumers as a group is substantial, that the class action mechanism provides
10 one of its most important social benefits.   In the absence of a class action, the injury would go
11 unredressed.  See Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 161 (1974) ("since [n]o competent
12 attorney would undertake this complex antitrust action to recover so inconsequential an
13 amount . . . [e]conomic reality dictates that petitioner's suit proceed as a class action or not at
14 all.").  Moreover, while difficulties identifying class members may frustrate the compensatory
15 purposes of class action litigation, "[a] class action, like litigation in general, has a deterrent as
16 well as a compensatory objective."  Hughes v. Kore of Indiana Enterprise, Inc., 731 F.3d 672,
17 677-79 (7th Cir. 2013); see also Coneff v. AT & T Corp., 673 F.3d 1155, 1159 (9th Cir. 2012)
18 (discussing a "primary policy rationale for class actions, as discussed by the district court in terms
19 of deterrence.").

20       Before rejecting the proposition, however, it is worth considering the reasons that have
21 motivated courts to require a plan to identify specific class members at the class certification stage.
22 Two reasons appear to be paramount.

23       The first concern is that if it is impossible to actually deliver to class members the notice

---

[3] See MITCH HEDBERG, *Minibar*, on STRATEGIC GRILL LOCATIONS (Comedy Central Records, 2003) ("I bought a doughnut, and they gave me a receipt for the doughnut.  I don't need a receipt for the doughnut, man.  I'll just give you the money, then you give me the doughnut.  End of transaction.  We don't need to bring ink and paper into this.  I just cannot imagine a scenario where I would have to prove that I got a doughnut.  Some skeptical friend?  'Don't even act like I didn't get that doughnut.  I got the documentation right here.'")

and relief to which they are entitled, it would be unfair to bind them to any final judgment; and if the class action is insufficient to release absent class members of their claims, it would deprive defendants of the benefit of global peace. See Marcus v. BMW of North Am., LLC, 687 F.3d 583, 593 (3d Cir. 2012) (ascertainability requirement "protects absent class members by facilitating the 'best notice practicable' under Rule 23(c)(2)" and "protects defendants by ensuring that those persons who will be bound by the final judgment are clearly identifiable.); Carrera, 727 F.3d at 307 ("at the commencement of a class action, ascertainability and a clear class definition allow potential class members to identify themselves for purposes of opting out of a class" and "ensures that a defendant's rights are protected by the class action mechanism").

This concern is legitimate, but our law has long recognized that direct notice to every class member is not always possible. What Rule 23 and the Due Process Clause require is "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. Pro. 23(c)(2)(B); see also Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 812 (1985) ("The notice must be the best practicable, 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'") (quoting Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314-15 (1950)).

Plaintiffs here have submitted a detailed plan for notice prepared by a commissioned media and notice expert, indicating that they will attempt to provide direct notice to many retail customers whose contact information may be on file with the retailer (such as those who purchased products from the retailer with store-specific membership cards), and that an extensive but targeted internet and print media campaign will be aimed at providing notice to other potential class members. Declaration of Alan Vazquez (ECF No. 42-1, at ECF Page Nos. 17-26). After reviewing the proposal, the Court sees no reason to conclude at this stage that the plan to identify class members will fail to comport with due process. This distinguishes this case from those in which plaintiffs provided *no* plan to ascertain class membership. Cf. Sethavanish, 2014 WL 580696, at *6 ("In the instant action, Plaintiff has yet to present any method for determining class

membership, let alone an administratively feasible method."); Martin, 2014 WL 3686135, at *1 ("Given these difficulties identifying the members of the proposed class, and the fact that Martin proposed no plan to the district court for manageably determining which individuals are members, we conclude that the court did not abuse its discretion in denying class certification").

There is a second concern that appears to have motivated at least some other courts to require identification of actual class members at the certification stage. This case, like others, will require at least some potential class members to respond to a general notice and then assert their class membership by attesting to the fact that they purchased the challenged products. The Carrera court, among others, objected to this, arguing that "[a] defendant in a class action has a due process right to raise individual challenges and defenses to claims," and "has a similar, if not the same, due process right to challenge the proof used to demonstrate class membership as it does to challenge the elements of a plaintiff's claim." 727 F.3d 300 at 307; see also Marcus, 687 F.3d at 594 ("forcing . . . [defendants] to accept as true absent persons' declarations that they are members of the class, without further indicia of reliability, would have serious due process implications"); Hayes, 725 F.3d at 356 ("This petition for class certification will founder if the only proof of class membership is the say-so of putative class members.").

