Rosemary M. Rivas (SBN 209147)
rrivas@finkelsteinthompson.com
**FINKELSTEIN THOMPSON LLP**
One California Street, Suite 900
San Francisco, California 94111
Telephone: (415) 398-8700
Facsimile: (415) 398-8704

Marc L. Godino (SBN 182689)
mgodino@glancylaw.com
**GLANCY BINKOW & GOLDBERG LLP**
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

*Class Counsel*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALETA LILLY and DAVID COX, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>    vs.<br><br>JAMBA JUICE COMPANY and INVENTURE FOODS, INC., formerly known as The Inventure Group, Inc.,<br><br>        Defendants. | Case No. 13-cv-02998 JST<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT FOR INJUNCTIVE RELIEF; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:        April 30, 2015<br>Time:        2:00 p.m.<br>Courtroom:   9, 19th Floor<br>Judge:       Hon. Jon S. Tigar |

<u>**NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION**</u>

<u>**SETTLEMENT**</u>

**PLEASE TAKE NOTICE** that on April 30, 2015 at 2:00 p.m., or as soon thereafter as the matter may be heard, in Courtroom 9 of the United States District Courthouse, 450 Golden Gate Ave., San Francisco, California 94102, before the Honorable Jon S. Tigar, Plaintiffs Aleta Lilly and David Cox will, and hereby do, move the Court for an order granting final approval of the Parties' proposed class settlement for injunctive relief.

This Motion is based upon this Notice of Motion, the accompanying Memorandum of Points and Authorities, the accompanying Declarations of Rosemary M. Rivas in Support of Plaintiffs' (1) Motion for Final Approval of Class Action Settlement for Injunctive Relief; and (2) Motion for Award of Attorneys Fees, Costs and Service Payments (hereinafter referred to as "Rivas Decl." or "Declaration of Rosemary M. Rivas") and of Marc L. Godino in Support of Plaintiffs' (1) Motion for Final Approval of Class Action Settlement for Injunctive Relief; and (2) Motion for Award of Attorneys Fees, Costs and Service Payments (hereinafter referred to as "Godino Decl." or "Declaration of Marc L. Godino"), the pleadings and all documents on file in this action, and such other matters as may be presented at or before the hearing.

DATED: April 9, 2015                    Respectfully submitted,

**FINKELSTEIN THOMPSON LLP**

By: /s/ Rosemary M. Rivas
Rosemary M. Rivas
One California Street, Suite 900
San Francisco, California 94111
Telephone: (415) 398-8700 / Facsimile: (415) 398-8704

Marc L. Godino (SBN 182689)
mgodino@glancylaw.com
**GLANCY BINKOW & GOLDBERG LLP**
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150 / Facsimile: (310) 201-9160

*Class Counsel*

**TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................1

II.     PROCEDURAL HISTORY ................................................................................2

III.    TERMS OF THE PROPOSED SETTLEMENT ................................................3

        A.      The Class Definition ................................................................................3

        B.      Class Benefits – Stipulated Injunction ..................................................4

        C.      Plaintiffs' Enforcement of the Stipulated Injunction ............................5

        D.      Class Notice ............................................................................................5

        E.      Release ....................................................................................................5

        F.      Attorneys' Fees and Costs ......................................................................5

        G.      Payment to Class Representatives ..........................................................5

IV.     ARGUMENT......................................................................................................5

        A.      General Standards on Final Approval ....................................................5

        B.      The Settlement is Fair, Reasonable and Adequate.................................7

                1.      Experienced Counsel Fairly and Honestly Negotiated the Settlement ...................7

                2.      The Parties Engaged in Sufficient Pretrial Proceedings and Discovery, and the Settlement was Negotiated with Full Knowledge of the Strengths and Weaknesses of the Case........................................................8

                3.      Strength of Plaintiffs' Case .......................................................9

                4.      The Risk of Maintaining Class Action Status Throughout the Trial ...................10

                5.      The Value of Immediate Relief Outweighs the Mere Possibility of Future Relief10

                6.      The Experience and Views of Counsel Favor Final Approval .............................12

                7.      The Presence of a Governmental Participant........................................................12

                8.      The Reaction of the Class  ........................................................13

V.      CONCLUSION.................................................................................................14

i

1

**<u>TABLE OF AUTHORITIES</u>**

2  **<u>Cases</u>**                                                                                                      **<u>Pages</u>**

3  *Anderson v. Nextel Retail Stores, L.L.C.*,

4       2010 U.S. Dist. LEXIS 43377 (C.D. Cal. Apr. 12, 2010) ................................................ 8

5  *Chun-Hoon v. McKee Foods Corp.*,

6       716 F. Supp. 2d 848 (N.D. Cal. 2010) ........................................................................8

7  *Churchill Vill., L.L.C v. Gen Elec.*,

8       361 F.3d 566 (9th Cir.2004) .......................................................................................6

