Rosemary M. Rivas (SBN 209147)
rrivas@finkelsteinthompson.com
**FINKELSTEIN THOMPSON LLP**
One California Street, Suite 900
San Francisco, California 94111
Telephone: (415) 398-8700
Facsimile: (415) 398-8704

Marc L. Godino (SBN 182689)
mgodino@glancylaw.com
**GLANCY BINKOW & GOLDBERG LLP**
1925 Century Park E Ste 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

*Class Counsel*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALETA LILLY and DAVID COX, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>    vs.<br><br>JAMBA JUICE COMPANY and INVENTURE FOODS, INC., formerly known as the Inventure Group, Inc.,<br><br>        Defendants. | Case No. 13-cv-02998 JST<br><br>**DECLARATION OF ROSEMARY M. RIVAS IN SUPPORT OF PLAINTIFFS' (1) MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT FOR INJUNCTIVE RELIEF; AND (2) MOTION FOR AWARD OF ATTORNEYS FEES, COSTS, AND SERVICE PAYMENTS**<br><br>Date:        April 30, 2015<br>Time:        2:00 p.m.<br>Courtroom:    9, 19th Floor<br>Judge:       Hon. Jon S. Tigar |

I, Rosemary M. Rivas, declare as follows:

1.     I am an attorney licensed to practice by the State of California, and a partner with the law firm of Finkelstein Thompson LLP, one of the firms appointed as Class Counsel in this case and counsel of record for Plaintiffs Aleta Lilly and David Cox.

2.     I have been one of the attorneys primarily responsible for this action since its inception, along with my co-counsel, Marc L. Godino of Glancy Binkow & Goldberg LLP. Therefore, I have personal knowledge of the matters set forth herein, based on my active participation in the prosecution and settlement of the case and my firm's business records, and, if called as a witness, could and would competently testify thereto.

3.     I submit this declaration in support of Plaintiffs' (1) Motion for Final Approval of Class Action Settlement for Injunctive Relief; and (2) Motion for Award of Attorneys Fees, Costs, and Service Payments. I discuss, in the following order: (I) Class Counsel's experience and background; (II) a summary of the work performed by Finkelstein Thompson LLP; (III) Finkelstein Thompson's LLP staffing of the case, lodestar, and expenses; and (IV) Plaintiffs Lilly's and Cox's participation in the litigation.

I.     **PLAINTIFFS' COUNSEL EXPERIENCE AND BACKGROUND**

4.     Finkelstein Thompson LLP ("FT") is an AV-rated firm with offices in San Francisco, California and Washington, D.C. The firm's nationwide practice concentrates on complex and class action litigation in both state and federal courts in the areas of consumer protection, antitrust violations, securities fraud and product defects, among others.

5.     A number of courts have commended FT for its work on behalf of consumers in class actions. In affirming a class settlement of $49 million in a class action suit for antitrust violations in the bar review market achieved by FT and its co-counsel, the Ninth Circuit stated that there was no dispute "that counsel had considerable experience in litigating antitrust matters, class actions, and other complex litigation." *Rodriguez v. West*, 563 F.3d 948, 967 (9th Cir. 2009). In *Freeland v. Iridium World Communications*, Case No. CR 99-1002 (D.D.C.), the Honorable Nanette K.

1

Laughrey commended FT and its co-counsel for their work in achieving a $43.1 million settlement, stating, "[a]ll of the attorneys in this case have done an outstanding job, and I really appreciate the quality of work we had in our chambers as a result of this case." Similarly, in *In re Interbank Funding Corp. Sec. Litig.*, Case No. 02-1490 (D.D.C.), Judge Bates of the District Court for the District of Columbia observed that FT had "skillfully, efficiently, and zealously represented the class, and . . . worked relentlessly throughout the course of the Case."

6.     Attached as **Exhibit 1** is a true and correct copy of FT's firm resume showing the firm's experience in complex and class action litigation. My firm and I have served, and currently serve, as court-appointed lead or co-lead counsel in a number of class action cases and have successfully recovered millions of dollars on behalf of our clients, as indicated in the firm's resume. The attached resume also includes a summary of each time keeper's qualifications, including my individual qualifications, as well as that of any time keepers who are no longer with the firm so that the Court may assess the hourly rates.

## II.     THE WORK PERFORMED BY FINKELSTEIN THOMPSON LLP

## February 2012-August 2013

7.     In February 2012, FT began investigating the all natural representations on the Jamba Juice Smoothie Kits ("Smoothie Kits"). Specifically, FT researched each of the ingredients in the Smoothie Kits, including their chemical composition and uses. FT also researched FDA regulations regarding the ingredients and searched for relevant FTC warning letters. FT also performed research on consumer buying trends, including consumer demand for foods labeled all natural.

8.     In March 2012, Mr. Kevin Anderson retained FT to represent him in a proposed class action lawsuit against Jamba Juice. FT filed a class action complaint on behalf of Mr. Anderson on March 12, 2012. Before filing the lawsuit, FT also conducted extensive research regarding the potential causes of action, as well as preemption issues, among other things.

9.     On May 1, 2012, FT filed an amended complaint. On May 31, 2012, Defendant Jamba Juice filed a motion to dismiss, which Plaintiff Anderson vigorously opposed. In August

DECLARATION OF ROSEMARY M. RIVAS
CASE NO. 13-CV-02998 JST

1   2012, Judge Yvonne Gonzalez-Rogers denied the motion to dismiss in part, and ordered Mr.

2   Anderson to file a second amended complaint. Mr. Anderson filed the Second Amended Complaint

3   adding Inventure Foods, Inc. as a defendant per the court's order and the Parties' stipulation.

4        10.    In the Anderson action, FT served written interrogatories and document requests.

5   Jamba Juice produced, among other things, the Smoothie Kit labels, its licensing agreement with

6   Inventure, press releases, competitor product labels, and communications with ingredient supplies,

7   which FT reviewed. The Parties also negotiated the terms of a protective order for the production of

8   confidential information.

9        11.    In March 2013, Glancy Binkow & Goldberg LLP ("GBG") associated as counsel in

10  the Anderson action. In June 2013, Ms. Aleta Lilly and Mr. David Cox retained FT and GBG to

11  represent them against Defendants. Around this time, FT could not reach Mr. Anderson despite

12  repeated telephone messages, emails, and letters.

13       12.    FT and GBG approached counsel for Defendants about filing an amended complaint

14  to add Aleta Lilly and David Cox as named plaintiffs in the Anderson action, as well as to include

15  specific allegations that three other ingredients contained in the Smoothie Kits were not all natural

16  ingredients. Defendants declined to stipulate to the filing of an amended complaint in the Anderson

17  action. Thereafter, on June 28, 2013, FT and GBG filed this action on behalf of Plaintiffs Lilly and

18  Cox ("Plaintiffs"). FT and GBG also filed an administrative motion to relate this action to the

19  Anderson action, which the Court granted on July 22, 2013. On July 15, 2013, FT and GBG also

20  filed a motion to consolidate this action with the Anderson action. On the same day, FT and GBG

21  also filed a motion for class certification in the Anderson action proposing Plaintiffs Lilly and Cox

22  as the class representatives.

23       13.    Ultimately, the motion to consolidate was withdrawn and the related Anderson case

24  was dismissed without prejudice as to Mr. Anderson's individual claims only because FT could no

25  longer make contact with Mr. Anderson.

26       14.    The Parties agreed that the discovery taken in the Anderson action could be used in

27

28

this action. The Parties also agreed that the terms of the protective order negotiated in the Anderson case would be used in this action.

**September 2013-March 2014**

15.     Defendants moved to dismiss this action on September 16, 2013, on the grounds that Plaintiffs lacked standing to bring certain claims relating to specific products specified in the Complaint, and further that Plaintiffs failed to state a claim under the CLRA. Plaintiffs filed their opposition brief on September 30, 2013. The Court denied the motion to dismiss the Action on November 18, 2013 and set deadlines for the class certification motion.

16.     We filed Plaintiffs' motion for class certification on February 3, 2014. We spent a significant amount of time preparing the class certification motion, including researching district court cases within and outside the Ninth Circuit on the issue of ascertainability, and other class certification issues. We also worked with a claims administrator, Gilardi & Co. LLC, to help develop a notice and claims administration program designed to reach the proposed class members in case of a favorable outcome in the case either via trial or settlement. Moreover, we retained Dr. Kurt M. Hong, M.D., Ph.D. and worked with him to provide a declaration in support of class certification.

17.     After Plaintiffs filed their motion for class certification, the Parties agreed to participate in a private mediation before Cathy Yanni, Esq. on March 31, 2014. In preparation for the mediation, we prepared a mediation brief that outlined the facts discovered to date and Plaintiffs' respective positions on the likelihood of success at class certification and summary judgment/trial. We exchanged mediation briefs with Defendants and understood their views on the case as well. The Parties were unable to resolve the case at that time but continued to discuss the possibility of settlement with the assistance of Ms. Yanni via telephone.

18.     Defendants filed their opposition brief to the motion for class certification on June 30, 2014, vigorously disputing that the requirements were met. We filed a reply brief thereafter.

19.     In response to the Court's order to show cause regarding whether it had jurisdiction, we prepared and filed a brief.

DECLARATION OF ROSEMARY M. RIVAS
CASE NO. 13-CV-02998 JST

20.     After oral argument on the motion for class certification, on September 18, 2014, the District Court issued an order granting in part and denying in part Plaintiffs' motion. The Court certified a liability class under Federal Rule of Civil Procedure 23(c)(4) and further requested the Parties to submit supplemental briefing on the issue of certifying an injunctive relief class under Federal Rule of Civil Procedure 23(b)(2). The Court, however, denied certification of a class for purposes of damages pursuant to Rule 23(b)(3).

21.     In preparation of the supplemental briefing requested by the Court, we conducted a significant amount of research regarding Ninth Circuit Court of Appeal and district court decisions, as well as decisions outside of the Ninth Circuit, on both PACER and LexisNexis, on the issues of whether a consumer who is aware of the falsity of a product's representations has Article III standing to pursue injunctive relief. We also performed extensive research on whether a consumer must express a definite intent to purchase the allegedly misbranded product to have standing. We filed the opening brief on September 2, 2014, and then a reply brief on September 22, 2014 to Defendants' opposition brief.

22.     On October 15, 2014, we attended a second in-person mediation with Ms. Yanni. At the second mediation, the Parties reached the material terms of the proposed Settlement. After reaching an agreement in principle, the Parties then began the process of negotiating the language and numerous details of the Settlement Agreement. On December 1, 2014, we filed a motion for preliminary approval, which the Court granted on March 18, 2015.

23.     The Parties engaged in extensive discovery before settling the Action. Defendants responded to two sets of requests for production of documents and two sets of special interrogatories. Plaintiffs reviewed the thousands of pages of documents Defendants produced, including their marketing materials, including all of the Smoothie Kit labels; emails surrounding their decision to use the "All Natural" representations to promote the Smoothie Kits; pricing information and sales data; documents regarding the manner in which the Challenged Ingredients are manufactured; and information about Defendants' ingredient suppliers. Defendants also deposed

each of the named plaintiffs and obtained written discovery from them. I met with Plaintiffs Lilly and Cox to prepare them for their depositions, which took place on May 6, 2014. Thus, before engaging in the settlement negotiations, the Parties had conducted significant amount of discovery, engaged in a significant amount of motion practice, and so we understood the risks of proceeding through trial.

24.     Given the motion practice in the case and the Court's rulings on Plaintiffs' motion for class certification, the Parties were able to articulate the strengths of their claims and defenses and the weaknesses of each other's positions, ultimately reaching the proposed settlement embodied in the Stipulation of Settlement and Release, and after weighing the facts and the applicable law and the risks of continued litigation, including the possibility of decertification and a loss at trial. Additionally, I am very familiar with the numerous case decisions involving litigation of false advertising for consumer food products both at the class certification and summary judgment stages.

25.     As a result of our strong understanding of the law and facts, and after extensive negotiations, I believe the Settlement is fair, reasonable and adequate and should be granted final approval. Attached hereto as **Exhibit 2** is a true and correct copy of the Stipulation of Settlement and Release. To date, we have not received any responses from any state or federal official as a result of the notice Defendants provided pursuant to the Class Action Fairness Act.

