UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALETA LILLY, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>JAMBA JUICE COMPANY, et al.,<br><br>    Defendants. | Case No. 13-cv-02998-JST<br><br>**ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT FOR INJUNCTIVE RELIEF AND GRANTING AWARD OF ATTORNEY FEES, REIMBURSEMENT OF EXPENSES, AND APPROVAL OF SERVICE PAYMENTS**<br><br>ECF Nos. 69, 70 |

Two motions are pending in this class action settlement for injunctive relief, in which the parties have stipulated to an injunction whereby Defendants will alter the allegedly-false packaging on certain smoothie kit products. First, Class Representatives Aleta Lilly and David Cox ("Plaintiffs") move for an order granting final approval of the parties' settlement agreement. ECF No. 69. Second, Plaintiffs move for an award of attorneys' fees, litigation costs, and service enhancement awards to Ms. Lilly and Mr. Cox. ECF No. 70. The Court grants the motion for final approval and grants in-part the motion for attorneys' fees, litigations costs, and service enhancement awards for the reasons discussed below.

**I.    BACKGROUND**

    **A.    Factual History[1]**

This is a class action lawsuit against Defendants Jamba Juice Company and Inventure Foods, Inc. ("Defendants"), brought on behalf of consumers who purchased one of five flavors of Jamba Juice smoothie kit products. Class Action Complaint ("Compl.") ECF No. 1-1 ¶¶ 2-3. The Smoothie Kits were sold in a three-sided pouch with the words "All Natural" appearing

---

[1] A more detailed description of the facts and claims at issue in this action, as well as the action's procedural history, can be found in the Court's March 18, 2015 order, ECF No. 65.

prominently on the front of the package. Compl. ¶ 3. Plaintiffs allege that the Smoothie Kits contain ascorbic acid, xanthan gum, steviol glycosides, modified corn starch, and gelatin (the "challenged ingredients"). Compl. ¶ 24-29. Generally, Plaintiffs allege that, in making their purchases, they relied on the representation that the smoothie kits are "all natural," and they believe that because the Smoothie Kits contain the challenged ingredients, the kits are not "all natural." Compl. ¶¶ 12-13. In their complaint, Plaintiffs seek injunctive relief. Compl. ¶¶ 50, 56, 63, 70.

By order dated March 18, 2015, the Court (1) granted preliminary approval of the parties' proposed settlement for injunctive relief and conditionally certified the putative class for the purposes of determining the issue of liability under 23(c)(4); and (2) concluded that class notice was not necessary for settlement approval as the settlement was for injunctive relief only and class members would retain their claims for individual damages. ECF No. 65 at 13.

### B.      Settlement Agreement

The settlement agreement defines the settlement class as follows:

> All persons in the United States who bought, for personal use only, one of the following Jamba Juice Smoothie Kit products from the period of January 1, 2010 to the present: Mango-a-go-go, Strawberries Wild, Caribbean Passion, Orange Dream Machine, and Razzmatazz. Excluded from the Settlement Class are (a) the officers, directors and employees of any entity which is or has been a Defendant, members of the immediate families of the foregoing, and their legal representatives, heirs, successors and assigns; (b) the officers, directors and employees of any parent, subsidiary or affiliate of either of the Defendant or any business entity in which any of the Defendants owns a controlling interest, together with those individuals' immediate family members; (c) counsel for Defendants and its immediate family members; (d) Governmental entities; and (d) the Court, the Court's immediate family, and Court staff. ("Settlement Class").

Settlement Agreement, ¶ 1.A; ECF No. 65.

Pursuant to the Agreement, Defendants must comply with the following the terms of the stipulated injunction:

> 1. Defendants shall effect relabeling of all Challenged Products so that they do not describe the products as "all natural" on packaging or other advertising.
>
> 2. Defendants shall effect relabeling of all Challenged Products on

its website pages so that they do not describe the Challenged Products as "all natural."

3. Defendants shall effectuate the changes set forth above by March 31, 2015 and provide Plaintiffs with a declaration setting forth compliance with the above obligations and shall maintain records necessary to demonstrate compliance with the same.

4. Defendants are not required to remove or recall any of the Challenged Products in market, inventory, or elsewhere; nor are Defendants required to discontinue the use of, or destroy, any packaging inventory that was in existence prior to final judicial approval of this agreement. Instead, Defendants shall not print any Challenged Product labels after March 31, 2015 that do not comply with Paragraph 4(A) above. However, Defendants may, now or after March 31, 2015, exhaust all existing packaging inventory and thereafter sell and distribute Challenged products bearing labeling printed on or before the final approval date of this agreement, without violating the terms of this agreement.