But Plaintiffs are not proposing to establish the fact or extent of a defendant's *liability* through the notice and claim administration process. The notice process is a way to deliver class members their relief, but the amount of liability will be proven at trial. Defendants would certainly be entitled to object to a process through which a non-judicial administrator "ascertains" each applicant's class membership on the basis of the applicants' own self-identification, gives a defendant no opportunity to challenge that determination, and then racks up the defendant's bill every time an individual submits a form. But the fact and extent of Defendants' liability will be proven by admissible evidence submitted at summary judgment or at trial, or it will not be proven at all. In other words, it is Plaintiffs' burden is to establish, with admissible evidence, that Defendants' challenged labeling practices violated to the law, *and* to produce evidence of the *total damages* to which the Class is entitled. Plaintiffs cannot lighten their burden by leaning on the

9

responses to the class notice (unless those responses are provided, in admissible form, as evidence to the Court, subject to Defendants' right to challenge and object). But neither can Defendants shortcut the class action process by claiming that these responses will have some impact on their liability.

The Carrera court recognized this important distinction, acknowledging Carrera's argument that "affidavits attesting to class membership will only be used to determine to whom to pay the refund, and in what amount," and that therefore, any inaccurate claim submissions will not affect the defendant's due process rights. 727 F.3d at 310. The Third Circuit was dissatisfied with this explanation, however, concluding that "[i]f fraudulent or inaccurate claims materially reduce true class members' relief," those true class members might be able to challenge the adequacy of the named plaintiff's representation. Id. If successful, those class members would not be bound by the judgment and could bring their own claims against the defendant. Id.

This concern seems, at best, premature at this stage of the litigation. If the responses to class notice present the specter of diluting legitimate claims, the Court can address the issue at that point, especially (but not exclusively) if absent class members appear to object. But that speculative possibility is not a compelling reason to refuse to certify any class at all. If the problem is that some absent class members may get less relief than they are entitled to, it would be a strange solution to deprive absent class members of any relief at all.

Plaintiffs have demonstrated that the class is sufficiently ascertainable.

### B. Typicality and Adequacy

Typicality ensures that "the interests of the named representatives align with the interests of the class." Wolin v. Jaguar Land Rover N. Am. LLC, 617 F.3d 1168, 1175 (9th Cir. 2010). "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992) (quoting Schwartz v. Harp, 108 F.R.D. 279, 282 (C.D. Cal. 1985). "The adequacy of representation requirement ... requires that two questions be addressed: (a) do

the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 462 (9th Cir. 2000).

"The adequacy-of-representation requirement 'tend[s] to merge' with the commonality and typicality criteria of Rule 23(a)." Amchem Products, Inc. v. Windsor, 521 U.S. 591, 626, n. 20 (1997) (quoting Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 158, n. 13 (1982). Among other functions, these requirements serve as ways to determine whether "the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." Falcon, 457 U.S. at 158, n. 13.

Named Plaintiffs Lilly and Cox clearly have a similar alleged injury as the rest of the proposed class, since they purchased products that are the same as, or very similar to, the products challenged by the rest of the proposed class. Their claims are not based on any conduct that is unique to them. There are no apparent conflicts between the named Plaintiffs, their counsel, and the proposed class, and neither is there any reason to believe they will not prosecute the action vigorously or adequately protect the absent class members' interests.