9  *Dunleavy v. Nadler (In re Mego Fin. Corp. Sec. Litig.),*

10      213 F.3d 454, 458 (9th Cir. 2000) ............................................................................11

11 *Ellis v. Naval Air Rework Facility*,

12      87 F.R.D. 15 (N.D. Cal. 1980) ...............................................................................8, 9

13 *Foti v. NCO Fin. Systems, Inc.*,

14      2008 U.S. Dist. LEXIS 16511 (S.D.N.Y. Feb. 19, 2008) .......................................13

15 *Garner v. State Farm Mut. Auto. Ins. Co.*,

16      2010 U.S. Dist. LEXIS 49477 (N.D. Cal. Apr. 22, 2010) ........................................7

17 *Green v. Am. Express Co.*,

18      200 F.R.D. 211 (S.D.N.Y. 2001) .............................................................................13

19 *Hanlon v. Chrysler Corp.*,

20      150 F.3d 1011 (9th Cir. 1998) ............................................................................6, 11

21 *In re Bluetooth Headset Products Liab Litig.*,

22      654 F.3d 935 (9th Cir.2011) ......................................................................................6

23 *In re Corrugated Container Antitrust Litig.*,

24      643 F.2d 195 (5th Cir. 1981) .....................................................................................6

25 *In re Immune Response Sec. Litig.*,

26      497 F. Supp. 2d 1166 (S.D. Cal. 2007) .....................................................................7

27

28

ii

*In re Warner Commc'ns Sec. Litig.*,
    618 F. Supp. 735 (S.D.N.Y. 1985) ...................................................................8, 9

*Jermyn v. Best Buy Stores, L.P.*,
    2012 U.S. Dist. LEXIS 90289 (S.D.N.Y. June 27, 2012) ..................................13

*Jones v. ConAgra Foods, Inc.,*
    2014 WL 2702726 (N.D. Cal. Jun. 13, 2014) appeal docketed, No. 14-16327 (9th Cir. 2014) .........10

*Lilly v. Jamba Juice Co.*
    2014 U.S. Dist. LEXIS 131997 (N.D. Cal. Sept.18, 2014) .................................3

*McDonald v. Chi. Milwaukee Corp.*,
    565 F.2d 416 (7th Cir. 1977) ..............................................................................7

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) ...........................................................10, 11, 12

*Officers for Justice v. Civil Serv. Com.*,
    688 F.2d 615 (9th Cir. 1982) ..............................................................................6, 7

*Principe v. Ukropina* (*In re Pac. Enters. Sec. Litig.*),
    47 F.3d 373 (9th Cir. 1995) ............................................................................. 12

*Rodriguez v. W. Publ'g*,
    563 F.3d 948 (9th Cir. 2009) ...........................................................................6, 9, 12

*Van Bronkhorst v. Safeco Corp.*,
    529 F.2d 943 (9th Cir. 1976) .............................................................................. 6

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011) ......................................................................................13

**Statutes**

28 U.S.C. § 1715....................................................................................................5, 14

Fed. R. Civ. P. 23(b)(2)..................................................................................... *passim*

Fed. R. Civ. P. 23(c)(4)........................................................................................3,10

**Treatises**

ALBA CONTE & HERBERT NEWBERG, NEWBERG ON CLASS ACTIONS § 11.41 (4th ed. 2002) ....................6

TABLE OF CONTENTS & TABLE OF AUTHORITIES
CASE NO. 13-cv-02998 JST

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.**      <u>**INTRODUCTION**</u>

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Class Representatives Aleta Lilly and David Cox ("Plaintiffs"), respectfully request that this Court grant final approval of the proposed settlement reached in this Action between themselves, on behalf of the Class, and Defendants Jamba Juice Company and Inventure Foods, Inc. ("Defendants").

After extensive negotiations and the benefit of Class Counsel's investigation and prosecution efforts since 2012, Plaintiffs and Defendants entered into the Stipulation of Settlement and Release ("Settlement Agreement" or "Settlement")[1] setting forth the terms of the Settlement of the claims asserted in the Action with the assistance of the Cathy Yanni, Esq., a well-respected JAMS mediator with experience resolving class action suits.  Under the terms of the Settlement, Defendants agreed to relabel the Jamba Juice Smoothie Kits ("Smoothie Kits" or "Challenged Products") so that they are not described as "all natural" on packaging or other advertising. On March 18, 2015, the Court granted preliminary approval of the Settlement.

As discussed more fully below, the Settlement is fair, reasonable, adequate, and meets all of the relevant criteria for final approval.  Class Counsel vigorously litigated the claims at issue for the past three years. Class Counsel, who are highly skilled and experienced in consumer and complex litigation, engaged in significant motion practice and conducted substantial discovery, which included identifying, obtaining, inspecting and analyzing numerous pages of documents produced by Defendants.  As a result, Class Counsel acted intelligently in the settlement negotiations and reached meaningful relief for the Class and the general public.