### III.     FINKELSTEIN THOMPSON LLP'S STAFFING OF THE CASE, LODESTAR AND EXPENSES

26.     From inception to date, my law firm has expended a total of 1,204.90 hours prosecuting the claims in this litigation. My firm's lodestar is $480,630.00 and the blended rate (lodestar divided by total hours) is approximately $398.89 an hour. We have also incurred $8,437.77 in allowable expenses.

27.     I have reviewed the time records in this case since the firm's investigation began in February 2012. These time records are maintained contemporaneously as we performed work on the matter. In reviewing the time records, I removed any erroneous time entries. I believe that the time

DECLARATION OF ROSEMARY M. RIVAS
CASE NO. 13-CV-02998 JST

reflected in the firm's lodestar calculation and the costs for which payment is sought are reasonable in amount and were necessary for the effective and efficient prosecution and resolution of the litigation.

28. As I was the attorney at my firm primarily involved in the case, I took many efforts to ensure that the case was efficiently staffed and to avoid duplicative efforts. For instance, we assigned a significant portion of the factual research to our paralegals, and legal research to law clerks and junior associates. We also divided the document review amongst FT and GBG to avoid duplication of efforts. Also, the briefing and drafting of the pleadings were either allocated to one firm, with the other firm providing assistance as needed, or divided into sections amongst FT and GBG depending on availability.

29. FT has spent significant time working toward the resolution that was ultimately achieved in this case and that could have been spent on other matters. I believe we undertook a significant risk of non-recovery on a contingency basis in bringing this litigation.

30. The time that FT has spent on this litigation has been completely contingent on the outcome. FT has not been paid for any of its time spent on this litigation, nor has it been reimbursed for any of its out-of-pocket costs incurred in this litigation.

31. The following chart details the time and hourly rates of current and former attorneys and litigation assistants whose work contributed to the firm's aggregate lodestar.

| NAME: | * | TOTAL HOURS | HRLY RATE | TOTAL FEES |
|---|---|---|---|---|
| Rosemary M. Rivas | P | 302.00 | 600 | $181,200.00 |
| Mila F. Bartos | P | 37.50 | 700 | $26,250.00 |
| Tracy D. Rezvani | P | 16.20 | 625 | $10,125.00 |
| Danielle A. Stoumbos | A | 425.90 | 350 | $149,065.00 |
| Alyssa Dang | A | 215.10 | 300 | $64,530.00 |
| Caitlyn D. Finley | A | 45.70 | 300 | $13,710.00 |
| Amul Kalia | PL | 106.00 | 220 | $23,320.00 |

DECLARATION OF ROSEMARY M. RIVAS
CASE NO. 13-CV-02998 JST

| | | | | |
|---|---|---|---|---|
| Bita Assad | PL | 43.00 | 220 | $9,460.00 |
| Kristy Kumar | PL | 13.50 | 220 | $2,970.00 |
| | | | | |
| **TOTAL** | | **1,204.90** | | **$480,630.00** |

*     P - Partner
      A - Associate
      L/C - Law Clerk
      PL - Paralegal

32.      The hourly rates of attorneys who performed work on this matter range from $300 to $700, the hourly paralegal rate is $220, and the hourly law clerk rate is $170. I believe the firm's billing rates are reasonable in light of the rates charged by other firms with similar experience and expertise in the area of complex and class action litigation within the district courts in California.

33.      My firm's hourly rates were recently approved by the Honorable R. Gary Klausner on November 18, 2014 in the case entitled, *Lilly v. ConAgra Foods, Inc.*, Case No. CV-12-0225-RGK (C.D. Cal.), Docket No. 135. In *Lilly*, Judge Klausner awarded fees using the lodestar-multiplier approach in connection with the settlement of a class action case for injunctive relief. Additionally, in January 2014 in *Pappas v. Naked Juice Co.,* No. 11-cv-08276 (C.D. Cal.), Docket No. 184, Judge John A. Kronstadt approved of FT's hourly rates with the exception of minor reductions to the rate of Mila Bartos (to $650). Mila Bartos, however, has been in practice for approximately 21 years.

34.      The firm's records show that it has incurred $8,437.77 in allowable costs in this case consisting of filing fees in the District Court, service of process fees, delivery fees by Federal Express or courier of manual court filings and courtesy copies, mediation fees, and travel for court appearances and depositions, such as airfare, hotel, transportation and meals. Below is a chart reflecting the firm's costs in the case.

//

//

8

| EXPENSE | AMOUNT |
|---|---|
| 1. FILING AND SERVICE OF PROCESS FEES | $780.00 |
| 2. TRAVEL | $1,540.51 |
| 3. PACER RESEARCH | $320.40 |
| 4. DOCUMENT DELIVERY FEES | $970.49 |
| 5. EXHIBITS TO COURT | $38.57 |
| 6. MEDIATION FEES | $4,787.80 |
| **TOTAL** | $8,437.77 |

35.     Additionally, my firm expended $8,506.45 for expert fees, postage, long distance and conference call charges, and in-house copying.

## IV.     PLAINTIFF LILLY'S PARTICIPATION IN THE LITIGATION

36.     Attached as **Exhibit 3** hereto is a true and correct copy of the Declaration of Aleta Lilly outlining her efforts in this matter. I believe Ms. Lilly is deserving of a service award in the amount of $5,000.00 given her participation in the case. She made herself readily available for conferences during the pre-filing investigation and for the entire duration of case, prepared and appeared for her deposition, and was prepared to proceed to trial. She also submitted declarations in support of the motion for class certification. I also understand she took time off from work to devote to these proceedings.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 9th day of April 2015, at San Francisco, California.

_/s/ Rosemary M. Rivas_
Rosemary M. Rivas

# EXHIBIT 1



# FIRM RESUME
# 2015

1077 30th Street, NW, Suite 150 · Washington, DC 20007

ONE California Street, Suite 900 · San Francisco, CA 94111

# FINKELSTEIN THOMPSON LLP

FINKELSTEIN THOMPSON LLP ("the firm"), is a complex litigation firm, with offices in Washington, D.C. and San Francisco, CA, focusing primarily on suits involving antitrust violations, fraud and crime in the banking, securities and commodities industries, and consumer fraud.

By concentrating exclusively on litigation, rather than a generalized transactional practice, the firm avoids the conflicts of interest, both actual and philosophical, that can arise from multi-faceted representation, and is able to offer the kind of hard-hitting approach that modern complex litigation demands. Since 1993, the firm has served in a leadership position in cases that have recovered many hundreds of millions of dollars for investors and consumers.

Because the outcome of litigation is often dependent on the strength of expert testimony, the firm has developed strong working relationships with nationally prominent outside consultants in the areas of securities, commodities, antitrust, banking, consumer fraud, marketing and economics.

## HISTORY

The firm was founded in March 1977 by Burton H. Finkelstein and Douglas G. Thompson, Jr. The firm's offices are located in Georgetown and in San Francisco in the Financial District.

## EXPERIENCE

The firm is involved in class action litigation in federal and state courts nationwide. It has developed a reputation for successful and thorough representation of class clients against many of the largest and most powerful companies in the country. As part of our efforts to serve our clients' interests in the most effective and efficient manner possible, the firm has established ongoing relationships with other class action law firms whose size, location or expertise complement our own. We are proud to have won judgments and negotiated settlements that have recovered an aggregate of over one billion dollars for class members.

Douglas G. Thompson, Jr., one of the founding and named partners of the firm, has prosecuted and defended complex civil and criminal matters for over forty years. The other partners and associates have extensive experience in a variety of complex litigation fields. The firm has practiced before the Securities and Exchange Commission, Commodity Futures Trading Commission, Federal Trade Commission, Federal Communications Commission, U.S. Copyright Office, New York Stock Exchange, Chicago Board of Trade, National Association of Securities Dealers, National Futures Association, Financial Industry Regulatory Authority and in various state and federal trial and appellate courts across the country, in civil and criminal enforcement matters and in private damage litigation. The firm has considerable expertise and experience in defending and prosecuting complex financial class action claims.

# SECURITIES & COMMODITIES CLASS ACTION LITIGATION

Since its inception in 1977, the firm's securities litigation practice has extended across a wide range of shareholders' securities litigation, from accounting fraud, allegations of insider trading, proxy statement fights, and minority shareholder rights being violated, to cases alleging misstatements in prospectuses. The firm has litigated substantive federal issues under the Securities Act of 1933, the Securities Exchange Act of 1934, the Reform Act of 1995, tender offers under the Williams Act, derivative suits under State and Federal law, and unfair business practices claims.

Our clients have included institutional investors, pension funds, high-net worth individuals and retail investors. While few class action securities suits go to trial, substantial skill and experience is required to investigate, prepare, and litigate the underlying claims to successful resolution. The firm enjoys a national reputation for high-quality and successful recoveries for our clients.

The firm also selectively prosecutes actions pursuant to the Commodity Exchange Act regarding market manipulations involving commodity futures and options. To date, the firm has enjoyed considerable success in these matters, which are recognized as some of the most difficult causes of action to successfully pursue.

SETTLED REPRESENTATIVE SECURITIES AND COMMODITIES CLASS ACTION CASES

1. In re Merrill Lynch & Co., Inc. Research Reports Litigation, MDL 1484 (S.D.N.Y.) – Executive Committee member; Lead Counsel in six of the underlying actions; $125 million settlement achieved.

2. In re Natural Gas Commodity Litigation, No. 03cv6186 (S.D.N.Y.) – Co-Lead Counsel; over $100 million achieved in settlements.

3. In re Dairy Farmers Of America, Inc. Cheese Antitrust Litigation, No. 09-cv-03690 (N.D. Ill.) – Allocation Counsel for Core Period Claims; achieved allocation of 92.5% of $46 million settlement to Core Period Claimants.

4. PaineWebber Securities Litigation, No. 94cv8547 (S.D.N.Y) – Executive Committee member; $200 million settlement achieved.

5. Freeland v. Iridium World Communications, Ltd., No. 99cv1002 (D.D.C.) – Liaison Counsel and Executive Committee member; $47.5 million settlement achieved.

6. Prudential Securities Litigation, MDL 1005 (S.D.N.Y.) – Executive Committee member & Co-Chair of Settlement Committee; $150 million settlement achieved.

7. Kidder Peabody Securities Litigation, No. 94cv3954 (S.D.N.Y.) – Executive Committee member; $19 million settlement achieved.

8.    <u>Rudolph vs. UT Starcom, et al</u>, No. 3:07-CV-04578-SI (N.D.Ca.) – The firm serves as sole Lead Counsel in a securities fraud class action against UT Starcom and certain officers in connection alleged illegal backdating of executive stock options. $9.5 million settlement achieved

9.    <u>Holly Glenn v. Polk Audio, Inc.</u>, No. 99cv4768 (Md. Cir. – Baltimore) – Co-lead Counsel; $4.8 million settlement achieved (an increase of nearly 50% of shareholder buyout value).

10.   <u>Grecian v. Meade Instruments, Inc.</u>, No. 06cv908 (C.D. Cal.) – Sole Lead Counsel on behalf of shareholders claiming securities fraud violations related to alleged illegal backdating of executive stock options. Settlement achieved for $3 million and corporate governance changes.

# ANTITRUST CLASS ACTION LITIGATION

Federal and state antitrust laws are primarily concerned with protecting the economy and promoting competition between businesses by preventing (i) collusion among competitors that might result in restraints on competition in a given industry or market, and (ii) anti-competitive conduct by a particular entity who holds monopoly power in a given industry or market.

The firm is involved in several cases on behalf of individuals and businesses that have been injured by the anti-competitive behavior of other companies. These cases involve allegations such as market manipulation, monopolization, price-fixing, and predatory practices. Below is a sample of the cases in which we have been intensively involved:

SETTLED REPRESENTATIVE ANTITRUST CLASS ACTION CASES

1.    <u>In re Dynamic Random Access Memory (DRAM) Antitrust Litigation</u>, No. M-02-1486 (N.D.Cal.) – Executive Committee member for indirect purchaser claims; settlement achieved for $310 million (on appeal).