5. Plaintiffs and all members of the Settlement Class shall be forever enjoined from filing any action seeking injunctive relief pursuant to Rule 23(b)(2) for as long as the Stipulated Injunction remains in effect, against Defendants prohibiting them from labeling the Challenged Products containing the Challenged Ingredients as "all natural".

Settlement Agreement ¶ 4.F; ECF No. 60 at 4.

Plaintiffs seek an award of $410,637.13 in attorney's fees and $14,326.87 in litigation costs for the out-of-pocket expenses class counsel has incurred. ECF No. 70 at 1. Lastly, Plaintiffs request incentive awards of $5,000 for each of the named Plaintiffs. Id.

### C. Jurisdiction

This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because Plaintiffs are of diverse citizenship from the Defendants; there are more than 100 Class members nationwide; and the aggregate amount in controversy exceeds $5,000,000. Compl. ¶ 9.

## II. FINAL APPROVAL OF THE SETTLEMENT

### A. Legal Standard

"The claims, issues, or defenses of a certified class may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). "Adequate notice is critical to court approval of a class settlement under Rule 23(e)." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1025 (9th Cir. 1998). In addition, Rule 23(e) "requires the district court to determine whether a proposed settlement is

fundamentally fair, adequate, and reasonable." Id. at 1026. In order to assess a settlement proposal, the district court must

> balance a number of factors: the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

Id. The court need not consider all of these factors, or may consider others. In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 942 (9th Cir. 2011) ("The factors in a court's fairness assessment will naturally vary from case to case.").

### B. Analysis

#### 1. Adequacy of notice

Although the Court determined that notice to class members was not necessary, the Class Action Fairness Act ("CAFA") requires that notice be given to state and federal authorities. 28 U.S.C. § 1715. The CAFA provides that "no later than ten days after a proposed settlement of a class action is filed in court, each defendant shall serve upon the appropriate state official of each state in which a class member resides a notice of the proposed settlement and specified supporting documentation." Id. § 1715(b).

Because the Defendants complied with the statutory notice requirements under the CAFA, their obligations for adequate notice have been met. ECF No. 64 at 2; ECF No. 64-1.

#### 2. Fairness, adequacy, and reasonableness

##### a. Strength of Plaintiff's case

Approval of a class settlement is appropriate when plaintiffs must overcome significant barriers to make their case. Chun-Hoon v. McKee Foods Corp., 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010). Generally, "fact-intensive inquiries and developing case law present significant risks to Plaintiffs' claims and potential recovery." In re Wells Fargo Loan Processor Overtime Pay Litig., No. MDL C-07-1841 EMC, 2011 WL 3352460, at *5 (N.D. Cal. Aug. 2, 2011).

Defendant's liability in this case would hinge on a factual determination of whether "reasonable consumers were likely to be deceived by the Defendants' 'all natural'

representations."[2] ECF No. 69 at 9. Plaintiffs acknowledge the significant risk of non-recovery in this case, as "any time that liability hinges on reasonableness, a favorable verdict cannot be certain." Id. Because of the uncertainty of monetary recovery or injunctive relief after trial, this factor weighs in favor of approval. See In re Wells Fargo, 2011 WL 3352460, at *5 (finding the strength of Plaintiffs' claim in favor of final approval where Plaintiff's claims depended largely on "fact-intensive inquiries into multiple questions.").

### b. Risk of continued litigation

The risks, expense, complexity, and likely duration of litigation also weigh in favor of approving the settlement. See Rodriguez v. W. Publ'g Corp., 563 F.3d 948, 966 (9th Cir. 2009). These risk of continued litigation must be "balanced against the certainty and immediacy of recovery from the Settlement." Kim v. Space Pencil, Inc., No. C 11-03796 LB, 2012 WL 5948951, at *5 (N.D. Cal. Nov. 28, 2012) (citations omitted). "The Court should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation." Id.

This factor supports final approval because, without a settlement, Plaintiffs would face further litigation that would not be certain to result in injunctive relief. ECF No. 69 at 11. Because this settlement will result in complete relabeling of the challenged products, continued litigation could not result in any greater injunctive relief to the class and would only deprive the class of immediate relief. Id.