Defendants argue that Lilly and Cox are unrepresentative and atypical because they have sometimes consumed other products that contain the ingredients they complain of here. This argument misapprehends the Plaintiffs' complaint; when Lilly and Cox consumed those other products, they did so with full knowledge of what they were eating, because the ingredients were disclosed. That the named Plaintiffs sometimes consume products with ingredients they challenge in this action does not harm their case any more than a person who sometimes eats ice cream would be deprived of her legal ability to challenge a product falsely labeled to contain no sugar. Defendants also argue that some of Plaintiffs' deposition testimony indicates they may have purchased Smoothie Kits for reasons other than the "All Natural" label, but this does not make them atypical for purposes of bringing this action, since their consumer actions do not rise or fall on the basis of their particular experience with the product. Finally, Defendants argue that Plaintiff Lilly is subject to a unique defense because, when asked (over objection), "[d]o you think

1 you were harmed, from purchasing and consuming the smoothie kit?," she answered "no."

2 Deposition of Aleta Lilly, at 75 (ECF No. 40-1). Plaintiff Lilly's layperson understanding of the

3 word "harm" has no effect on her legal claim.

4 Plaintiffs have established typicality and adequacy.

### C. Numerosity

"[C]ourts generally find that the numerosity factor is satisfied if the class comprises 40 or more members." In re Facebook, Inc., PPC Advertising Litig., 282 F.R.D. 446, 452 (N.D. Cal. 2012). Plaintiffs submit, Defendant does not dispute, and the Court concludes based on the record, that this requirement is satisfied.

### D. Superiority

A class action must be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. Pro. 23(b)(3). "The superiority inquiry under Rule 23(b)(3) requires determination of whether the objectives of the particular class action procedure will be achieved in the particular case." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1023 (9th Cir. 1998). "[C]ertification pursuant to Rule 23(b)(3) . . . is appropriate 'whenever the actual interests of the parties can be served best by settling their differences in a single action.'" Id. at 1022 (quoting 7A Wright & Miller, Federal Practice & Procedure § 1777 (2d ed. 1986)).

Here, no class members have any significant interest in pursuing individual litigation, the Court is unaware of any already-commenced litigation concerning the controversy, economies of scale make it desirable to concentrate the claims of these California class members in this California forum, and the Court foresees no likely difficulties in managing this case as a class action. Defendants do not dispute that superiority is established, and the Court concludes that it is.

### E. Commonality and Predominance

"[F]or purposes of Rule 23(a)(2) [e]ven a single [common] question will do." Dukes, 131 S. Ct. at 2556 (internal citation omitted). Where questions common to class members present significant issues that can be resolved in a single adjudication "there is clear justification for handling the dispute on a representative rather than on an individual basis." Amchem, 521 U.S. at

12

623 (internal quotation marks and citation omitted). However, the common contention "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Dukes, 131 S.Ct. at 2551.

In seeking to certifying a Rule 23(b)(3) class, Plaintiff must further show that these common questions "predominate over any questions affecting only individual members." "Considering whether questions of law or fact common to class members predominate begins . . . with the elements of the underlying causes of action." Erica P. John Fund, Inc. v. Halliburton Co., ––– U.S. ––––, 131 S.Ct. 2179, 2184 (2011). In determining whether common questions predominate, the Court identifies the substantive issues related to plaintiff's claims (both the causes of action and affirmative defenses), and then considers the proof necessary to establish each element of the claim or defense; and considers how these issues would be tried. See Schwarzer, et al., Cal. Prac. Guide Fed. Civ. Pro. Before Trial Ch. 10–C § 10:412. The predominance inquiry requires that plaintiff demonstrate that common questions predominate as to each cause of action for which plaintiff seeks class certification. Amchem, 521 U.S. at 620.

Plaintiffs have demonstrated that there are numerous questions common to the class: whether Defendants' "All Natural" representations are false and misleading, whether the Challenged Ingredients may legally be included in a product labeled "All Natural," and whether the representations constitute "unfair" or "unlawful" practices under the UCL, constitute a breach of warranty, or are likely to deceive reasonable consumers in violation of the FAL, CLRA, and UCL. Mot. 10-11. Resolution of these questions, which are common to all class members, "will generate common answers apt to drive the resolution of the litigation." Dukes, 131 S. Ct. at 2551 (quoting Richard A. Nagareda, Class Certification in the Age of Aggregate Proof, 84 N.Y.U.L.Rev. 97, 132 (2009)). Rule 23(a)(2) "does not set forth a mere pleading standard." Dukes, 131 S.Ct. at 2551. But it imposes only the "limited burden" of establishing "a single significant question of law or fact." Mazza v. Am. Honda Motor Co., 666 F.3d 581, 589 (9th Cir. 2012). Plaintiffs have established commonality.