The terms of the Settlement were negotiated in good faith and at arm's length by lawyers thoroughly familiar with the merits of the claims and the risks associated with continued litigation. As Plaintiffs explain below, the Settlement is fair, reasonable and adequate and should be granted final approval.

---

[1] All capitalized terms used herein shall have the same meanings as forth in the Settlement Agreement, attached as Exhibit 2 to the accompanying Declaration of Rosemary M. Rivas.

NOT. OF MOT. AND MOT. FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 13-cv-02998 JST

## II.    PROCEDURAL SUMMARY

A detailed description of the proceedings in the Action are set forth in the accompanying Declarations of Rosemary M. Rivas and Marc L. Godino. Plaintiffs provide only a summary here.

After an extensive factual and legal investigation, Plaintiffs filed the Action on June 28, 2013. Defendants moved to dismiss the Action[2] on September 16, 2013, on the grounds that Plaintiffs lacked standing to bring certain claims relating to specific products specified in the Complaint, and further that Plaintiffs failed to state a claim under the CLRA.  Docket No. 11.  On September 30, 2013, Plaintiffs filed their opposition to the motion. Docket No. 16.  On November 18, 2013, the Court denied the motion to dismiss the Action. Docket No. 25.

The Parties engaged in extensive discovery before and after the motion to dismiss.  Rivas Decl. ¶ 23.  Defendants responded to two sets of requests for production of documents and two sets of special interrogatories. *Id.* Defendants produced thousands of pages of documents, including their marketing materials, including all of the Smoothie Kit labels; emails surrounding their decision to use the "All Natural" representations to promote the Smoothie Kits; pricing information and sales data; documents regarding the manner in which the Challenged Ingredients are manufactured; and information about Defendants' ingredient suppliers. *Id.* Plaintiffs also retained an expert, Dr. Kurt Hong, to testify about whether the Challenged Ingredients are natural. *Id.* at ¶ 16. Defendants also deposed each of the named plaintiffs and obtained written discovery from them. *Id.* at ¶ 23.

Pursuant to the Court's order, Plaintiffs filed their motion for class certification on February 3, 2014 and Defendants filed an opposition brief thereto on June 30, 2014. Docket Nos. 29, 39.  After oral argument, on September 18, 2014, the Court issued an order granting in part and denying in part Plaintiffs' motion for class certification wherein the Court certified a liability class[3] under Federal Rule

---

[2] Finkelstein Thompson LLP filed the related action titled *Anderson v. Jamba Juice Co.,* Case No. 12-cv-01213, on March 12, 2012. A description of those related proceedings is described in the Declaration of Rosemary M. Rivas. *Id.* at ¶¶ 7-14.

[3] The Court certified the following class: "All persons in California who bought one of the following Jamba Juice Smoothie Kit products: Mango-a-go-go, Strawberries Wild, Caribbean Passion,

of Civil Procedure 23(c)(4) and further requested the Parties to submit supplemental briefing on the issue of certifying an injunctive relief class under Federal Rule of Civil Procedure 23(b)(2). *Lilly*, 2014 U.S. Dist. LEXIS 131997, at *33. The Court, however, denied certification of a class for purposes of damages pursuant to Rule 23(b)(3). *Id.* at 31. The Parties submitted supplemental briefing as requested by the Court regarding whether Plaintiffs had standing to seek injunctive relief and represent a class under Rule 23(b)(2). Docket Nos. 52-53, 55.

On October 15, 2014, the Parties participated in a second in-person, half-day mediation before Cathy Yanni, Esq.[4]  Rivas Decl. ¶ 22. With Ms. Yanni's assistance, the Parties reached the material terms of the Settlement. *Id.* On December 1, 2014, Plaintiffs filed the motion for preliminary approval of the class action settlement and sought certification pursuant to Fed. R. Civ. P. 23(b)(2). Docket No. 60. The Court granted the motion for preliminary approval on March 18, 2015. Docket No. 65.

## III.   TERMS OF THE PROPOSED SETTLEMENT

### A.   The Class Definition

For settlement purposes only, the Court certified an injunctive relief only class pursuant to Fed. R. Civ. P. 23(b)(2) defined as follows:

> All persons in the United States who bought, for personal use only, one of the following Jamba Juice Smoothie Kit products from the period of January 1, 2010 to the present: Mango-a-go-go, Strawberries Wild, Caribbean Passion, Orange Dream Machine, and Razzmatazz.  Excluded from the Settlement Class are (a) the officers, directors and employees of any entity which is or has been a Defendant, members of the immediate families of the foregoing, and their legal representatives, heirs, successors and assigns; (b) the officers, directors and employees of any parent, subsidiary or affiliate of either of the Defendant or any business entity in which any of the Defendants owns a controlling interest, together with those individuals' immediate family members; (c) counsel for Defendants and its immediate family members; (d) Governmental entities; and (d) the Court, the Court's immediate family, and Court staff. ("Settlement Class").