2.    <u>In re Relafen Antitrust Litigation</u>, No. 01cv12239 (D. Mass.) – Executive Committee member in federal direct purchaser case, settlement achieved - $175 million.

3.    <u>Heliotrope General, Inc. v. Sumitomo Corporation, et al.</u>, Master Case No. 701679 (Cal. Super. - San Diego) – Co-Lead Counsel; multiple settlements achieved totaling $87.35 million.

4.    <u>In re Warfarin Sodium Antitrust Litigation</u>, MDL 1232 (D. Del.) – Discovery Committee member and Co-lead Counsel in state case; settlement achieved in the companion national case - $44.5 million.

5. <u>Ryan Rodriguez v. West Publishing Corp. and Kaplan, Inc.</u>, No. CV-05-3222 R(MCx) (Cal. Central District Court) – An antitrust class action where FT LLP served as one of three law firms alleging nationwide national antitrust violations. $49 million settlement finally approved.

6. <u>In re Reformulated Gasoline (RFG) Antitrust and Patent Litigation</u>, No. 05cv1671 (C.D. Cal.) – Co-Lead Counsel in a certified class action lawsuit that alleges antitrust and common law violations which resulted in increased prices for RFG for purchasers. $48 million settlement achieved

# CONSUMER CLASS ACTION LITIGATION

In federal and state courts throughout the country, the firm represents consumers who have been injured or defrauded. Our cases involve individuals or classes of individuals who have been physically or economically damaged by the wrongdoing of others. Some of our cases seek to obtain financial relief, medical monitoring, injunctions and revised notification for classes of plaintiffs. Some of the cases we have brought include:

SETTLED REPRESENTATIVE SECURITY BREACH CLASS ACTION CASES

1. <u>In Re TJX Companies Retail Security Breach Litigation</u>, MDL 1838 (D. Mass.) Counsel in class action lawsuit alleging statutory and common law violations that resulted in a security breach of consumers' debit and credit card information. $200 million settlement achieved.

2. <u>Lockwood v. Certegy Check Serv., Inc.</u>, No. 8:07-cv-01434-SDM-TGW (M.D. Fla.) Counsel in class action lawsuit alleging common law violations that resulted in a security breach of consumers' personal and financial information. Available benefits made to Settlement Class Members of over $500 million.

3. <u>In re Countrywide Financial Corp. Customer Data Security</u>, MDL 1998 (W.D. Ky.) Co-lead counsel in class action lawsuit alleging violations of common law, the California Business and Professions Code, and the Fair Credit Report Act, for data breach involving consumers' personal and financial information. Settlement resulted in a credit monitoring protection package for the class, the creation of an identity theft reimbursement fund of $5 million, and the creation of an expense reimbursement fund for class members of $1.5 million to compensate class members for actions taken as a result of the data breach.

SETTLED REPRESENTATIVE CONSUMER CLASS ACTION CASES

1. <u>Gael M. Carter, et al. v. Associates Financial Services Co., Inc., et al.</u>, No. 96cv4652 (Tex. Dist. – Dallas County) – The firm played a pivotal role in pursuing the claims of millions of class members in a number of suits in states across the country against The Associates n/k/a Citifinancial, alleging consumer fraud relating to home equity and personal loan terms. Settlements achieved in the state, federal and companion FTC cases totaling $240 million.

2.    <u>Cavan et al. v. Sears Roebuck & Co. and Whirlpool Corp.</u>, No. 04CH10354 (Ill. Circuit Court - Cook County) – Co-Lead counsel for consumer class action based upon the sale of Calypso® washing machines.  Nationwide settlement reached and approved by the Court.

3.    <u>In re Diet Drugs Products Liability Litigation</u>, MDL 1203 (E.D. Pa.). Co-Chair of the Non-PMC litigation group prosecuting class certification of claims not advanced by Plaintiffs' Management Committee.

4.    <u>Schulte v. Fifth Third Bank</u>, 1:09-cv-06655 (N.D. Ill.) –  Co-lead counsel in a consumer class action alleging re-sequencing of consumer banking transactions in highest to lowest order with intention of maximizing overdraft fee revenue.  Nationwide settlement resulted in a settlement fund of $9.5 million and injunctive relief valued at over $100 million.  First re-sequencing/overdraft fee settlement in the nation where bank agreed to terminate high to low re-sequencing as part of relief to the class.

ONGOING REPRESENTATIVE SECURITY BREACH CLASS ACTION CASES

1.    <u>Richardson, et al. v. Tricare Management Activity, et al.</u>, 1:11-cv-01961 (D.D.C.)  Law suit alleging violations of the federal Privacy Act  as a result of a security breach of insureds' personal and health information.

ONGOING REPRESENTATIVE CONSUMER CLASS ACTION CASES

1.    <u>In re Avandia Marketing, Sales Practices and Products Liability Litigation</u>, MDL 1871 (E.D. Pa.) -  FT serves as a member of the Plaintiffs Steering Committee and Co-Chair of the Class Action Sub-Committee. The suit alleges that SmithKline Beecham Corporation d/b/a GlaxoSmithKline used marketing schemes to deliberately conceal and affirmatively misrepresent the significant heart attack or heart-disease related risks associated with the use of the Avandia, Avandamet and Avandaryl – medications used to treat Type II diabetes.

ONGOING REPRESENTATIVE THIRD-PARTY PAYOR CLASS ACTION CASES

1.    <u>United Benefit Fund v. GlaxoSmithKline LLC</u>, MDL 1871 (E.D. Pa.)- the firm serves a member of the Plaintiffs' Steering Committee, Co-Chairs the Class Action Sub-Committee, and is counsel of record for a third-party payor class action alleging  that GSK created, monitored and/or controlled various marketing firms, physicians and ghostwriters to promote and disseminate – through sponsored events and publications – misleading messages about safety and efficacy relating to the use of Avandia.

# FALSE CLAIMS ACT LITIGATION

The firm maintains an active practice under the Federal False Claims Act (also known as "*qui tam*" litigation). Through representation of whistleblowers who have independent knowledge of government contract fraud, the firm seeks to secure the return of millions of dollars to federal and state treasuries. The firm has investigated and filed *qui tam* claims in connection with the student loan industry.

# BURTON H. FINKELSTEIN
Partner
(1937-2013)

BURTON H. FINKELSTEIN practiced securities litigation for more than forty years, first with the Securities and Exchange Commission, and then in private practice. At the SEC, he was special trial counsel and an Assistant Director of the Enforcement Division, where he was in charge of the administrative, civil and criminal litigation nationwide enforcement program. In 1970, he joined the New York firm of Phillips, Nizer, Benjamin, Krim & Ballon and was a partner in their Washington, D.C. office until 1977, when he and Mr. Thompson formed the firm now known as FINKELSTEIN THOMPSON LLP.

In private practice, Mr. Finkelstein participated in more than twenty securities fraud trials in cities throughout the United States, representing broker-dealers, principals and securities salesmen, attorneys, accountants, publicly and privately held companies and officers and directors of such companies. He also represented companies and individuals in SEC investigations, and served as special counsel to public companies in conducting internal investigations.

Mr. Finkelstein earned a B.B.A. degree in accounting from City College of New York in 1959 and an L.L.B. degree from the University of Pennsylvania in 1962. After military service and a brief stint as law clerk to the General Counsel of the Federal Power Commission, he began his securities litigation career as trial counsel at the SEC's Washington Regional Office.

Mr. Finkelstein appeared as a panelist in securities litigation and enforcement seminars for the Practicing Law Institute, New York Law Journal and the American Law Institute - American Bar Association (ALI-ABA). He was an adjunct professor of law at Georgetown University Law School from 1979 to 1998. His course was entitled "Securities and Financial Frauds - Enforcement and Litigation."

Mr. Finkelstein practiced in the Washington, D.C. office.

# DOUGLAS G. THOMPSON, JR.
Partner

DOUGLAS G. THOMPSON, JR. has specialized in administrative and civil trial and appellate litigation in private practice for over forty years.  His practice has been concentrated in the areas of securities, commodities, banking, communications, and other complex business and financial transactions.  Mr. Thompson has represented clients in federal court and before the Securities and Exchange Commission, the Commodity Futures Trading Commission, the Federal Trade Commission, the Federal Communications Commission, the Copyright Royalty Tribunal, and the Criminal Division of the Department of Justice. Mr. Thompson has litigated securities and commodities claims in failed savings and loan cases on behalf of the RTC and FDIC.  As lead counsel for the FDIC, Mr. Thompson won a jury verdict of more than $1 million after a lengthy trial involving commodities fraud issues.

Mr. Thompson received his A.B. and M.A. degrees in economics from Stanford University and his J.D. degree from Stanford Law School in 1969.  He taught at the Stanford Law School in 1969-70 and clerked for Judge Ben. C. Duniway of the United States Court of Appeals, Ninth Circuit, in 1970-71.  Following his clerkship, Mr. Thompson joined the law firm of Wilmer, Cutler & Pickering, Washington, D.C., where he was a litigator in communications and securities law.  In 1977, he joined with Mr. Finkelstein in the formation of the firm now known as FINKELSTEIN THOMPSON LLP.

Mr. Thompson is a member of the bar of the District of Columbia and the State of California and of several federal district and appellate courts.

Mr. Thompson practices in the Washington, D.C. office.

## L. KENDALL SATTERFIELD
Partner

KENDALL SATTERFIELD joined FINKELSTEIN THOMPSON LLP in 1985.  Mr. Satterfield practices in the fields of both antitrust and consumer fraud class action litigation. Additionally, he has represented private clients and federal banking agencies in civil and administrative litigation involving securities and commodities fraud, federal banking law and accountant malpractice.  Mr. Satterfield also represents Canadian broadcasters and television production companies in matters involving cable television copyright royalties before the United States Copyright Office and has practiced before the Federal Communications Commission.

Mr. Satterfield is a 1981 graduate of Ohio Northern University where he received a Bachelor of Sciences degree with Highest Honors in Business Administration.  He then attended Emory University where he received his Juris Doctor in 1984.  He is a member of the District of Columbia and Georgia Bars.

Mr. Satterfield practices in the Washington, D.C. office.

**MILA F. BARTOS**
Partner

MILA F. BARTOS has been with FINKELSTEIN THOMPSON LLP since January 1995. Ms. Bartos practices in the fields of both antitrust litigation and consumer fraud class action cases, including adulterated and toxic products. She is a 1990 graduate of the University of Wisconsin - Madison where she received a joint Bachelor of Arts degree in English and Communications. Ms. Bartos then attended the American University Washington College of Law where she received her Juris Doctor in 1993. At American University, Ms. Bartos was a co-founder of the *American University Journal of Gender and Law* and was a member of the Editorial Board.

Ms. Bartos is the author of the article, "Law Firm Collaboration Via Extranets" published in the Law Library Resource Xchange. She is also an active member of the Chairman's Council of the Appleseed Foundation. Ms. Bartos is a member of the Maryland and District of Columbia Bars.

Ms. Bartos practices in the Washington, D.C. office.

**ROSEMARY M. RIVAS**
Partner


ROSEMARY M. RIVAS joined FINKELSTEIN THOMPSON LLP in October 2006 and practices in the fields of antitrust, consumer fraud, and securities litigation. Before joining Finkelstein Thompson LLP, she worked at a San Francisco based law firm representing consumers in class action litigation. Ms. Rivas graduated from San Francisco State University in 1997 and received a Bachelor of Arts in Political Science. She received her Juris Doctorate from the University of California, Hastings College of Law in 2000. While in law school, Ms. Rivas served as the Senior Note Editor for the Hastings Constitutional Law Quarterly and was honored with the American Jurisprudence Award in Wills and Trusts.

In 2009, 2010, and 2011, Ms. Rivas was selected as a *Rising Star* by Law & Politics Magazine which recognizes the best lawyers 40 years old or under or in practice for ten years or less. Ms. Rivas is court-appointed interim co-lead class counsel in *In Re Facebook PPC Advertising Litigation*, Case No. C 09-03043 JF (N.D. Cal.) and also serves in a leadership capacity in a number of other complex cases, including *In Re DirecTV Early Cancellation Fee Litigation*, Case No. 09-MDL-2093 AG (C.D. Cal.).