### c. Extent of discovery and stage of the proceedings

Here, the Plaintiffs conducted an extensive amount of formal discovery prior to the settlement agreement. ECF No. 69-1 ¶¶ 8, 24; ECF No. 69-2 ¶¶ 8, 24. Discovery included the productions of thousands of pages of documents related to the marketing materials used to

---

[2] Plaintiffs allege violations of (1) California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, et seq., ("UCL"), (2) the False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, et seq., ("FAL"), (3) the Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, et seq., ("CLRA") and (4) for breach of express warranty, Cal. Com. Code § 2313. ECF No. 1 ¶¶ 8, 42-70.

5

1   promote the Smoothie Kits, pricing information, and documents related to the challenged
2   ingredients. Id. The case has already gone through one complete round of contested class
3   certification briefing and argument. The Court reaffirms the conclusion reached in its preliminary
4   approval and finds that the extent of discovery completed and the state of the proceedings weigh in
5   favor of approval. ECF No. 65 at 13.

### d. Counsel's experience

"The recommendations of plaintiffs' counsel should be given a presumption of reasonableness." See In re Omnivision, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) (citation omitted). The reasons for this presumption is that "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation[.]" See Rodriquez, 563 F.3d at 967.

Here, class counsel has demonstrated their experience in litigating similar consumer class actions. See ECF No. 69-1 ¶¶ 4-6; ECF No. 69-2 ¶¶ 4-6. They have also demonstrated that they are well informed of the facts, claims, and defenses in this action. ECF No. 69-1 ¶ 25; ECF No. 69-2 ¶ 26. Accordingly, class counsel's endorsement weighs in favor of approving the settlement. See, e.g., In re Omnivision, 559 F. Supp. 2d at 1043 (finding class counsel's recommendation in favor of settlement presumptively reasonable because counsel demonstrated knowledge about the case and securities litigation in general).

### e. Government Participant and Reaction of the Class

Here, no government participant is involved, so the court does not weigh this factor. Similarly, because the Court previously decided in its preliminary approval that notice was not necessary, the reaction of the class is not considered in weighing the fairness factors. See Kim, 2012 WL 5948951, at *6 (N.D. Cal. Nov. 28, 2012) ("the reaction of class members is not relevant here because notice [is] not required under Federal Rule of Civil Procedure 23(e) and there is no binding effect on the Class nor is there a release being provided.").

### g. Conclusion

As all relevant factors weigh in favor of settlement,[3] the Court will grant final approval of the class action settlement for injunctive relief.

## III. ATTORNEYS' FEES

Under the Consumer Legal Remedies Act, "[t]he court shall awards court costs and attorney's fees to a prevailing plaintiff in litigation filed pursuant" to that statute. Cal. Civ. Code § 1780(e).

### A. Legal Standard

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). The Ninth Circuit has held that when state substantive law applies, attorneys' fees are to be awarded in accordance with state law. Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1047 (9th Cir. 2002). California courts apply the lodestar method in class actions governed by California law. Lealao v. Beneficial California, Inc., 82 Cal. App. 4th 19, 26 (2000) (applying California law); see Meister v. Regents of Univ. of California, 67 Cal. App. 4th 437, 448-49 (1998) ("the California Supreme Court intended its lodestar method to apply to a statutory attorney's fee award unless the statutory authorization for the award provided for another method of calculation."). Similarly, under federal law, "in injunctive relief class actions, courts often use a lodestar calculation because there is no way to gauge the net value of the settlement or any percentage thereof." Hanlon, 150 F.3d at 1029; see Yeagley v. Wells Fargo & Co., 365 F. App'x 886, 887 (9th Cir. 2010) (finding the lodestar method to be appropriate in calculating attorney's fees where injunctive relief was sought and no common fund was created).

"Under the lodestar method, a court need not determine the 'value' of particular injunctive relief because fees are calculated through an assessment of time expended on the litigation, counsel's reasonable hourly rate and any multiplier factors such as contingent representation or

---

[3] The Court previously certified a class for liability purposes, and the injunctive relief provided by this settlement applies equally to all class members. Accordingly, the Court finds it unnecessary to consider the risk of maintaining class action status as a factor in approval of the settlement. See Bluetooth, supra, 654 F.3d at 942.

quality of work." In re Ferrero Litigation, 583 F. App'x 665, 668 (9th Cir. 2014). Courts may then reduce or enhance the lodestar by applying a multiplier to take into account the complexity of the action, as well as other factors such as the quality of representation and the risk of nonpayment. Hanlon, 150 F.3d at 1029. The party seeking fees bears the burden of providing documentation and other evidence, including their own affidavits or rates counsel has received in comparable cases, that their hourly rate is consistent with similarly experienced attorneys in the relevant community. Id.