Plaintiffs further argue that these common issues will predominate over any individualized issues. In establishing the elements of a CLRA violation, an inference of common reliance arises if representations are material, and materiality is judged by an objective standard rather than any understandings specific to the individual consumer. Mass. Mut. Life Ins. Co. v. Super. Ct., 97 Cal. App. 4th 1282, 1292-93 (2002). Similarly, Plaintiffs' FAL claim and her claims under the fraudulent prong of the UCL will be determined by a "reasonable consumer standard," which is whether the statement "has a capacity, likelihood or tendency to deceive or confuse the public." Williams v. Gerber Prods. Co., 552 F.3d 934, 938 (9th Cir. 2008). Proving whether the challenged representations qualify under this standard will not require delving into issues specific to each consumer. For similar reasons, proving the "unfair" and "unlawful" prongs of the UCL also do not depend upon any issues specific to individual consumers, and neither does the breach of warranty claim.

Defendants raise two problems with predominance.[4] First, they argue that "the term 'All Natural' is not susceptible to common proof." Resp. 10-11. Second, they argue that Plaintiffs have failed to present a damages model. Resp. 6-10.

### 1. Common Definition of "All Natural"

Defendants argue that the term "All Natural" has no definition established by regulation, and that different consumers understand the term to mean different things. Therefore, Defendants argue that since Plaintiffs have failed to establish at this point that the "All Natural" representation is objectively material, reliance will have to be established individually rather than with an inference of common reliance, defeating predominance.

As support for this argument, Defendants cite two opinions by a judge of the Southern District of California. Astiana v. Kashi Co. ("Kashi"), 291 F.R.D. 493, 508 (S.D. Cal. 2013); Thurston v. Bear Naked, Inc., No. 3:11-cv-02890-H (BGS), 2013 WL 5664985, at *8 (S.D. Cal. July 30, 2013). Recently, a court of this district thoroughly reviewed the relevant California and

---

[4] Defendants argue these issues also endanger commonality, but Mazza held that as long as there is a single common question, "individualized issues raised go to preponderance under Rule 23(b)(3), not to whether there are common issues under Rule 23(a)(2)." 666 F.3d at 589.

14

1    federal case law and persuasively distinguished Kashi and Thurston. Werdebaugh v. Blue
2    Diamond Growers, No. 12-cv-2724-LHK, 2014 WL 2191901, at *12-14, *18 (N.D. Cal. May 23,
3    2014). Cases refusing to certify misrepresentation class actions "generally involve representations
4    that differ for each proposed class member or unique individual decisions." Id., 2014 WL
5    2191901, at *13. Kashi, for example, involved 90 different products, with different advertising
6    campaigns. 291 F.R.D. at 508. But here, as in Werdebaugh, the case "presents specific alleged
7    misrepresentations common to the class." Id., 2014 WL 2191901, at *14. Only one
8    representation is at issue – "All Natural" – as it appears on five products, with substantially the
9    same challenged ingredients.

### 2. Damages

Defendants next argue that "Plaintiffs have entirely failed to demonstrate with evidentiary proof that their damages can be measured on a classwide basis, as required under Comcast Corp. v. Behrend[, __ U.S. __, 133 S.Ct. 1426 (2012)] because Plaintiffs have proposed no specific damages model." Resp. 6. In Comcast, the Court held that a court can certify a Rule 23(b)(3) class only if plaintiffs establish that there is a classwide method of awarding relief that is consistent with the plaintiffs' theory of liability. Id., 133 S.Ct. at 1434-35; see also Jimenez v. Allstate Ins. Co., 12-56112, 2014 WL 4338841 (9th Cir. Sept. 3, 2014) (same); Astiana v. Ben & Jerry's Homemade, Inc., C 10-4387 PJH, 2014 WL 60097 at *12 (N.D. Cal. Jan. 7, 2014) (same).