---

Orange Dream Machine, and Razzmatazz." *Lilly v. Jamba Juice Co.,* 2014 U.S. Dist. LEXIS 131997, at *1, 33 (N.D. Cal. Sept.18, 2014).

[4] The Parties had previously mediated their dispute with Ms. Yanni on March 31, 2014, but were unable to resolve their dispute at that time.  Rivas Decl. ¶ 17.  However, the Parties continued to further discuss the possibility of settlement. *Id.*

Settlement Agreement ¶ 1.A; Docket No. 65.

### B.    Class Benefits – Stipulated Injunction

Since the inception of the case, Defendants have denied Plaintiffs' allegations and continue to deny them to this day.  To resolve the Action, Defendants agreed to a stipulated injunction for as long as the Challenged Products contain any of the Challenged Ingredients or unless and until the FDA issues binding guidance that each of the Challenged Ingredients can be described as "natural."  Settlement Agreement ¶ 4. The terms of the stipulated injunction are:

1.    Defendants shall effect relabeling of all Challenged Products so that they do not describe the products as "all natural" on packaging or other advertising.

2.    Defendants shall effect relabeling of all Challenged Products on its website pages so that they do not describe the Challenged Products as "all natural."

3.    Defendants shall effectuate the changes set forth above by March 31, 2015 and provide Plaintiffs with a declaration setting forth compliance with the above obligations and shall maintain records necessary to demonstrate compliance with the same.

4.    Defendants are not required to remove or recall any of the Challenged Products in market, inventory, or elsewhere; nor are Defendants required to discontinue the use of, or destroy, any packaging inventory that was in existence prior to final judicial approval of this agreement. Instead, Defendants shall not print any Challenged Product labels after March 31, 2015 that do not comply with Paragraph 4(A) above. However, Defendants may, now or after March 31, 2015, exhaust all existing packaging inventory and thereafter sell and distribute Challenged products bearing labeling printed on or before the final approval date of this agreement, without violating the terms of this agreement.

5.    Plaintiffs and all members of the Settlement Class shall be forever enjoined from filing any action seeking injunctive relief pursuant to Rule 23(b)(2) for as long as the Stipulated Injunction remains in effect, against Defendants prohibiting them from labeling the Challenged Products containing the Challenged Ingredients as "all natural". *Id.* at ¶¶ 4 A-C, E-F.

4

### C.   Plaintiffs' Enforcement of the Stipulated Injunction

Class Counsel is authorized to enforce the terms of the Settlement to ensure that Defendants comply with the terms of the Stipulated Injunction.  Settlement Agreement ¶ 13.

### D.   Class Notice

Since the Settlement Agreement provides for injunctive relief only and requires no release of any monetary claims by any member of the Settlement Class, the Parties agree that notice and opt-out rights are not necessary.  *Id.* at ¶ 3. Defendants have, however, provided notice to the required state and federal authorities as required by the Class Action Fairness Act, 28 U.S.C. § 1715. Docket No. 64.

### E.   Release

Only Plaintiffs' individual claims for monetary relief are released. Settlement Agreement ¶ 2. Settlement Class members, however, are bound to the terms of the Stipulated Injunction to the extent they wish to seek injunctive relief in a class action pursuant to Rule 23(b)(2).  *Id.* at ¶ 4.F.

### F.   Attorneys' Fees and Costs

For the past three years, Class Counsel, Finkelstein Thompson LLP and Glancy Binkow & Goldberg LLP, have worked on this case on a purely contingency basis. Rivas Decl. ¶¶ 29-30; Godino Decl. ¶¶ 30-31. Defendants will pay the total sum of $425,000.00 to Plaintiffs' Counsel for any and all Plaintiffs' attorneys' fees and costs, subject to Court approval.  Settlement Agreement ¶ 5. Concurrently with the filing of this motion, Class Counsel have filed a motion for an award of attorneys' fees and expenses.

### G.   Payment to Class Representatives

In exchange for the release of the individual Plaintiffs' claims and for their efforts in prosecuting the matter on behalf of the Settlement Class, Defendants will pay each Plaintiff, Aleta Lilly and David Cox, an amount not to exceed $5,000.00, subject to Court Approval.  Settlement Agreement, ¶ 6.

## IV.   ARGUMENT

### A.   General Standards on Final Approval

The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, costs and rigors of prolonged litigations.

5

*See Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976); *Officers for Justice v. Civil Service Comm'n of the City and County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982) (stating that "voluntary conciliation and settlement are the preferred means of dispute resolution."); ALBA CONTE & HERBERT NEWBERG, NEWBERG ON CLASS ACTIONS § 11.41 (4th ed. 2002) (emphasizing that "by their very nature, because of the uncertainties of outcome, difficulties of proof, length of litigation, class action suits lend themselves readily to compromise").