Ms. Rivas is a member of the California bar and is admitted to practice in the Central, Eastern, Northern, and Southern U.S. District Courts of California. Ms. Rivas is also admitted to practice before the Ninth Circuit Court of Appeals. Previously, she served as a Board Member and Diversity Director of the Barristers Club of the San Francisco Bar Association.

Ms. Rivas practices in the firm's San Francisco office.

**MICHAEL G. McLELLAN**
Partner


MICHAEL G. McLELLAN joined FINKELSTEIN THOMPSON LLP in May 2004. Mr. McLellan practices in the fields of securities, antitrust and consumer fraud litigation. He is a 1996 graduate of the University of South Carolina, where he received a Bachelor of Arts degree in English. Mr. McLellan also attended the University of South Carolina School of Law, where he received his Juris Doctor in 2003. During law school, Mr. McLellan served as Articles Editor for the South Carolina Law Review and was awarded membership in the Order of the Wig and Robe. Upon graduation, Mr. McLellan attended the American University Washington College of Law, where he received an LL.M. in Law and Government, magna cum laude in 2004. While pursuing his LL.M. degree, Mr. McLellan worked as an intern for the Securities and Exchange Commission in the Division of Enforcement and volunteered as a Constitutional Law teacher at Ballou Stay High School. He additionally worked as an independent researcher for the Association of Corporate Counsel.

Mr. McLellan is a member of the South Carolina and District of Columbia bars, and practices in the Washington, D.C. office.

**ROSALEE B. C. THOMAS**
Associate


ROSALEE THOMAS has been associated with FINKELSTEIN THOMPSON LLP since October 2006 and practices in the fields of antitrust, consumer fraud and securities litigation. Ms. Thomas graduated from Columbia University in 1999, where she studied Political Science. She received her Juris Doctorate from Georgetown Law in 2004 and was recognized as a Pro Bono Pledge Honoree. While in law school, Ms. Thomas participated in the Street Law Clinic and served as a student attorney with the D.C. Law Students in Court Clinical Program. Ms. Thomas also completed a clerkship at the U.S. Consumer Product Safety Commission.


Ms. Thomas is a member of the New York, New Jersey and District of Columbia bars and is admitted to practice in the United States District Court for the District Courts of New Jersey, Southern District of New York, and the District of Columbia.


Ms. Thomas practices in the Washington, D.C. office.

**ALYSSA T. DANG**
Associate

ALYSSA DANG has been with FINKELSTEIN THOMPSON LLP since September 2013 and practices in consumer fraud class action cases. Ms. Dang graduated in 2009 with an Economics degree from U.C. Davis, where she was on the Dean's Honors list for several quarters. She then received her Juris Doctorate from Santa Clara University School of Law in 2013 graduating in the top quarter of her class. During law school, Ms. Dang was the Comments Editor on the Santa Clara Journal of International Law, participated in the Immigration Clinic, competed in Honors Moot Court External, and studied abroad at Oxford University. Ms. Dang was also awarded the Emery Law Scholarship, Law Faculty Scholarship, and CALI Award for e-Discovery. Additionally, Ms. Dang served as a law clerk for the Department of Homeland Security and the Criminal Division of the United States Attorney's Office for the Northern District of California.

Ms. Dang is a member of the California bar and admitted to practice in the Northern District of California. She practices in the San Francisco office.

**ROBERT O. WILSON**
Of Counsel

ROBERT WILSON re-associated as Of Counsel with FINKELSTEIN THOMPSON LLP since February 2015 and practices in the fields of *qui tam*, shareholder, consumer protection, and antitrust litigation. Mr. Wilson graduated from James Madison University in 2003, with a Bachelor of Arts in English, with a minor in Theatre. He graduated *cum laude* from George Mason University School of Law in 2008. While in law school, he served on the editorial board of the *George Mason University Civil Rights Law Journal*.

Mr. Wilson was an associate with the firm from 2011 to 2014. Before joining Finkelstein Thompson LLP, Mr. Wilson clerked for the Honorable David S. Schell of the Fairfax Circuit Court, in the 19th Judicial Circuit of Virginia, and practiced civil and criminal litigation in the Northern Virginia area.

Mr. Wilson's published works include *A Defense of Disclosure-based Settlements in US M&A Litigation*, Financier Worldwide.com (February 2013); *Free Speech v. Trial by Jury: The Role of the Jury in the Application of the Pickering Test*, 18 George Mason University Civil Rights Law Journal 389 (2008); and *Dura Pharmaceuticals: Loss Causation Redefined or Merely Clarified?*, Journal of Taxation and Regulation of Financial Institutions, September/October 2007, at 5 (with Donald J. Enright).

Mr. Wilson is a member of the Virginia and District of Columbia bars.

**YODIT H. HAILE**
Paralegal

YODIT H. HAILE joined FINKELSTEIN THOMPSON LLP in September 2014.  Ms. Haile received a Bachelor of Arts in Political Science with a minor in Criminal Justice from Virginia Commonwealth University in 2014.

Prior to joining FT, she worked as a legislative intern for the Virginia General Assembly.

Ms. Haile works in the Washington, D.C. office.

# TRACY D. REZVANI
Partner*

TRACY D. REZVANI joined FINKELSTEIN THOMPSON LLP in September 1996. Ms. Rezvani practices in the fields of consumer, antitrust and securities fraud litigation. She is a 1993 graduate of the University of Maryland-College Park where she received a Bachelor of Science degree in Business & Management. Ms. Rezvani then attended the George Washington University Law School where she received her Juris Doctor in May 1996. At George Washington University, Ms. Rezvani was a member editor of *The George Washington Journal of International Law & Economics*.

Ms. Rezvani is a member of the District of Columbia and Maryland Bars and is admitted to practice before the United States Supreme Court, the United States Court of Appeals for the District of Columbia Circuit, and the U.S. District Courts for the Districts of Maryland the District of Columbia and the District of Colorado. Ms. Rezvani served as an editor for the Iranian-American Bar Association's *IABA Review* from 2005 to 2007.

Publications, Presentations and Recognitions

Ms. Rezvani writes and speaks regularly regarding consumer litigation. Her presentations include:

- The NetDiligence Cyber Risk & Privacy Liability Forum: *Data Breach Liability: An Unstable Legal Environment* (HB Litigation Conference June 7, 2010).

- Private Attorney General Actions and Beyond: Recent Court Decisions Interpreting the D.C. Consumer Protection & Procedures Act, District of Columbia Bar, Antitrust and Consumer Law Section (May 25, 2010).

- Summer 2006 Brown Bag luncheon presentation at the District of Columbia Bar, Antitrust and Consumer Law Section focused on "representative" actions brought by "private attorneys general" pursuant to the District of Columbia Consumer Protection Procedures Act.

- *Avandia - Current Litigation, Status of the MDL and Future Trials* (HB Litigation Conference March 26, 2009)

- Summer 2009 D.C. Superior Court Training Seminar on District of Columbia Consumer Protection Procedures Act

- DC Bar Continuing Legal Education Program: *Developments in Class Action Litigation 2010* (December 9, 2010)

Her published works include:

- *From Marbury to Rasul:  Two Centuries' Expansion on the Question of Jurisdiction*, 1 IABA Review 10 (Winter 2005).

- *The Plight of Padilla:  The Impact of Supreme Court Decisions on the Future of Detainees*, 2 IABA Review 12 (Spring 2006).

- *Class Counsel:  Conflicts Between Duties To the Class Representative And To The Class*, ABA Antitrust Compliance Bulletin, (Vol. 1, No. 4 November 2007)

- *CAFA Used to Maintain a Non-Class Case in Federal Court*, Class Action Fairness Act Blog, (17 October 2008 )

- The DC Practice Manual, Consumer Protection (2007, 2009, 2010, 2011)

  Ms. Rezvani practices in the Washington, D.C. office.

* Ms. Rezvani departed the firm in 2013.

# DANIELLE A. STOUMBOS
Associate*

DANIELLE STOUMBOS joined FINKELSTEIN THOMPSON LLP in January 2011 and practices in the fields of antitrust, consumer fraud and securities litigation. Prior to joining Finkelstein Thompson LLP, she worked as an associate at a Bay Area firm litigating mass torts, product liability and personal injury cases on behalf of plaintiffs.

Ms. Stoumbos received her Juris Doctorate from the University of San Francisco School of Law in 2009, magna cum laude. Ms. Stoumbos graduated *cum laude* from the California State University, Long Beach in 2005, where she received her Bachelor of Business Administration with a focus in Finance, Real Estate and Law.

While in law school, Ms. Stoumbos served on the Law Review Executive Board as a Comments Editor, was the Vice-President of the Business Law Association, and was a student advocate for the Investor Justice Clinic. She received numerous CALI awards for the highest grade in Civil Procedure, Securities Regulation and Community Property. In the summer of 2008, she externed for the United States Securities and Exchange Commission Summer Honors Program, Division of Enforcement in Washington D.C. During her third year of law school, she clerked for the Honorable A. James Robertson, II at the San Francisco Superior Court. Currently, Ms. Stoumbos is a member of the San Francisco Trial Lawyers Association, Hellenic Law Society, Queen's Bench, and Consumer Attorneys of California.

Ms. Stoumbos is a member of the California Bar, and practices in the San Francisco office.

*Ms. Stoumbos departed the firm in 2013.

# CAITLYN D. FINLEY
Associate*

CAITLYN FINLEY joined FINKELSTEIN THOMPSON LLP as a practicing associate in January 2013.  She specializes in antitrust, consumer fraud and securities litigation, and is licensed to practice law in the Northern and Central Districts of California.

Ms. Finley graduated from the University of Los Angeles in 2008 with a degree in International Development Studies and a minor in Political Science.  In 2012, she attained her Juris Doctorate from the University of California Hastings College of Law.  She graduated *cum laude* and won the Witkin Award for Academic Excellence in Administrative Law, in addition to the CALI Award for Negotiation and Mediation.

Ms. Finley is member of the California Bar Association and practices law in the San Francisco office.

*Ms. Finley departed the firm in 2013.

**AMUL KALIA**
Paralegal*

AMUL KALIA joined FINKELSTEIN THOMPSON LLP in March 2012. He received a Bachelors of Arts in Political Science from University of California, Berkeley. Prior to joining FT, he was a Cal-in-Sacramento Fellow and interned for Lieutenant Governor Gavin Newsom's Capitol office in Sacramento, and worked on a congressional campaign in the 2012 cycle.

Mr. Kalia works in the San Francisco office.

*Mr. Kalia departed the firm in 2014.

**BITA ASSAD**
Paralegal*

BITA ASSAD joined FINKELSTEIN THOMPSON LLP in August 2011. She received a Bachelor of Arts in Social Studies from Harvard University. Prior to joining FT, she worked as an intern for Amnesty International in Athens, Greece and at Scholars at Risk in New York City, New York.

Ms. Assad works in the San Francisco office.

*Ms. Assad departed the firm in 2013.

# EXHIBIT 2

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALETA LILLY and DAVID COX, on behalf of themselves and all others similarly situated,<br><br>                    Plaintiff,<br><br>          vs.<br><br>JAMBA JUICE COMPANY and INVENTURE FOODS, INC., formerly known as The Inventure Group, Inc.,<br><br>                    Defendant. | Case No. 13-cv-02998 JST<br><br>**STIPULATION OF SETTLEMENT AND RELEASE** |

This Stipulation of Settlement and Release ("Settlement Agreement") is made and entered into between Plaintiffs Aleta Lilly and David Cox, on behalf of themselves and all others similarly situated, and Defendants Jamba Juice Company and Inventure Foods, Inc. (collectively, the "Parties"), pursuant to Rule 23 of the Federal Rules of Civil Procedure, subject to court approval in the action titled, *Aleta Lilly, et al. v. Jamba Juice Company, et al.,* Case No. 2:13-cv-02998-JST (hereinafter, the "Action").