While extensive detail about how an attorney or paralegal spends their time is not necessary, Lytle v. Carl, 382 F.3d 978, 989 (9th Cir. 2004), plaintiff's counsel should "identify the general subject matter of [their] time expenditures." E.E.O.C. v. Harris Farms, Inc., No. CIVF02-6199AWILJO, 2006 WL 1028755, at *4 (E.D. Cal. Mar. 1, 2006) aff'd, 274 F. App'x 511 (9th Cir. 2008) (citations omitted). "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." Wolph v. Acer American Corp., No. C 09-01314 JSW, 2013 WL 5718440, at *4 (N.D. Cal. Oct. 21, 2013) (citation omitted).

**B.     Analysis**

Because the settlement resulted in injunctive relief, the lodestar method is the appropriate measure for calculating attorneys' fees. Although class counsel state that the full lodestar total for the work completed would be $623,912.35, based on the 1,509.40 hours spent in litigating this class action multiplied counsel's proposed hourly rates, class counsel have agreed to accept a reduced lodestar of $410,637.13. ECF No. 70 at 9. Class counsel have submitted declarations and provided charts that document their hourly rates, the number of hours claimed, and total fee request for each attorney involved in the litigation. See ECF No. 69-1 ¶ 31; ECF No. 69-2 ¶ 34. Moreover, class counsel attest in their declarations that the hourly rates provided are reasonable in comparison to the hourly rates charged by firms with similar expertise in the district courts in California. Id. Class counsel provide evidence, based on previous class action suits they have litigated, wherein courts have approved the hourly rates suggested. Id. ¶ 35.

Class counsel support their requested rates in part with reference to rates they were awarded in a case in the Central District of California. Similarly, class counsel claims that their

firm's billing rates are reasonable compare to rates "charged by firms with similar experience and expertise in the area of complex and class action litigation *within the district courts in California*." Id. ¶ 34 (emphasis added).  The Court notes that the relevant community for this action is the Northern District of California rather than district courts in California generally.  See In re Magsafe Apple Power Adapter Litigation, No. 5:09-CV-01911-EJD, 2015 WL 428105, at *12 (N.D. Cal. Jan. 30, 2015).  Nonetheless, the Court finds the requested hourly rates reasonable in light of rates charged in similar actions in this District, see, e.g. Suzuki v. Hitachi Global Storage Technologies, Inc., 2010 WL 956896, at *4 (N.D. Cal. Mar. 12, 2010); Kim, 2012 WL 5948951, at *7, as well as counsel's extensive and well-documented experience.  See ECF No. 69-1 at 13-34.

Counsel have also provided sufficient support for the number of hours requested.  Although counsel have submitted the numbers of hours worked by each attorney and paralegal in this action, see ECF No. 69-1 at 7-8, ECF No. 69-2 at 7, they have not submitted complete documentation as to how many hours were spent on each particular task.  Nonetheless, counsel's declarations describe the specific tasks completed through the course of the litigation.  See generally ECF Nos. 69-1, 69-2.  In light of counsel's detailed declarations, the Court finds the hours claimed are supported.  Class counsel investigated Plaintiffs' allegations, drafted and amended the complaint, successfully opposed a motion to dismiss, and fully briefed a motion for class certification that was granted in part.  ECF No. 69-1 at ¶¶ 7-25, ECF No. 69-2 at ¶¶ 7-26.  Counsel engaged in extensive discovery.  Id.  Counsel also prepared for and attended two mediations, the second of which resulted in the settlement of this action.  Id.  Any lingering discomfort the Court might have about counsel's failure to submit timesheets documenting the amount of time spent on each particular task is mitigated by counsel's voluntary acceptance of a substantial 35% reduction from the full lodestar amount and the fact that counsels' fees will not be deducted from a monetary class settlement.

Therefore, the Court grants Plaintiffs request for attorneys' fees.