Plaintiffs propose three methods for calculating damages: (1) restitution of the full purchase price, (2) restitution from Defendant's net profits, and (3) restitution from the portion of revenue attributed to the challenged ingredient. Plaintiffs' Reply Brief in Support of Motion for Class Certification 6-8 (ECF No. 42). Full refunds would be sought as damages solely for violations of the CLRA and restitution would be sought under the UCL and FAL. However, Plaintiffs have not submitted any evidence, expert reports, or even detailed explanation, about how those damages models can be fairly determined or at least estimated. The Court must determine whether Plaintiffs' failure to produce evidence about the feasibility of their damages models defeats class certification.

Before turning to that question, however, the Court needs to address Defendants' suggestion that any damages model Plaintiffs advance also address differences in damages among individual class members as a matter of "predominance." See Response at 7-8. The Ninth Circuit has recently made clear that Comcast does not impose such a burden. In the first of its two opinions applying Comcast, that court reversed a district court for denying certification of a wage-and-hour class on the grounds that class members' damages were individualized. Leyva v. Medline Indus. Inc., 716 F.3d 510, 513 (9th Cir. 2013). Leyva re-affirmed that, even after Comcast, "[i]n this circuit . . . damage calculations alone cannot defeat certification." Id. (quoting Yokoyama v. Midland Nat'l Life Ins. Co., 594 F.3d 1087, 1094 (9th Cir. 2010)). The Ninth Circuit concluded that certification decisions remained in line with Comcast where "damages will be calculated based on the wages each employee lost due to . . . [the challenged] unlawful practices." Leyva, 716 F.3d at 514.

Very recently, the Ninth Circuit upheld a district court's order granting class certification in Jimenez, supra, 2014 WL 4338841 at *1. There, claims adjusters working for Allstate filed a class action suit against their employer for violating several sections of the California Labor Code by refusing to pay overtime wages. Id. Allstate argued the class certification order "violated Allstate's due process rights," because it "limited Allstate's ability to raise affirmative defenses at trial," and used "statistical sampling among class members to determine liability" in ways that violated Dukes and Comcast. Calling Leyva the "controlling case," Jimenez re-affirmed the principle that these types of individualized issues do not defeat certification, and cited several recent cases from other circuits with similar holdings. Id. at *5 (citing In re Whirlpool Corp. Front-Loading Washer Products Liab. Litig., 722 F.3d 838, 854 (6th Cir. 2013) cert. denied, 134 S. Ct. 1277 (U.S. 2014) ("[N]o matter how individualized the issue of damages may be, determination of damages may be reserved for individual treatment with the question of liability tried as a class action.") (internal quotation marks omitted). Other circuit courts have reached similar conclusions. See Butler v. Sears, Roebuck and Co., 727 F.3d 796, 801 (7th Cir. 2013), cert. denied, 134 S. Ct. 1277 (U.S. 2014) ("It would drive a stake through the heart of the class

action device . . . to require that every member of the class have identical damages."); In re Deepwater Horizon, 739 F.3d 790, 815 (5th Cir. 2014) ("[E]ven wide disparity among class members as to the amount of damages does not preclude class certification") (internal quotation marks omitted)).

But Defendants' opposition does not rest solely on a lack of predominance. Defendants also argue that certification should be denied because Plaintiffs have failed to submit *any* evidence establishing that damages can be feasibly and efficiently calculated. After Comcast, this argument has considerable force.

In Leyva, the "[p]laintiff included deposition testimony of Medline's director of payroll operations, and Medline's Notice of Removal," showing "that Medline's computerized payroll and time-keeping database would enable the court to accurately calculate damages and related penalties for each claim." 716 F.3d at 514. This persuaded the Ninth Circuit that "damages could feasibly and efficiently be calculated once the common liability questions are adjudicated." Id. In Jimenez, the Ninth Circuit specifically noted that the district court had "preserve[d] Allstate's opportunity to raise any individualized defense it might have at the damages phase of the proceedings . . . rejected the plaintiffs' motion to use representative testimony and sampling at the damages phase, and bifurcated the proceedings." 2014 WL 4338841, at *5. The district court also had before it "specific statistical methods proposed by plaintiffs," and "expert testimony," which the district court carefully considered and ensured were empirically supported and tied to the active theories of liability. Id.