Indeed, the promotion of fair, adequate and reasonable settlements is a fundamental tenet of litigation in the federal courts.  The Fifth Circuit, among others, has succinctly summarized the underlying principles:

> The very uncertainty of outcome in litigation, as well as the avoidance of wasteful litigation and expense, lay behind the congressional infusion of a power to compromise. This is recognition of the policy of the law generally to encourage settlements.

*In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 212 (5th Cir. 1981) (internal citation and quotations omitted).

When assessing a proposed settlement, "'the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and the settlement, taken as a whole, is fair, reasonable and adequate to all concerned.'"  *Rodriguez v. West Publ'g Corp*., 563 F.3d 948, 965 (9th Cir. 2009) (quoting *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1020 (9th Cir. 1998)).

The Ninth Circuit has held that the district court's ultimate determination will necessarily involve a balancing of several factors which may include, among others, some or all of the following: "'(1) the strength of the plaintiff's case; (2) the risk, expense, complexity and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a government participant; and (8) the reaction of the class members to the proposed settlement.'"  *In re Bluetooth Headset Products Liab. Litig.,* 654 F.3d 935, 946 (9th Cir. 2011) (quoting *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)).

The Ninth Circuit, however, also limits the inquiry made by district courts as follows:

Therefore, the settlement or fairness hearing is not to be turned into a trial or rehearsal for trial on the merits.  Neither the trial court nor this court is to reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements. The proposed settlement is not to be judged against a hypothetical or speculative measure of what *might* have been achieved by  the negotiators.

*Officers for Justice*, 688 F.2d at 625 (citations omitted, emphasis in original).

Accordingly, for a settlement to warrant approval, class members need not obtain all that they may have desired or hoped, or even what they might be entitled to if the case were fully litigated. "[T]he inherent nature of a compromise is to give up certain rights or benefits in return for others." *McDonald v. Chicago Milwaukee Corp.*, 565 F.2d 416, 429 (7th Cir. 1977).

## B. The Settlement is Fair, Reasonable and Adequate

### 1. Experienced Counsel Fairly and Honestly Negotiated the Settlement

The Settlement was reached after arm's-length negotiations spanning several months and was guided by the wisdom of an experienced and impartial mediator.  Settlements that are the product of such negotiations are considered presumptively fair and reasonable. *Garner v. State Farm Mut. Auto. Ins. Co.,* 2010 U.S. Dist. LEXIS 49477, *35 (N.D. Cal. Apr. 22, 2010); *see also In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1171 (S.D. Cal. 2007) (quoting *Linney v. Cellular Alaska P'ship*, 1997 U.S. Dist. LEXIS 24300, at *16 (N.D. Cal. July 18, 1997), *aff'd*, 151 F.3d 1234 (9th Cir. 1998)) (alterations in original) ("[T]he fact that the settlement agreement was reached in arm's length negotiations after relevant discovery [has] taken place create[s] a presumption that the agreement is fair.")).

Here, the Parties reached the Settlement after spirited negotiations and with the assistance of an experienced mediator. Rivas Decl. ¶¶ 17, 22; Godino Decl. ¶¶ 15, 23. After reaching an agreement in principle, the Parties then began the process of negotiating the language and numerous details of the Settlement Agreement. Rivas Decl. ¶ 20.

These facts, along with the involvement of an extremely knowledgeable and experienced

mediator, demonstrate the Settlement was anything but collusive.  *See, e.g., Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010) ("The arms-length negotiations, including a day-long mediation before Judge Lynch, indicate that the settlement was reached in a procedurally sound manner."); *Anderson v. Nextel Retail Stores, LLC*, 2010 U.S. Dist. LEXIS 43377, at *44 (C.D. Cal. Apr. 12, 2010) ("Because the present agreement was reached through arms-length negotiation between experienced parties whose negotiations were overseen by an experienced mediator, it is entitled to a presumption of fairness.").

The substantial involvement and assistance of a highly qualified mediator, the nature of the negotiations between the Parties, and the experience of Class Counsel and Defendants' Counsel as longstanding class action attorneys, are all illustrative of the arm's-length negotiation that led to the Settlement. Rivas Decl. ¶¶ 17, 22; Godino Decl. ¶¶ 15, 23. There was no collusion in conjunction with either the litigation of this case or the bargaining that culminated in the Settlement, as the Court determined in its order granting preliminary approval.  *See* Docket No. 65 at 11 ("Nothing suggests the settlement was collusive."). Accordingly, final approval of the Settlement is warranted.