## RECITALS

WHEREAS, on June 28, 2013, Plaintiffs Aleta Lilly and David Cox ("Plaintiffs") filed the Action against Defendants Jamba Juice Company and Inventure Foods, Inc. ("Defendants")for alleged violations of the Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*("UCL"), the California False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.* ("FAL"), and the Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.* ("CLRA"), and Breach of Express Warranty, Cal. Com. Code §2313[1];

---

[1] On July 22, 2013, the Action was related to a complaint previously filed on March 12, 2012 captioned *Kevin Anderson v. Jamba Juice Company et al.*, Case No. C 12-01213 in the NorthernDistrict of California. (Dkt No. 4).  Although *Anderson* was subsequently dismissed

WHEREAS, Plaintiffs in the Action allege that certain ingredients (the "Challenged Ingredients")[2] in certain Jamba Juice frozen smoothie kits (the "Challenged Products")[3] are not "all natural" as represented on the labels;

WHEREAS, Defendants denied, and continue to deny all allegations against them;

WHEREAS, Defendants filed a motion to dismiss the Action on September 16, 2012, on the grounds that Plaintiffs lacked standing to bring claims relating to certain of the Challenged Products and further that Plaintiffs failed to state a claim under the CLRA;

WHEREAS, Plaintiffs opposed the motion on the grounds that they had adequate standing to pursue their claims and that the CLRA cause of action was sufficiently pled;

WHEREAS, the Honorable Jon S. Tigar ("District Court") denied the motion to dismiss the Action on November 18, 2013;

WHEREAS, prior to and after the District Court denied the motion to dismiss, the Parties engaged in extensive written discovery, including the exchange of documents and the depositions of Plaintiffs;

WHEREAS, Plaintiffs filed a motion for class certification on February 3, 2014 and Defendants filed an opposition brief thereto on June 20, 2014;

WHEREAS, on September 18, 2014, the District Court issued an Order Granting in Part and Denying in Part Motion for Class Certification in which the Court granted a liability class under Federal Rule of Civil Procedure 23(b)(3) and further requested that the parties submit supplemental briefing on the issue of certifying an injunctive relief class under Federal Rule of Civil procedure 23(b)(2);

WHEREAS, after the parties submitted supplemental briefing on the issue of certifying a Rule 23(b)(2) class, on October 15, 2014, the District Court, during the Further Case Management Conference, stated that a Rule 23(b)(2) class was appropriate in this case.

WHEREAS, on March 31, 2014 and October 15, 2014 the Parties attended two half-day mediation sessions with Cathy Yanni, a well-respected mediator with JAMS who has experience in mediating class actions;

WHEREAS, after arm's length negotiations supervised by Ms. Yanni, the Parties have agreed to resolve the Action, subject to the final approval of the District Court;

---

voluntarily, the parties agreed that the discovery produced in that case could be used in the Action.

[2] The Challenged Ingredients include: Ascorbic Acid, Citric Acid, Xanthan Gum, Gelatin, and Steviol Glycosides.

[3] The Challenged Products include:  Mango-a-go-go, Strawberries Wild, Caribbean Passion, Orange Dream Machine, and Razzmatazz.

WHEREAS, Plaintiffs and Plaintiffs' Counsel understand and acknowledge that Defendants admit no fault or liability and that Defendants expressly deny any fault or liability in connection with these claims and that Defendants have agreed to settle this matter only to avoid the expense, inconvenience and uncertainty of further litigation, on the following terms:

## SETTLEMENT TERMS

1.      For settlement purposes only, Plaintiffs Aleta Lilly, David Cox and Defendants Jamba Juice Company and Inventure Foods, Inc. agree to the certification of a mandatory injunctive relief only settlement class pursuant to Federal Rules of Civil Procedure 23(b)(2) without the requirement to "opt in" and without the ability to "opt out" (the "Settlement Class").

      A.      The Settlement Class shall be defined as follows:

> All persons in the United States who bought, for personal use only, one of the following Jamba Juice Smoothie Kit products from the period January 1, 2010 to the present: Mango-a-go-go, Strawberries Wild, Caribbean Passion, Orange Dream Machine, and Razzmatazz ("Settlement Class"). Excluded from the Settlement Class are (a) the officers, directors and employees of any entity which is or has been a Defendant, members of the immediate families of the foregoing, and their legal representatives, heirs, successors and assigns; (b) the officers, directors and employees of any parent, subsidiary or affiliate of either of the Defendant or any business entity in which any of the Defendants owns a controlling interest, together with those individuals' immediate family members; (c) counsel for Defendants and its immediate family members; (d) Governmental entities; and (d) the Court, the Court's immediate family, and Court staff.

2.      This Settlement Agreement releases only the rights of the Settlement Class to seek injunctive relief as described in Paragraph 4.F below against Defendants as of the Effective Date.

3.      As the Settlement Agreement provides for injunctive relief pursuant to Fed. R. Civ. P. 23(b)(2) only and requires no release of any monetary remedies or other equitable relief by any member of the Settlement Class, the Parties agree that notice and opt-out rights are not necessary.  The Parties also agree that notice would be cost prohibitive.  In the event that the District Court believes that notice is necessary, each Party shall have the unilateral option to withdraw from this Settlement Agreement, without prejudice.

4.      In exchange for the release set forth below, and for other good and valuable consideration, Defendants agree to a Stipulated Injunction for as long as the Challenged

Products contain any of the Challenged Ingredients or unless and until the FDA issues binding guidance that each of the Challenged Ingredients can be described as "natural." The terms of the injunction shall be that:

      A.     Defendants shall effect relabeling of all Challenged Products so that they do not describe the products as "all natural" on packaging or other advertising.

      B.     Defendants shall effect relabeling of all Challenged Products on its website pages so that they do not describe the Challenged Products as "all natural."

      C.     Defendants shall effectuate the changes set forth in subdivision (A)-(B) by March 31, 2015 and provide Plaintiffs with a declaration setting forth compliance with the above obligations and shall maintain records necessary to demonstrate compliance with the same.

      D.     This injunction shall last only so long as the Challenged Products contain any of the Challenged Ingredients or unless and until the FDA issues binding guidance that each of the Challenged Ingredients can be described as "natural."

      E.     Defendants are not required to remove or recall any of the Challenged Products in market, inventory, or elsewhere; nor are Defendants required to discontinue the use of, or destroy, any packaging inventory that was in existence prior to final judicial approval of this agreement. Instead, Defendant shall not print any Challenged Product labels after March 31, 2015 that do not comply with Paragraph 4.A, above. However, Defendant may, now or after March 31, 2015, exhaust all existing packaging inventory and thereafter sell and distribute Challenged Products bearing labeling printed on or before the final approval date of this agreement, without violating the terms of this agreement.

      F.     Plaintiffs and all members of the Settlement Class shall be forever enjoined from filing any action seeking injunctive relief pursuant to Rule 23(b)(2) for as long as the Stipulated Injunction remains in effect, against Defendants prohibiting them from labeling the Challenged Products containing the Challenged Ingredients as "all natural."

      G.     Plaintiffs, individually and on behalf of the Settlement Class, and Plaintiff's Counsel, acknowledge the adequacy of the injunctive relief set forth above and accept the same in exchange for the Release set forth herein.

5.     To the extent approved by the District Court, Defendants agree to pay the total sum of $425,000.00 to Finkelstein Thompson LLP and Glancy Binkow & Goldberg LLP ("Class Counsel") for any and all Plaintiffs' attorneys' fees and costs ("Attorneys' Fee and Expense Payment"). Plaintiffs will file a motion for preliminary and final approval of the injunctive relief class action settlement with the Court, which will not request or seek in excess of the total sum of $425,000.00 for the payment of attorneys' fees and costs. Defendants agree not to oppose Plaintiffs' motion for payment of attorneys' fees and costs not to exceed $425,000.00.

6.     To the extent approved by the District Court, Defendant agrees to pay the sum of $5,000.00 each to Plaintiff Aleta Lilly and David Cox for their services as class representatives on behalf of the Settlement Class and in exchange for the release of their individual claims as provided for in Paragraphs 8-10.

7.     Defendants will deposit into a client trust account maintained by Class Counsel, to be held in escrow, the sum of $435,000.00 within 10 business days of an order by the Court granting preliminary approval. Defendants agree that funds may be released from escrow to pay the payments to Plaintiffs and the attorneys' fees and expenses, as approved by the Court, within 10 calendar days following the District Court's order approving of such payments, fees, and expenses.  Class Counsel will provide a written letter of undertaking to Defendants confirming the obligation that, in the event that there is an appeal and all or any portion of the Attorneys' Fee and Expense Payment or $5,000.00 payment are not finally approved upon appeal, Class Counsel shall return any unapproved portion to Defendants, within ten days of any such appellate decision.

8.     In consideration of the Stipulated Injunctive Relief, the Attorney Fee and Expense Payment to Class Counsel, and the payment of $5,000.00 to Plaintiffs and other good and valuable consideration, and on the Effective Date (defined as the first day after the Final Order and Judgment is entered by the District Court and which the Final Order and Judgment are no longer subject to judicial review), the Parties, and each of them, on behalf of themselves and their representatives, agents, successors, and heirs, do hereby release and forever discharge each other party hereto, and each of their past, present and future directors, officers, partners, owners, principals, employees, affiliates, agents, predecessors, successors, insurers, shareholders, clients and attorneys (hereafter collectively "Released Parties") from any and all causes of action, suits, claims, liens, demands, judgments, indebtedness, costs, damages, obligations, attorneys' fees (except as provided for in this Agreement), losses, claims, controversies, liabilities, demands, and all other legal responsibilities in any form or nature:  (a) that arose or accrued at any time prior to the Effective Date arising out of or in any way related to the labeling or advertising of Defendants' Challenged Products as "all natural" (collectively, the "Released Claims").

9.     Further, and in consideration of the Stipulated Injunctive Relief, the Attorneys Fee and Expense Payment to Class Counsel, the payment of $5,000.00 to Plaintiffs and other good and valuable consideration, Plaintiffs agree to dismiss with prejudice any of their individual claims that remain pending following District Court approval, and all other claims without prejudice.

10.     Plaintiffs and Defendants hereto hereby confirm that they have been advised or and understand, and knowingly and specifically waive their rights under California Civil Code Section 1542 which provides as follows:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

11.     The Parties hereby acknowledge that they have denied the claims made against the other, and this Settlement Agreement is entered into with the understanding that it is the result of a compromise of disputed claims and shall never at any time for any purpose be considered an admission of the truth of any of the allegations, claims, or contentions made by any party against any of the other parties, the validity of which each party expressly denies. This Settlement Agreement is the product of negotiation and preparation by and among the parties hereto and their respective attorneys. The parties, therefore, expressly acknowledge and agree that this Settlement Agreement shall not be deemed prepared or drafted by one party or another, or his or her attorneys, and will be construed accordingly.

12.     The performance of this Settlement Agreement is expressly contingent upon entry of an order preliminarily approving this Settlement Agreement and a Final Order and Judgment approving this Settlement Agreement substantially in the form of Exhibits A and B attached hereto. "Final Order and Judgment" means the order entered by the Court approving this Settlement Agreement as fair, reasonable, and adequate and in the best interests of the Class as a whole, and making such other findings and determinations as the Court deems necessary and appropriate to effectuate the terms of this Settlement Agreement, without modifying any of the terms of this Settlement Agreement.  Without affecting the finality of Final Order and Judgment, the Court shall retain exclusive and continuing jurisdiction as to all matters relating to the implementation, administration, consummation, enforcement and interpretation of the Settlement Agreement, including the Releases contained therein, and any other matters related or ancillary to the foregoing; and over all Parties hereto, including the Released Parties, for the purpose of enforcing and administering the Settlement Agreement and this action until each and every act agreed to be performed by the Parties has been performed pursuant to the Settlement Agreement.

13.     Class Counsel shall be authorized to enforce and defend the terms of this Settlement Agreement.

14.     The Parties agree to fully cooperate with each other to accomplish the terms of this Settlement Agreement, including but not limited to, execution of such documents and taking such other action as reasonably may be necessary to implement the terms of this settlement, including the Defendants' provision of any notice that may be required under 28 U.S.C. § 1715 except that Defendants will bear 100% of the costs of such notice. The Parties to this Settlement Agreement shall use their best efforts, including all efforts contemplated by this settlement and any other efforts that may become necessary by order of the District Court, or otherwise, to effectuate this settlement and the terms set forth herein, as soon as practicable after execution of this Settlement Agreement, Class Counsel and Defendants' counsel shall jointly take all necessary steps to secure the Court's final approval of this settlement, entry of an order preliminarily approving this Settlement Agreement, and issuance of a Final Order and Judgment approving this Settlement Agreement.