## IV.   EXPENSES

Plaintiffs also request reimbursement of legal expenses under the Consumer Legal

Remedies Act. Cal. Civ. Code § 1780(e).

### A. Legal Standard

An attorney is entitled to "recover as part of the award of attorney's fees those out-of-pocket expenses that would normally be charged to a fee paying client." Harris v. Marhoefer, 24 F.3d 16, 19 (9th Cir. 1994) (citation omitted); Fed. R. Civ. P. 23(h) (permitting the court to award nontaxable costs that are authorized by the parties' agreement). To support an expense award, Plaintiffs should file an itemized list of their expenses by category and the total amount advanced for each category in order for the Court to assess whether the expenses are reasonable. Wren v. RGIS Inventory Specialists, No. C-06-05778 JCS, 2011 WL 1230826, at *30 (N.D. Cal. Apr. 1, 2011), supplemented, No. C-06-05778 JCS, 2011 WL 1838562 (N.D. Cal. May 13, 2011); see also Dyer v. Wells Fargo Bank, N.A., 303 F.R.D. 326, 334 (N.D. Cal. 2014), supplemented, Case No. 3:13-cv-02858-JST, at ECF 52 (Oct. 31, 2014).

### B. Analysis

Here, Plaintiffs seek reimbursement for a total of $14,326.87 in litigation expenses. ECF No. 70 at 11. Plaintiffs have submitted an itemized list of the costs and expenses incurred during this litigation. ECF No. 69-1 ¶ 34; ECF No. 69-2 ¶ 36. Roughly half of class counsel's expenses ($7,118.30) stemmed from mediation fees, which the Court finds reasonable in light of the expert mediator hired to assist in settlement negotiations and the successful result of the negotiations. ECF No. 69-1 ¶ 22; see ECF No. 70 at 12. Similarly, the Court finds reasonable the requested travel costs, document expenses, research costs, and filing fees. Based on the declarations of counsel, the Court awards the requested legal expenses of $14,326.87.

## V. INCENTIVE AWARDS

### A. Legal Standard

"[N]amed plaintiffs, as opposed to designated class members who are not named plaintiffs, are eligible for reasonable incentive payments." Staton v. Boeing Co., 327 F.3d 938, 977 (9th Cir. 2003). "Incentive awards are discretionary . . . and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private

attorney general." Rodriguez, 563 F.3d at 958-59 (internal citation omitted). Further,

> The district court must evaluate [incentive] awards individually, using relevant factors including the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, the amount of time and effort the plaintiff expended in pursuing the litigation and reasonable fears of workplace retaliation.

Staton, 327 F.3d at 977 (citation and internal quotations and alterations omitted). District courts must scrutinize "all incentive awards to determine whether they destroy the adequacy of the class representatives." Radcliffe v. Experian Info. Solutions, Inc., 715 F.3d 1157, 1165 (9th Cir. 2013).

### B. Analysis

Named Plaintiffs have been substantially involved in the course of the litigation spanning two years. Plaintiff Lilly and Plaintiff Cox invested considerable time in the litigation and prepared for and gave deposition testimony. ECF No. 69-1 ¶ 36; ECF No. 69-2 ¶ 38. Plaintiff Cox took time off from work to participate in the litigation. ECF No. 69-2 at 32. Plaintiffs have also taken efforts to protect the interests of the class by discussing acceptable settlement terms with counsel. The settlement protects the rights of class members by ensuring that class members retain their individual damages claims. The Court also notes that the incentive awards to named Plaintiffs in this case will not reduce class recovery, as the classwide settlement is for injunctive relief only. In light of the time expended by the named Plaintiffs to secure injunctive relief, the Court finds the proposed incentive awards reasonable.

## VI. CONCLUSION

For the foregoing reasons, the Court hereby orders as follows:

1. For the reasons set forth in its March 18, 2015 order, the Court confirms its certification of the class for settlement purposes only.

2. The Court grants final approval of the proposed settlement.

3. The Court grants an incentive award of $5,000 to class representatives Aleta Lilly and David Cox.

4. The Court grants class counsel Finkelstein Thompson LLP and Glancy Binkow & Goldberg LLP an award of $410,637.13 in attorneys' fees.

5. The Court grants the request for costs and expenses and hereby awards class counsel of $14,326.87 in costs.

5. The clerk shall close the file.

IT IS SO ORDERED.

Dated: May 1, 2015

_____
JON S. TIGAR
United States District Judge