It would have been unnecessary for the Ninth Circuit to engage in this analysis if plaintiffs had no obligation of any kind at the class certification stage to demonstrate that their damages models were feasible. Moreover, whatever might have been implicit in Leyva has been made explicit in thorough district court opinions analyzing very similar food labeling class actions. These courts have interpreted Comcast to require considerably more rigor than Plaintiffs have shown here. Astiana v. Ben & Jerry's Homemade, Inc. ("Ben & Jerry's"), No. 10-cv-4387 PJH, 2014 WL 60097, at *11-14 (N.D. Cal. Jan. 7, 2014); Werdebaugh, 2014 WL 2191901, at *23-26;

17

In re POM Wonderful LLC, No. ML 10–02199 DDP (RZx), 2014 WL 1225184, at *2-5 (C.D. Cal. Mar. 25, 2014).

The Court concludes that the correct reading of Comcast is that plaintiffs must establish at the certification stage that "damages . . . [can] feasibly and efficiently be calculated once the common liability questions are adjudicated." Leyva, 716 F.3d at 514. Often, this will impose only a very limited burden. In a wage-and-hour case like Leyva, for example, producing a payroll database will likely suffice. But where defendants can make at least a *prima facie* showing that damage calculations are likely to be more complex, expert reports or at least some evidentiary foundation may have to be laid to establish the feasibility and fairness of damage assessments.

Defendants here have made such a showing. Plaintiffs seek "full refund" as one remedy, but considering the proper value of a restitution remedy may require the Court to take into account the benefit consumers receive even from a mislabeled product. See In re POM Wonderful, 2014 WL 1225184, at *3. Similarly, while Plaintiffs also seek disgorgement of Defendants' profits, they may have to demonstrate what portion of those damages stem from the Defendants' purportedly unlawful conduct. Ben & Jerry's, 2014 WL 60097, at *11. Nothing in the record allows the Court to determine these issues. With no evidence in the record demonstrating that these damages models can be feasibly and efficiently calculated, a class cannot be satisfied for purposes of seeking damages.

However, the fact that a class may not be satisfied for purposes of seeking damages does not mean that it cannot be certified at all. In all of the other circuit court decisions cited in Jimenez, the courts of appeal concluded that the cases before them fell outside Comcast's scope at least in part because the classes were certified only for liability purposes rather than for purposes of considering damages. As the most recent of those cases noted, "the rule of Comcast is largely irrelevant '[w]here determinations on liability and damages have been bifurcated' in accordance with Rule 23(c)(4) and the district court has 'reserved all issues concerning damages for individual determination.'" In re Deepwater Horizon, 739 F.3d 790, 817 (5th Cir. 2014) (quoting In re Whirlpool, 722 F.3d at 860 (6th Cir. 2013); see also Butler, 727 F.3d at 800 ("a class action

limited to determining liability on a class-wide basis, with separate hearings to determine—if liability is established—the damages of individual class members, or homogeneous groups of class members, is permitted by Rule 23(c)(4) and will often be the sensible way to proceed").

Some of the difficulties in determining individual damages may fall away after liability is determined, depending upon which claims (if any) are successful, and which type or relief the class is entitled to. Since Plaintiff has established that, with the exception of determining damages, all of the required elements of class certification have been met, the Court will exercise its discretion pursuant to Rule 23(c)(4) of the Federal Rules of Civil Procedure to certify the proposed class solely for purposes of determining liability.

## IV. CONCLUSION

The Court hereby GRANTS Plaintiffs' motion, insofar as it seeks to certify the proposed class for the purposes of determining liability. The Court also hereby APPOINTS Plaintiffs Aleta Lilly and David Cox as Class Representatives and APPOINTS Finkelstein Thompson LLP and Glancy Binkow & Goldberg LLP as Class Counsel.

The Court hereby SETS a case management conference in this case for October 15, 2014. A joint case management statement is due 10 days before the conference.

**IT IS SO ORDERED.**

Dated: September 18, 2014

JON S. TIGAR
United States District Judge