### 2.  The Parties Engaged in Sufficient Pretrial Proceedings and Discovery, and the Settlement was Negotiated with Full Knowledge of the Strengths and Weaknesses of the Case

"[T]he stage of the proceedings and the amount of discovery completed" is also a factor which the courts consider in determining the fairness, reasonableness and adequacy of the settlement.  *In re Warner Communications Sec. Litig.*, 618 F. Supp. 735, 741 (S.D.N.Y. 1985) (internal quotations and citations omitted); *see also Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980).  As discussed above, Plaintiffs conducted an extensive investigation before filing the lawsuit and conducted an extensive amount of formal discovery before entering into settlement negotiations. Rivas Decl. ¶¶ 7-8, 23; Godino Decl. ¶¶ 8, 24. Among other things, Plaintiffs reviewed thousands of pages of documents, including Defendants' marketing materials, including all of the Smoothie Kit labels; emails surrounding their decision to use the "All Natural" representations to promote the Smoothie Kits; pricing information and sales data; documents regarding the manner in which the Challenged Ingredients are manufactured;

NOT. OF MOT. AND MOT. FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 13-cv-02998 JST

1    and information about Defendants' ingredient suppliers. Rivas Decl. ¶¶ 7-8, 23; Godino Decl. ¶¶ 8, 24.

2    Defendants also deposed each Plaintiff and obtained written discovery from them. Rivas Decl. ¶ 23;

3    Godino Decl. ¶ 24.

4        In addition, the Parties' legal and factual positions were extensively litigated, including on

5    Defendants' motion to dismiss, and with regard to Plaintiffs' motion for class certification. As such, the

6    case settled at a stage where "[t]he parties certainly [had] a clear view of the strengths and weaknesses

7    of their cases." *Warner Communications*, 618 F. Supp. at 745; *Ellis*, 87 F.R.D. at 18; *see also*

8    *Rodriguez*, 563 F.3d at 967 (affirming final approval of settlement when class counsel had conducted

9    extensive discovery and had gone through motion practice).

10       Moreover, before the mediation, the Parties exchanged detailed mediation statements containing

11   a thorough analysis of their legal positions.  Rivas Decl. ¶ 17; Godino Decl. ¶ 15. And during the

12   settlement negotiations, the Parties asserted those arguments again. As this Court found in its order

13   granting preliminary approval:

14       The Court is also persuaded that the extent of discovery completed, the state of the proceedings,
         and the experience and views of counsel support approval of the settlement. This action was filed
15       in June of 2013. Defendants conducted depositions of Plaintiffs and Plaintiffs obtained
         documents with information concerning the food labels, advertising, and pricing. As Plaintiffs'
16       note, counsel for both Plaintiffs and Defendant are firms with a significant amount of experience
         litigating these types of cases. Counsel for both parties advocated for their respective positions
17       vigorously prior to reaching this settlement.

18   Docket No. 65 at 13.

19       **3.    Strength of Plaintiffs' Case**

20       The pleadings and briefing has fleshed out the strengths and weaknesses of Plaintiffs' UCL,

21   FAL, and CLRA claims. Plaintiffs believe they have a strong case and can present compelling evidence

22   that reasonable consumers were likely to be deceived by the Defendants' "all natural" representations.

23   However, any time that liability hinges on reasonableness, a favorable verdict cannot be considered

24   certain.  Defendants vigorously contest Plaintiffs' claims.  Here, liability would depend on whether

25   consumers were deceived by the "all natural" representations on the Product labels.  Defendants would

26   argue that no reasonable consumer would be deceived because the labeling disclosed the ingredients

27   contained in the Products.  Plaintiffs would, however, point to the facts that consumers are not versed on

28

9

1   whether any particular ingredient is "all natural" or not, and that consumers rely on food manufacturers

2   representations. Because reasonableness is a question of fact, the resolution of Plaintiffs' claims is

3   uncertain and the only other outcome would be to proceed through trial.

4          Thus, although Plaintiffs believe they have strong claims, proceeding through trial presents risks

5   that cannot be ignored. Further, the Court recognized that establishing liability "would take a

6   considerable amount of time and expense and Plaintiffs would not be certain to succeed." Docket No. 65

7   at 12. Accordingly, this factor supports final approval.

8                 **4.**    **The Risk of Maintaining Class Action Status Throughout**

9                        **the Trial**

10          Defendants vigorously opposed class certification, which the Court granted only in part under

11   Fed. R. Civ. Proc. 23(c)(4) and under Rule 23(b)(2). Currently on appeal is *Jones v. ConAgra Foods,*

12   *Inc.,* 2014 WL 2702726 (N.D. Cal. Jun. 13, 2014) appeal docketed, No. 14-16327 (9th Cir. 2014), which

13   involves issues present in this case, such as whether a named plaintiff in a false advertising case has

14   standing under Article III to seek injunctive relief pursuant to Rule 23(b)(2) on behalf of a class. If the

15   Ninth Circuit rules in the negative, then Defendants would likely move for decertification in this case if

16   it is not settled.  In negotiating the Settlement, Plaintiffs took into account the uncertainty of class

17   certification and believe that in light of the risks, the settlement is fair, reasonable, and adequate.