15.     If the District Court fails to issue an order preliminarily approving the Settlement Agreement and/or the Final Order and Judgment, this Settlement Agreement is terminated.  If this Settlement Agreement, the order preliminarily approving the Settlement Agreement and/or Final Order and Judgment approving this Settlement Agreement is vacated, materially modified, or reversed, in whole or part, this Settlement Agreement will be deemed terminated, unless the

Parties, in their sole discretion within thirty (30) days of receipt of such ruling, provide written notice to Class Counsel and Defendants' counsel of their intent to proceed with the Settlement Agreement as modified by the court or on appeal.  If this Settlement Agreement is not preliminarily or finally approved by the District Court, then the parties will resume the litigation of the case without prejudice to its procedural status as of October 15, 2014.  If this Settlement Agreement is terminated pursuant to this section, it will have no force or effect whatsoever, shall be null and void, and the Settlement Agreement, negotiations leading to the Settlement Agreement and the terms of the Settlement Agreement will not be admissible as evidence for any purpose in the resumed litigation.

16.     Released Parties agree and covenant not to sue each other with respect to any released claims or causes of action, or otherwise to assist others in doing so, and agree to be forever barred from doing so, in any law or court or equity, or in any forum.

17.     This Settlement Agreement is admissible and subject to disclosure for purposes of enforcing this Settlement Agreement or as otherwise permitted by law.

18.     Upon the execution of this Settlement Agreement, the Parties agree to stipulate to continue all currently pending cut-off dates, deadlines, motions and trial dates until after the calculated date for the hearing on final approval of the settlement so as to preserve all rights of the parties.

19.     This Settlement Agreement may not be changed, modified or amended except in writing signed by Plaintiffs; Class Counsel, Defendants and Defendants' counsel, subject to court approval, if required.

20.     Any person executing this Settlement Agreement or any such related document on behalf of a corporate signatory hereby warrants and promises for the benefit of all parties hereto that such person has been duly authorized by such corporation to execute this Settlement Agreement or any such related document.

21.     Defendants have the right to seek relief from the court limiting or eliminating its obligations under the stipulated injunction described above, based upon any change in the applicable law.

22.     In entering this Settlement Agreement, each party has relied upon the advice of the party's own attorneys of choice, and has not relied upon any representation of law or fact by any other party hereto. It is further acknowledged that the terms of this Settlement Agreement are contractual and are not a mere recital, have been completely read and explained by said attorneys, and that those terms are fully understood and voluntarily accepted.

23.     This Settlement Agreement, including all agreements attached hereto, supersedes any and all prior agreements, and it constitutes the entire understanding between and among the parties with regard to the matters herein set forth. There are no representations, warranties, agreements, nor undertakings, written or oral, between or among the parties hereto, relating to the subject matter of this Settlement Agreement which are not fully expressed, herein.

24.     This Settlement Agreement is made and executed in the State of California and it is agreed that this Settlement Agreement shall be interpreted in accordance with and governed in all respects by the laws of the State of California. It is further agreed that this Settlement Agreement may be signed in counterpart, and that facsimiles will be deemed originals.

        We, the undersigned, have read the foregoing Settlement Agreement and Release and acknowledge our understanding and agreement to the contents thereof.

Dated: 11/25/14

Plaintiff Aleta Lilly

Dated: _____

Plaintiff David Cox

Dated: 12-1-14

Class Counsel and Counsel for Plaintiff Aleta Lilly

Dated: _____

Class Counsel and Counsel for Plaintiff David Cox

Dated: 11/20/14

Representative for Defendant Jamba Juice Company

Dated: Nov 21/14

Representative for Defendant Inventure Foods, Inc.

Dated: 11/24/14

Counsel for Defendants Jamba Juice Company and Inventure Foods, Inc.

24.    This Settlement Agreement is made and executed in the State of California and it is agreed that this Settlement Agreement shall be interpreted in accordance with and governed in all respects by the laws of the State of California. It is further agreed that this Settlement Agreement may be signed in counterpart, and that facsimiles will be deemed originals.

    We, the undersigned, have read the foregoing Settlement Agreement and Release and acknowledge our understanding and agreement to the contents thereof.

Dated: _____

                                    Plaintiff Aleta Lilly

Dated: 12-01 2014

                                    Plaintiff David Cox

Dated: _____

                                    Class Counsel and Counsel for Plaintiff Aleta Lilly

Dated: 12/01/2014

                                    Class Counsel and Counsel for Plaintiff David Cox

Dated: 11/21/14

                                    Representative for Defendant Jamba Juice Company

Dated: Nov 21 / 14

                                    Representative for Defendant Inventure Foods, Inc.

Dated: 11/24/14

                                    Counsel for Defendants Jamba Juice Company and Inventure Foods, Inc.

# EXHIBIT A

1   Rosemary M. Rivas (State Bar No. 209147)
    rrivas@finkelsteinthompson.com
2   **FINKELSTEIN THOMPSON LLP**
    One California Street, Suite 900
3   San Francisco, California 94111
    Telephone: (415) 398-8700
4   Facsimile: (415) 398-8704

5   Marc L. Godino (State Bar No. 182689)
    mgodino@glancylaw.com
6   **GLANCY BINKOW & GOLDBERG LLP**
    1925 Century Park East, Suite 2100
7   Los Angeles, CA 90067
    Telephone: (310) 201-9150
8   Facsimile: (310) 201-9160

9   *Attorneys for Individual and Representative*
10  *Plaintiffs Aleta Lilly and David Cox*

11
                    **UNITED STATES DISTRICT COURT**
12                  **NORTHERN DISTRICT OF CALIFORNIA**

13  ALETA LILLY and DAVID COX, on behalf of        Case No. 13-cv-02998 JST
14  themselves and all others similarly situated,
                                                    **[PROPOSED] ORDER GRANTING**
15              Plaintiff,                          **PRELIMINARY APPROVAL**

16          vs.

17  JAMBA JUICE COMPANY and INVENTURE
    FOODS, INC., formerly known as The Inventure
18  Group, Inc.,

                Defendant.
19

20

21

22

23

24

25

26

27

28

TIGAR, Judge:

The matter before the Court is Plaintiffs' Motion for Preliminary Approval of Class Action Settlement.

## BACKGROUND

On June 28, 2013, Plaintiffs initiated this action by filing a Complaint on behalf of themselves and all others similarly situated in the United States District Court for the Northern District of California (the "Action"). (ECF No. 1.)  Plaintiffs in the Action alleged that certain ingredients (the "Challenged Ingredients") in certain Jamba Juice frozen smoothie kits (the "Challenged Products") were falsely advertised as "all natural", in violation of the Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL"), the California False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.* ("FAL"), and the Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.* ("CLRA"), and Breach of Express Warranty, Cal. Com. Code §2313. *(Id.* at 8*).*[1]

Defendants filed a motion to dismiss the Action on September 16, 2013, on the grounds that Plaintiffs lacked standing to bring certain claims relating to specific products and further that Plaintiffs failed to state a claim under the CLRA (ECF No.11).  After the motion was fully briefed, on November 18, 2013, The Honorable Jon S. Tigar ("District Court") denied the motion to dismiss the Action.  (ECF No. 25.)

After engaging in extensive written discovery, Plaintiffs filed a motion for class certification on February 3, 2014, and Defendant filed an opposition brief thereto on June 20, 2014. (ECF Nos. 29, 39). On September 18, 2014, the District Court issued an Order granting in part and denying in part Plaintiffs' motion for class certification. (ECF No. 54.) For liability purposes, the District Court certified a class defined as "all persons in California who bought one of the following Jamba Juice Smoothie Kit products: Mango-a-go-go, Strawberries Wild, Caribbean Passion, Orange Dream Machine, and Razzmatazz."

---

[1] On July 22, 2013, the Action was related to a complaint previously filed on March 12, 2012, captioned *Kevin Anderson v. Jamba Juice Company et al.*, Case No. C 12-01213, in the Northern District of California. (ECF No. 4.) Although the *Anderson* case was voluntarily dismissed, the parties conducted a significant amount of discovery in *Anderson* and agreed that such discovery could be used in the Action.

**[PROPOSED] ORDER GRANTING PRELIMINARY APPROVAL**
CASE NO. 13-CV-02998 JST

On October 15, 2014, the parties attended a half-day of mediation with Cathy Yanni, Esq. a well-respected mediator with JAMS who has had prior experience in mediating class actions.[2] After arm's length negotiations supervised by Yanni, the Parties have agreed to resolve the Action, subject to the final approval of the District Court.  On December 1, 2015, Plaintiffs filed the motion for preliminary approval of class action settlement, which Defendants joined.

## TERMS OF PROPOSED SETTLEMENT

1.    Class Definition

The proposed settlement class consists of:

> All persons in the United States who bought, for personal use only, one of the following Jamba Juice Smoothie Kit products from the period January 1, 2010 to the present: Mango-a-go-go, Strawberries Wild, Caribbean Passion, Orange Dream Machine, and Razzmatazz.  Excluded from the Settlement Class are (a) the officers, directors and employees of any entity which is or has been a Defendant, members of the immediate families of the foregoing, and their legal representatives, heirs, successors and assigns; (b) the officers, directors and employees of any parent, subsidiary or affiliate of either of the Defendant or any business entity in which any of the Defendants owns a controlling interest, together with those individuals' immediate family members; (c) counsel for Defendants and its immediate family members; (d) Governmental entities; and (d) the Court, the Court's immediate family, and Court staff ("Settlement Class").

2.    Class Benefits - Stipulated Injunction

Defendants agree to the following stipulated injunction:

A.    Defendants shall effect relabeling of all Challenged Products so that they do not describe the products as "all natural" on packaging or other advertising.

B.    Defendants shall effect relabeling of all Challenged Products on its website pages so that they do not describe the products as "all natural."

C.    Defendants shall effectuate the changes set forth in subdivision (A)-(B) by March 31, 2015 and provide Plaintiffs with a declaration setting forth

---

[2] The parties previously engaged in a mediation with the assistance of Ms. Yanni on March 31, 2014 but were unable to resolve the case at that time.

**[PROPOSED] ORDER GRANTING PRELIMINARY APPROVAL**
CASE NO. 13-CV-02998 JST

compliance with the above obligations and shall maintain records necessary

to demonstrate compliance with the same.

D.      This injunction shall last only so long as the Challenged Products contain

any of the Challenged Ingredients or unless and until the FDA issues binding

guidance that each of the Challenged Ingredients can be described as

"natural."

E.      Defendants are not required to remove or recall any of the Challenged

Products in market, inventory, or elsewhere; nor are Defendants required to discontinue the use

of, or destroy, any packaging inventory that was in existence prior to final judicial approval of

this agreement.  Instead, Defendant shall not print any Challenged Product labels after March 31,

2015 that do not comply with Paragraph 2.A-(B), above.  However, Defendant may, now or after

March 31, 2015, exhaust all existing packaging inventory and thereafter sell and distribute

Challenged Products bearing labeling printed on or before the final approval date of this

agreement, without violating the terms of this agreement.

F.      Plaintiffs and all members of the Settlement Class shall be forever enjoined

from filing any action seeking injunctive relief pursuant to Rule 23(b)(2), for as long as the

Stipulated Injunction remains in effect, against Defendants prohibiting them from labeling the

Challenged Products containing the Challenged Ingredients as "all natural."

3.      <u>Class Notice</u>

As the Settlement Agreement provides for injunctive relief only and requires no

release of any monetary remedies or other equitable relief by any member of the Settlement Class, the

Parties agree that notice and opt-out rights are not necessary.  (Settlement Agreement ¶ 3).

4.      <u>Release</u>

The only claims for monetary relief being released are those of Plaintiffs,

individually. *Id.* ¶ 2). Class members, however, are bound to the terms of the Stipulated

Injunction pursuant to Fed. R. Civ. P. 23(b)(2).  (*Id.* ¶ 4.)