18          With regard to damages, the Court has also recognized the risks of class certification if the case

19   continued, stating:

20           It is unclear whether Plaintiffs would have been able to certify a class for damages at a later stage
        of the litigation, exposing Plaintiffs to a risk of losing class status at a later stage of the litigation.

21           If such status were to be lost, the monetary reward individual Plaintiffs would be entitled to
        would likely be quite small.

22

23   Docket No. 65 at 12.

24                 **5.**    **The Value of Immediate Relief Outweighs the Mere**

25                        **Possibility of Future Relief**

26          "'In most situations, unless the settlement is clearly inadequate, its acceptance and approval are

27   preferable to lengthy and expensive litigation with uncertain results.'" *Nat'l Rural Telecomms. Coop. v.*

28

NOT. OF MOT. AND MOT. FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 13-cv-02998 JST

1    *DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (quoting 4 A CONTE & H. NEWBERG, NEWBERG

2    ON CLASS ACTIONS, § 11:50 at 155 (4th ed. 2002)).  Courts consider "'the vagaries of litigation and

3    compare the significance of immediate recovery by way of the compromise to the mere possibility of

4    relief in the future, after protracted and expensive litigation.'"  *Id.* (quoting *Oppenlander v. Standard Oil*

5    *Co.*, 64 F.R.D. 597, 624 (D. Colo. 1974)).

6       The injunctive relief Plaintiffs negotiated substantially outweighs the mere possibility of no relief

7    at all.  Defendants have agreed to stop advertising the Products as "all natural," including those on their

8    websites. These are the exact changes Plaintiffs sought when they filed the lawsuit. *See, e.g.,* Docket No.

9    1 at ¶¶ 41, 50, 56, 63, 70.

10       The Court denied certification of the claims for damages, thus the Settlement does not provide

11    monetary recovery to class members. Since there is no release of monetary claims, Class members

12    remain free to bring any suit to recover damages. The Settlement does, however, provide significant

13    injunctive relief now.

14       The present Settlement must be balanced against the expense of achieving a more favorable

15    result at trial.  *See Hanlon*, 150 F.3d at 1026.  The expense and likely duration of the litigation should be

16    considered in evaluating the reasonableness of a settlement. *See Dunleavy v. Nadler (In re Mego Fin.*

17    *Corp. Sec. Litig.)*, 213 F.3d 454, 458 (9th Cir. 2000). The additional and substantial expense which

18    would be incurred if this case were litigated further would not result in greater injunctive relief to the

19    class.  Moreover, delay, not just at the trial stage, but through post-trial motions and the appellate

20    process as well, could cause Class members to wait years for Defendants to change its practices.

21       Plaintiffs believe that the Settlement is well within a range of reasonableness that can and should

22    be approved. Rivas Decl. ¶ 25; Godino Decl. ¶ 26.  As this Court determined: "In light of the difficulty

23    Plaintiffs would face establishing damages on a classwide basis and the relatively small amount of money

24    individual class members would be entitled to, the risk, expense, complexity, and likely duration of further

25    litigation also support the conclusion that the settlement is substantively fair." Docket No. 65 at 12 (footnote

26    omitted).

27    //

28

NOT. OF MOT. AND MOT. FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 13-cv-02998 JST

6.    **The Experience and Views of Counsel Favor Final Approval**

In assessing the adequacy of the terms of the settlement, the trial court is entitled to and should rely upon the judgment of experienced counsel for the parties.  *See Nat'l Rural Telecomms. Coop.,* 221 F.R.D. at 528 (internal quotations and citations omitted) (stating that "great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation"). The basis for such reliance is that "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." *Principe v. Ukropina (In re Pac. Enters. Sec. Litig.),* 47 F.3d 373, 378 (9th Cir. 1995). Indeed, when evaluating the proposed settlement, the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel.  *See Nat'l Rural Telecomms. Coop.,* 221 F.R.D. at 528.

After thorough consideration, Class Counsel, who have significant experience litigating these types of class actions, concluded that the Settlement terms are fair, adequate and reasonable and in the best interests of the Class as a whole, and recommend that it be granted final approval.  Rivas Decl. ¶ 25; Godino Decl. ¶ 26; *see also* Docket No. 65 at 13 ("As Plaintiffs' note, counsel for both Plaintiffs and Defendant are firms with a significant amount of experience litigating these types of cases."). The Settlement provides an immediate benefit to the Class and the public.  Moreover, the Settlement avoids the risks of a trial.  Based upon their diligent investigation of the facts and law applicable to this Action, their evaluation of the case, and their extensive experience in the prosecution of class actions, Class Counsel believe that the Settlement is a fair, adequate and reasonable resolution of the Class' dispute with Defendants, and is preferable to continued litigation and the costs and uncertainties associated therewith. Rivas Decl. ¶ 25; Godino Decl. ¶ 26.