**[PROPOSED] ORDER GRANTING PRELIMINARY APPROVAL**
CASE NO. 13-CV-02998 JST

1    5.    <u>Attorneys' Fees and Costs</u>

2         Since 2012, Class Counsel, Finkelstein Thompson LLP, and Glancy Binkow & Goldberg LLP

3    have worked on the case on a purely contingency basis. Defendants agree to pay the total sum of

4    $425,000.00 to Finkelstein Thompson LLP and Glancy Binkow & Goldberg LLP for any and all

5    Plaintiffs' attorney fees and costs ("Attorneys' Fee and Expense Payment"), which is subject to Court

6    approval." (*Id.* ¶ 5.)

7    5.    <u>Payment to Class Representative</u>

8         Defendants agree to pay an incentive award of $5,000 each to Plaintiffs Aleta Lilly and David

9    Cox for their services as a named plaintiff on behalf of the Settlement Class and in exchange for the

10   release of their individual claims. (*Id.* ¶ 6.)

11                                    **DISCUSSION**

12        "Voluntary conciliation and settlement are the preferred means of dispute resolution in complex

13   class action litigation." *Smith v. CRST Van Expedited, Inc.,* 10-CV-1116-IEG (WMC), 2013 WL

14   163293, at *2 (S.D. Cal. Jan. 4, 2013) (citing *Officers for Justice v. Civil Serv. Comm'n of City & Cnty.*

15   *of S. F.,* 688 F.2d 615,625 (9th Cir. 1982)). "In a class action, however, any settlement must be approved

16   by the court to ensure that class counsel and the named plaintiffs do not place their own interests above

17   those of the absent class members." *Dennis v. Kellog Co.,* 697 F.3d 858, 861 (9th Cir. 2012); *see also*

18   Fed. R. Civ. P. 23(e) ("The claims, issues, or defenses of a certified class may be settled ... only with the

19   court's approval."). "[C]ourt approval of a class action settlement involves a two-step process-

20   preliminary approval, followed by final approval of the settlement." *In re M.L. Stern Overtime Litig.,*

21   07-CV-0118-BTM (JMA), 2009 WL 995864, at *3 (S.D. Cal. Apr. 13, 2009) (citing *MANUAL FOR*

22   *COMPLEX LITIGATION (FOURTH)* § 21.632 (2004)).

23        In this case, the Court is at the first step-preliminary approval. This "initial decision to approve

24   or reject a settlement proposal is committed to the sound discretion of the trial judge." *Officers for*

25   *Justice,* 688 F.2d at 625.  The "Court need not review the settlement in detail at this juncture; instead,

26   preliminary approval is appropriate so long as the proposed settlement falls within the range of possible

27   judicial approval." *In re M.L. Stern Overtime Litig.,* 2009 WL 995864, at *3 (internal quotation marks

28

                                        4

**[PROPOSED] ORDER GRANTING PRELIMINARY APPROVAL**
CASE NO. 13-CV-02998 JST

and citation omitted). However, even at this preliminary stage, "a district court may not simply rubber stamp stipulated settlements." *Kakani v. Oracle Corp.,* C 06-06493WHA, 2007 WL 1793774, at * 1 (N.D. Cal. June 19, 2007). In order to grant preliminary approval, the Court must "ratify both the propriety of the certification and the fairness of the settlement." *In re Bluetooth Headset Prods. Liab. Litig.,* 654 F.3d 935, 946 (9th Cir. 2011).

Propriety of Certification

Plaintiff seeks certification of a settlement class under Federal Rule of Civil Procedure 23(b)(2). "A plaintiff seeking class certification must affirmatively demonstrate that it meets the four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b)." *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591,613-14 (1997). Rule 23(a) outlines four requirements: numerosity, commonality, typicality, and adequacy of representation. Fed. R. Civ. P. 23 (a). "In addition to these prerequisites, a plaintiff must satisfy one of the prongs of 23 (b) in order to maintain a class action." *Goldkorn v. Cnty. of San Bernardino,* EDCV 06-707-VAP (OPx), 2012 WL 476279, at *4 (C.D. Cal. Feb. 13, 2012). "Where ... a plaintiff moves for class certification under Rule 23(b)(2), the plaintiff must prove [that] the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." *Id.*; Fed. R. Civ. P. 23(b)(2).

On September 18, 2014, this Court issued its Order Granting in part and Denying in Part Motion for Class Certification ("Certification Order"). In that Certification Order, the Court held that Plaintiffs satisfied each of the elements of Fed. R. Civ. P. 23(a) and certified a liability class under 23(c)(4). The Court did not certify a class action pursuant to Rule 23(b)(3) for damages. The Certification Order also appointed Plaintiffs Aleta Lilly and David Cox as class representatives and appointed Finkelstein Thompson LLP and Glancy Binkow & Goldberg as Class Counsel. In addition, during the Case Management Conference held on October 15, 2014, the Court stated from the bench that Plaintiffs had standing to pursue an injunction and otherwise satisfied the requirements of Fed. R. Civ. P. 23(b)(2).

In this case, the terms of the injunction sought by Plaintiffs "apply to the class as a whole" and Plaintiffs' claims do not "entitle named or unnamed class members to any form of individualized

5

1   injunctive relief." *Johnson v. Shaffer,* 2013 U.S. Dist. LEXIS 157174, at *139 (E.D. Cal. Nov. 1, 2013).

2   Therefore, certification of the Settlement Class is appropriate.

3   Fairness of the Proposed Settlement

4          Rule 23(e) provides that a court may approve a settlement "only after a hearing and on finding

5   that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). The Court must "review[] the

6   substance of the settlement ... to ensure that it is 'fair, adequate, and free of collusion.'" *Lane v.*

7   *Facebook,* 696 F.3d 811, 819 (9th Cir. 2012) (quoting *Hanlon,* 150 F.3d at 1027). The Court is "not to

8   reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the

9   dispute, nor is the proposed settlement to be judged against a hypothetical or speculative measure of

10  what might have been achieved by the negotiators." *Smith,* 2013 WL 163293, at *2 (internal

11  quotation marks and citation omitted). "In making this appraisal, courts have broad discretion to

12  consider a range of factors such as [1] the strength of the plaintiffs case; [2] the risk, expense,

13  complexity, and likely duration of further litigation; [3] the risk of maintaining class action status

14  throughout the trial; [4] the amount offered in settlement; [5] the extent of discovery completed and the

15  stage of the proceedings; [6] the experience and views of counsel; [7] the presence of a government

16  participant; and [8] the reaction of the class members to the proposed settlement." *Id.* at *2-3 (internal

17  quotation marks and citation omitted) (finding the proposed settlement "fair, adequate, and free of

18  collusion" on the grounds that "the settlement is the product of arms-length negotiations by experienced

19  counsel before a respected mediator, reached after and in light of years of litigation and ample discovery

20  into the asserted claims"). "[T]he Court need not conduct full settlement fairness appraisal before

21  granting preliminary approval; rather the proposed settlement need only fall within 'the range of

22  possible approval.'" *Dennis v. Kellogg, Co.,* 09-cv-1786-IEG (WMC), 2013 WL 1883071, at *4 (S.D.

23  Cal. May 3, 2013) (quoting *Alberto v. GMRI, Inc.,* 252 F.R.D. 652,666 (E.D. Cal. 2008)). "Essentially,

24  the court is only concerned with whether the proposed settlement discloses grounds to doubt its fairness

25  or other obvious deficiencies such as unduly preferential treatment of class representatives or segments

26  of the class, or excessive compensation of attorneys." *Id.* (internal quotation marks and citation omitted).

27

28

**[PROPOSED] ORDER GRANTING PRELIMINARY APPROVAL**
CASE NO. 13-CV-02998 JST

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

In this case, the procedure for reaching the settlement was fair and reasonable and the settlement was the product of arm's length negotiations. *See Smith,* 2013 WL 163293, at *3. The settlement was reached with the assistance of an experienced mediator. Although the settlement does not include monetary relief for the class, it stops Defendant's allegedly unlawful practices, bars Defendant from similar practices in the future, and does not prevent the class members from seeking damages. A significant amount of litigation and discovery has been undertaken in prosecuting this action. *See Id.* Further litigation would bring additional uncertainty, risk, and expense to the class. Plaintiffs' counsel is experienced in handling class actions and the types of claims asserted in this action and considers it to be in the best interests of the class to enter into this settlement agreement. The Court finds that the settlement "fall[s] within the range of possible approval." *Dennis,* 2013 WL 1883071, at *4 (internal quotation marks and citation omitted). The Court grants preliminary approval of the class settlement.

Notice

When a class is certified under Rule 23(b)(2) for settlement purposes and only provides for injunctive relief, no notice of class certification is required. *Jermyn v. Best Buy Stores,* 2012 U.S. Dist. LEXIS 90289, at *32 (S.D.N.Y. June 27, 2012). When certifying a class under Rule 23(b)(2), "the court may direct appropriate notice to the class." Fed. R. Civ. P. 23(c)(2)(A). In this case, the costs of attempting to identify the class members to provide notice of certification appear prohibitive to settlement. Generally, courts are required to "notice the class members of the proposed settlement." *In re M.L. Stern Overtime Litig.,* 2009 WL 995864, at *3. However, notice of class settlement under Rule 23 is only required of the settlement releases the monetary claims of the class. In this case, the settlement agreement does not release the monetary or other equitable relief claims of the Class. Only Plaintiffs Aleta Lilly's and David Cox's individual monetary claims and the class members' claims to injunctive relief pursuant to Fed. R. Civ. P. 23(b)(2) are released by the settlement agreement. The Court exercises its discretion and does not direct notice here because the settlement does not alter the unnamed class members' legal rights to pursue monetary relief.

7

**[PROPOSED] ORDER GRANTING PRELIMINARY APPROVAL**
CASE NO. 13-CV-02998 JST

1

**CONCLUSION**

2        IT IS HEREBY ORDERED that Plaintiffs' Motion for Preliminary Approval of Class Action

3   Settlement is GRANTED.  A hearing shall be held before this Court on _____, 2015 at 2:30 p.m. to

4   determine whether the Court should grant final approval of the settlement and to determine the

5   appropriateness of Plaintiffs' attorneys' fees and costs and the incentive payments to the Class

6   Representatives.  All papers in support of the final approval of the settlement shall be filed with the

7   Court on or before _____, 2015.

8   DATED:_____

9                                        _____
                                              Honorable Jon S. Tigar
10                                            UNITED STATES DISTRICT JUDGE

11  '

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**[PROPOSED] ORDER GRANTING PRELIMINARY APPROVAL**
CASE NO. 13-CV-02998 JST

# EXHIBIT B

1  Rosemary M. Rivas (State Bar No. 209147)
   rrivas@finkelsteinthompson.com
2  **FINKELSTEIN THOMPSON LLP**
   One California Street, Suite 900
3  San Francisco, California 94111
   Telephone: (415) 398-8700
4  Facsimile: (415) 398-8704

5  Marc L. Godino (State Bar No. 182689)
   mgodino@glancylaw.com
6  **GLANCY BINKOW & GOLDBERG LLP**
   1925 Century Park East, Suite 2100
7  Los Angeles, CA 90067
   Telephone: (310) 201-9150
8  Facsimile: (310) 201-9160

9  *Attorneys for Individual and Representative*
   *Plaintiffs Aleta Lilly and David Cox*
10

11
                    **UNITED STATES DISTRICT COURT**
12                  **NORTHERN DISTRICT OF CALIFORNIA**

13  ALETA LILLY and DAVID COX, on behalf of        Case No. 13-cv-02998 JST
14  themselves and all others similarly situated,
                                                    **[PROPOSED] FINAL ORDER, STIPULATED**
15                  Plaintiff,                      **INJUNCTION AND JUDGMENT**

16          vs.

17  JAMBA JUICE COMPANY and INVENTURE
    FOODS, INC., formerly known as The Inventure
18  Group, Inc.,
                    Defendant.
19

20

21

22

23

24

25

26

27

28

1

WHEREAS, Representative Plaintiffs Aleta Lilly and David Cox ("Plaintiffs"), on behalf of

2

themselves and all others similarly situated, and Defendants Jamba Juice Company and Inventure Foods,

3

Inc. ("Defendants") entered into a Stipulation of Settlement and Release, filed with the Court on

4

December 1, 2014 (the "Settlement Agreement").