7.    **The Presence of a Governmental Participant**

The Ninth Circuit has acknowledged that where a class "does not have the benefit […] of previous litigation between the defendant[] and the government"  and a number of "serious hurdles" remain that may prolong the litigation, this factor favors approval of the settlement. *Rodriguez,* 563 F.3d at 966. No governmental agency such as the FDA had engaged in previous litigation against the

12

NOT. OF MOT. AND MOT. FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 13-cv-02998 JST

1    Defendants over this subject matter that may have benefitted the Class.  Rather, this lawsuit was brought

2    on Class Counsel's and Plaintiffs' sole investigation.

3            CAFA notices regarding the proposed settlement in this action were sent to the United States

4    Attorney General and to the Attorneys General of all 50 states and the territories. Docket No. 64. To

5    date, the Parties have not received any responses from any state or federal official. *Id; see also* Rivas

6    Decl. ¶ 25.

7                    **8.       The Reaction of the Class**

8            As discussed above, since the proposed Settlement involves a certified class under Rule 23(b)(2),

9    and there is no release of any monetary claims, no opt-out rights or notice is required. *Jermyn v. Best*

10   *Buy Stores,* 2012 U.S. Dist. LEXIS 90289, at *32 (S.D.N.Y. June 27, 2012) ("Because this injunctive

11   settlement specifically preserves and does not release class members' monetary claims, notice to the

12   class is not required"); *see also Wal-Mart Stores, Inc. v. Dukes,* 131 S. Ct. 2541, 2558 (2011); *Foti, et al.*

13   *v. NCO Financial Systems, Inc.,* 2008 U.S. Dist. LEXIS 16511, at *13 (S.D. N.Y. Feb. 19, 2008)

14   ("Because the Agreement explicitly preserves the individual rights of class members to pursue statutory

15   damages against the defendant, and because the relief in this Rule 23(b)(2) class is injunctive in nature,

16   notice was not required."); *Green v. Am. Express Co.,* 200 F.R.D. 211, 212-13 (S.D.N.Y. 2001) (no

17   notice required under several circumstances, such as "when the settlement provides for only injunctive

18   relief, and therefore, there is no potential for the named plaintiffs to benefit at the expense of the rest of

19   the class, . . . when there is no evidence of collusion between the parties, and . . . when the cost of notice

20   would risk eviscerating the settlement agreement.").

21           In its order granting preliminary approval, the Court agreed that class notice was not necessary

22   here as Settlement Class members "would not have the right to opt out from the injunctive settlement

23   and the settlement does not release the monetary claims of class members." Docket No. 65 at 14.

24   Therefore, the reaction of the Settlement Class is not a relevant factor in the final settlement approval's

25   analysis. *See Jermyn*, 2012 U.S. Dist. 90289, at *14-15. Nevertheless, the Settlement was publicized on

26

27

28

                                                    13

NOT. OF MOT. AND MOT. FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
                        CASE NO. 13-cv-02998 JST

the Internet[5] and no objections to date have been made by any members of the Settlement Class. Finally, notice was provided to state and federal officials in accordance with Title 28 United States Code Section 1715. *See* Docket No. 64. To date, no state or federal official has raised any objections. *See id.; see also* Rivas Decl. ¶ 25.

## V.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court approve the Parties' proposed Settlement as fair, reasonable and adequate and enter the [Proposed] Final Order, Stipulated Injunction and Judgment, filed herewith.

Dated: April 9, 2015                            Respectfully submitted,

**FINKELSTEIN THOMPSON LLP**

/s/ Rosemary M. Rivas
Rosemary M. Rivas
One California Street, Suite 900
San Francisco, California 94111
Telephone: (415) 398-8700
Facsimile: (415) 398-8704

**GLANCY BINKOW & GOLDBERG LLP**
Marc L. Godino
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

*Class Counsel*

---

[5] *See, e.g.*:
http://topclassactions.com/lawsuit-settlements/lawsuit-news/45144-jamba-juice-settles-smoothie-kit-class-action-lawsuit/
http://www.washingtonexaminer.com/jamba-juice-agrees-to-stop-labeling-smoothie-kits-as-all-natural/article/feed/2175262
http://www.impactlitigation.com/2015/02/03/jamba-juice-plaintiffs-seek-injunctive-relief-forgo-monetary-damages-in-proposed-settlement/
http://legalnewsline.com/issues/class-action/253776-jamba-juice-agrees-to-stop-labeling-smoothie-kits-as-all-natural
http://www.courthousenews.com/2015/03/19/jamba-juice-must-relabel-smoothies.htm

NOT. OF MOT. AND MOT. FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 13-cv-02998 JST