5

WHEREAS, on December 1, 2014, Plaintiffs filed a Motion for Preliminary Approval of Class

6

Action Settlement, and on ____, 2015, the Court held a hearing on Plaintiffs' Motion for Preliminary

7

Approval of Class Action Settlement.

8

WHEREAS, on _____, 2015, the Court entered the Preliminary Approval Order

9

that, among other things, (1) certified pursuant to Rule 23(b)(2) of the Federal Rules of

10

Civil Procedure a Settlement Class defined as: "All persons in the United States who bought, for

11

personal use only, one of the following Jamba Juice Smoothie Kit products from the period January 1,

12

2010 to the present: Mango-a-go-go, Strawberries Wild, Caribbean Passion, Orange Dream Machine,

13

and Razzmatazz.  Excluded from the Settlement Class are (a) the officers, directors and employees of

14

any entity which is or has been a Defendant, members of the immediate families of the foregoing, and

15

their legal representatives, heirs, successors and assigns; (b) the officers, directors and employees of any

16

parent, subsidiary or affiliate of either of the Defendant or any business entity in which any of the

17

Defendants owns a controlling interest, together with those individuals' immediate family members; (c)

18

counsel for Defendants and its immediate family members; (d) Governmental entities; and (d) the Court,

19

the Court's immediate family, and Court staff. ("Settlement Class")" for the purposes of providing

20

injunctive relief only and for settlement purposes; (2) preliminarily found that the Settlement Agreement

21

appears sufficient, fair, reasonable and adequate, and contains no obvious deficiencies and the parties

22

have entered into the Settlement Agreement in good faith, following arm's length negotiations between

23

their respective counsel facilitated by an experienced mediator; and (c) set a Final Approval Hearing on

24

_____, 2015, at _____ in Courtroom 9, 19th Floor of the United States District Courthouse, 450

25

Golden Gate Avenue, San Francisco, California, 94102.

26

27

WHEREAS, on September 18, 2014, this Court issued its Order Granting in part and Denying in

28

Part Motion for Class Certification holding that i) Plaintiffs satisfied each of the elements of  Fed. R.

**[PROPOSED] FINAL ORDER, STIPULATED INJUNCTION AND JUDGMENT**
CASE NO. 13-CV-02998 JST

Civ. P. 23(a) and certified a 23(c)(4) liability class; ii) appointed Plaintiffs Aleta Lilly and David Cox as class representatives; and iii) appointed Finkelstein Thompson LLP and Glancy Binkow & Goldberg as Class Counsel;

WHEREAS, during the Case Management Conference held on October 15, 2014, this Court stated from the bench that a class under Fed. R. Civ. P. 23(b)(2) was appropriate in this case;

WHEREAS, on _____, 2015, Plaintiffs filed a Motion for Final Approval of Class Action Settlement, and a Motion For Approval of an Award of Attorneys' Fees and Costs to Class Counsel and an Incentive Award to the Representative Plaintiffs.

WHEREAS, on _____, 2015, the Court issued an order granting the Motion for Final Approval of Class Action Settlement ("Final Approval Motion") and the Motion For Approval of an Award of Attorneys' Fees and Costs to Class Counsel and an Incentive Award to the Class Representative Plaintiffs ("Motion for Attorneys' Fees"), filed by Plaintiffs Aleta Lilly and David Cox.

NOW, THEREFORE, having reviewed and considered the submissions presented with respect to the settlement set forth in the Settlement Agreement and the record in these proceedings, having heard and considered the evidence presented by the parties, having determined that the settlement set forth in the Settlement Agreement is fair, reasonable, adequate, and in the best interests of the Class, the application of Class Counsel for an award of fees and costs, and Plaintiffs' award separate from the issue of whether final approval should be given to settlement set forth in the Settlement Agreement, and good cause appearing therefore.

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED:

1.      The Settlement Agreement is hereby incorporated by reference into this Final Order and Judgment as if explicitly set forth herein and shall have the full force of an Order of this Court.

2.      The Court has jurisdiction over the subject matter of this litigation, the parties, and all persons within the Class.

3.      Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, and this Court's Preliminary Approval Order, for the purposes of settling the claims against Defendants in accordance with the Settlement Agreement, the following persons are members of the Class: All persons in the

2

United States who bought, for personal use only, one of the following Jamba Juice Smoothie Kit products during the period January 1, 2010 to the present: Mango-a-go-go, Strawberries Wild, Caribbean Passion, Orange Dream Machine, and Razzmatazz.  Excluded from the Settlement Class are (a) the officers, directors and employees of any entity which is or has been a Defendant, members of the immediate families of the foregoing, and their legal representatives, heirs, successors and assigns; (b) the officers, directors and employees of any parent, subsidiary or affiliate of either of the Defendant or any business entity in which any of the Defendants owns a controlling interest, together with those individuals' immediate family members; (c) counsel for Defendants and its immediate family members; (d) Governmental entities; and (d) the Court, the Court's immediate family, and Court staff.

4.       The Court finds that Plaintiffs and Class Counsel fairly and adequately represented the interests of Class members in connection with the settlement set forth in the Settlement Agreement.  The Court also finds no objections to the settlement.

5.       The Court finds the settlement, providing injunctive relief pursuant to Fed. R. Civ. P. 23(b)(2) only and requiring no release of monetary claims or other equitable relief claims by any Class member, set forth in the Settlement Agreement is in all respects, fair, adequate, reasonable, proper, and in the best interests of the Class, and is hereby approved.

6.       Plaintiffs' Motion for Final Approval of Class Action Settlement is hereby granted. The settlement is approved and found to be, in all respects, fair, reasonable, adequate and in the best interests of the Class pursuant to Rule 23(e) of the Federal Rules of Civil Procedure. Specifically, the Court finds that final approval of the settlement is warranted in light of the following factors:

      i.        The strength of Plaintiffs' case;

      ii.       The risk, expense, complexity, and likely duration of further litigation;

      iii.     The risk of maintaining class action status throughout trial;

      iv.      The amount offered in settlement;

**[PROPOSED] FINAL ORDER, STIPULATED INJUNCTION AND JUDGMENT**
CASE NO. 13-CV-02998 JST

v.        The extent of discovery completed and the stage of the

proceedings; and

vi.       The experience and views of counsel.

*Churchill Village, L.L.C. v. Gen. Elec.,* 361 F.3d 566,575-76 (9th Cir. 2004) (citing *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1026 (9th Cir. 1998)). The Court further finds that the settlement is the product of good faith negotiations at arm's length, conducted with the assistance and under the supervision of an experienced and independent mediator, Ms. Cathy Yanni, Esq., after thorough factual and legal investigation, and is not the product of fraud or collusion. *See Officers for Justice v. Civil Serv. Comm'n of the City & Cnty. of S. F.,* 688 F. 2d 615, 625 (9th Cir. 1982).  The parties are directed to consummate the Settlement Agreement in accordance with its terms.

7.       Defendants are ordered to comply with the following injunction: (a) Defendants shall effect relabeling of all Challenged Products so that they do not describe the products as "all natural" on packaging or other advertising; (b) Defendants shall effect relabeling of all Challenged Products on its website pages so that they do not describe the products as "all natural"; (c) Defendants shall effectuate the changes set forth above by March 31, 2015 and provide Plaintiffs with a declaration setting forth compliance with the above obligations and shall maintain records necessary to demonstrate compliance with the same. This Stipulated Injunction shall remain in effect for as long as the Challenged Products contain any of the Challenged Ingredients or unless and until the FDA issues binding guidance that each of the Challenged Ingredients can be described as "natural".

8.       Plaintiffs and all members of the Settlement Class shall be and hereby are forever enjoined from filing any action seeking injunctive relief pursuant to Rule 23(b)(2) for as long as the Stipulated Injunction remains in effect, against Defendants prohibiting them from labeling the Challenged Products containing the Challenged Ingredients as "all natural."

9.       The Court hereby awards and orders Defendants to pay Class Counsel $ _____ in total for attorneys' fees and costs payable to Finkelstein Thompson LLP and Glancy Binkow & Goldberg LLP.

4

**[PROPOSED] FINAL ORDER, STIPULATED INJUNCTION AND JUDGMENT**
CASE NO. 13-CV-02998 JST

10.     The Court hereby further awards and orders Defendants to pay an amount of $ _____ each to the Plaintiffs Aleta Lilly and David Cox. These payments are to be paid in accordance with the terms of the Settlement Agreement.

10.     This Action is dismissed with prejudice and, except as provided herein or in the Settlement Agreement, without costs. The Court finds that there is no just reason for delay and expressly directs Judgment and immediate entry of the Judgment by the Clerk.

IT IS SO ORDERED.

DATED: _____                              _____
                                                 Honorable Jon S. Tigar
                                                 UNITED STATES DISTRICT JUDGE

**[PROPOSED] FINAL ORDER, STIPULATED INJUNCTION AND JUDGMENT**
CASE NO. 13-CV-02998 JST

# EXHIBIT 3

Rosemary M. Rivas (SBN 209147)
rrivas@finkelsteinthompson.com
**FINKELSTEIN THOMPSON LLP**
One California Street, Suite 900
San Francisco, California 94111
Telephone: (415) 398-8700
Facsimile: (415) 398-8704

Marc L. Godino (SBN 182689)
mgodino@glancylaw.com
**GLANCY BINKOW & GOLDBERG LLP**
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

*Class Counsel*

# UNITED STATES DISTRICT COURT

## NORTHER DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALETA LILLY and DAVID COX, on behalf of themselves and all others similarly situated, | Case No. 13-cv-02998 JST |
| Plaintiffs, | |
| vs. | **DECLARATION OF ALETA LILLY IN SUPPORT OF APPLICATION FOR SERVICE PAYMENT** |
| JAMBA JUICE COMPANY and INVENTURE FOODS, INC., formerly known as the Inventure Group, Inc., | Date: May 14, 2015<br>Time: 2:00 p.m.<br>Courtroom: 9, 19th Floor<br>Judge: Hon. Jon S. Tigar |
| Defendants. | |

I, Aleta Lilly, declare as follows:

1. I am one of the named plaintiffs and class representatives in the above captioned litigation, *Lilly, et al. v. Jamba Juice Co., et al.*, Case No.13-cv-2998 JST. I have personal knowledge of the matters set forth herein unless otherwise indicated, and would testify thereto if called as a witness in this matter. I submit this declaration in support of my application for a service payment.

2. I first became involved in the subject matter of this litigation in the spring of 2013 when I learned about Finkelstein Thompson LLP's investigation into the claims alleged in the case. I retained Finkelstein Thompson LLP in April 2013 to represent me in a class action suit that was filed on June 28, 2013. I filed this lawsuit because I care about my health and nutrition and believe that companies should provide accurate food labeling. I provided my attorneys with a detailed account of my experience with the Jamba Juice Smoothie Kits ("Smoothie Kits") at issue and also reviewed the Complaint before it was filed and authorized its filing.

3. Since I retained my attorneys in April 2013, I have been in regular contact with my attorneys and have actively participated in all aspects of this litigation, including, but not limited to, extensive telephone discussions before the filing of the action, before the motion for class certification, throughout discovery, and during the settlement negotiations.

4. I carefully reviewed the Complaint before filing. I searched for documents relevant to the litigation, such as my receipts, and provided other information that I was asked for by my attorneys. I also met with Ms. Kara M. Wolke and Ms. Rosemary M. Rivas to discuss the case overall, and also in preparation for my deposition. I also appeared for a deposition on May 6, 2014. I had to request time off from work to meet with Ms. Wolke and Ms. Rivas and to appear for my deposition. I also provided responses to interrogatories and document requests.

5. I also provided information for two declarations that I submitted in this case in connection with class certification. I carefully reviewed and approved of the declarations before filing. Additionally, I consulted with my attorneys regarding the potential for settlement, including the parameters of what I believed would be effective injunctive relief. I further made myself available by

1

telephone during the mediations, and made the determination that the terms of the proposed settlement reached at the mediation were fair, reasonable, and adequate in light of the strengths and weaknesses of continued litigation.

6.      I agreed to the terms of the proposed settlement including the injunctive relief provisions, without any regard to any service payment the Court might award to me.

I declare under penalty, of perjury that the foregoing is true and correct. Executed this 30th day of March 2015 in Los Angeles, California.

Aleta Lilly